Amanda L. Groves (SBN: 187216)
agroves@winston.com
Shawn R. Obi (SBN: 288088)
sobi@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Angela A. Smedley (Admitted *pro hac vice*)
asmedley@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Defendant
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Wells Fargo Mortgage Modification Litigation* | Case No. 3:24-cv-01358-MMC<br><br>**WELLS FARGO BANK, N.A.'S RESPONSE TO BARBARA PRADO'S MOTION TO INTERVENE**<br><br>Judge:    Hon. Maxine M. Chesney<br><br>Date:    December 13, 2024<br>Time:    9:00 a.m.<br>Place:    San Francisco Courthouse<br>           Courtroom 7 – 19th Floor<br>           450 Golden Gate Avenue, San Francisco, CA 94102 |

# TABLE OF CONTENTS

**Page**

I. FACTUAL AND PROCEDURAL BACKGROUND ............................................................... 1

   A. This Action ........................................................................................................... 1

   B. The *Prado* Action ................................................................................................ 3

   C. The *Flores* Action .............................................................................................. 4

II. ARGUMENT ......................................................................................................................... 4

   A. Consolidation—Not Intervention and Severance—Is Warranted Here. .............. 4

      1. Prado Is Not Entitled to Intervene as of Right. ........................................ 5

         a. Prado's Interests Will Not Be Impaired Absent Intervention. ................. 5

         b. Prado Cannot Establish Inadequate Representation. ............................... 6

      2. The Court Should Deny Prado's Request for Permissive Intervention. ... 8

   B. The Court Should Deny the Motion to Sever. ..................................................... 8

   C. There Is No Reason to Appoint More Interim Lead Counsel. ........................... 10

III. CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   240 F.R.D. 56 (E.D.N.Y. 2006) ...........................................................................................10

*Allen v. Hyland's Inc.*,
   2012 WL 12887827 (C.D. Cal. Aug. 28, 2012) .....................................................................5

*Am. Pipe and Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ................................................................................................................5

*Cadena v. Am. Honda Motor Co.*,
   2020 WL 3107798 (C.D. Cal. June 9, 2020) .......................................................................11

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
   42 F.4th 1013 (9th Cir. 2022) .........................................................................................6, 7, 8

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ..................................................................................................8

*Espinosa v. Hyundai Motor Am.*,
   2012 WL 13226634 (C.D. Cal. Dec. 28, 2012) ......................................................................6

*Fine v. Kan. City Life Ins. Co.*,
   2023 WL 7393027 (C.D. Cal. Nov. 6, 2023) .........................................................................6

*Forsyth v. HP Inc.*,
   2020 WL 71379 (N.D. Cal. Jan. 7, 2020) ...........................................................................6, 7

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   2020 WL 2759848 (C.D. Cal. Apr. 15, 2020) .......................................................................9

*Hard Drive Prods., Inc. v. Does 1-188*,
   809 F. Supp. 2d 1150 (N.D. Cal. 2011) .................................................................................9

*Haynie v. Cornell Univ.*,
   2020 WL 6043947 (N.D.N.Y. Oct. 13, 2020) .....................................................................11

*Invs. Rsch. Co. v. U.S. Dist. Ct.*,
   877 F.2d 777 (9th Cir. 1989) ..................................................................................................9

*Maverick Ent. Grp., Inc. v. Doe*,
   810 F. Supp. 2d 1 (D.D.C. 2011) ...........................................................................................9

*McGough v. Covington Techs. Co.*,
   967 F.2d 1391 (9th Cir. 1992) ................................................................................................5

*Michelle v. Arctic Zero, Inc.*,
  2013 WL 791145 (S.D. Cal. Mar. 1, 2013) ...................................................................... 10

*Moulvi v. Safety Holdings, Inc.*,
  2021 WL 4494191 (E.D. Va. Sept. 30, 2021) ..................................................................... 9

*Neal v. Wal-Mart Stores, Inc.*,
  2019 WL 3407143 (W.D.N.C. July 26, 2019) .................................................................. 10

*In re Nest Labs Litig.*,
  2014 WL 12878556 (N.D. Cal. Aug. 18, 2014) ........................................................... 10, 11

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ................................................................................................ 8

*Opperman v. PATH, Inc.*,
  2015 WL 12941889 (N.D. Cal. Jan. 5, 2015) ..................................................................... 7

*Perry v. Proposition 8 Off. Proponents*,
  587 F.3d 947 (9th Cir. 2009) .......................................................................................... 5, 8

*Russell v. Kohl's Dep't Stores*,
  2016 WL 4414848 (C.D. Cal. Apr. 12, 2016) .................................................................... 7

*S. Cal. Edison Co. v. Lynch*,
  307 F.3d 794 (9th Cir. 2002) .............................................................................................. 8

*Stasi v. Inmediata Health Grp. Corp.*,
  2021 WL 5861563 (S.D. Cal. Mar. 10, 2021) .................................................................. 10

*In re Wells Fargo Mortg. Discrimination Litig.*,
  No. 3:22-cv-00990 (ECF No. 49, Jan. 18, 2023) ............................................................ 2, 9

**Other Authorities**

Fed. R. Civ. P. 21 ........................................................................................................................... 9

Fed. R. Civ. P. 23 ........................................................................................................................... 5

Fed. R. Civ. P. 23(g)(3) ................................................................................................................ 10

Fed. R. Civ. P. 24 ........................................................................................................................... 4

Fed. R. Civ. P. 24(a)(1) .................................................................................................................. 5

Fed. R. Civ. P. 24(b) ...................................................................................................................... 8

Fed. R. Civ. P. 24(b)(3) .................................................................................................................. 8

N.D. Cal. Local Rule 3-12(a) ......................................................................................................... 3

Barbara Prado ("Prado") asks the Court to let her intervene in this action, to sever the claims of seven named plaintiffs, and to replace their chosen lawyers with her lawyers, who she says will represent a putative class of borrowers "who received mortgage modifications and did not lose their homes." ECF No. 67-1 at 7 ("Mot."). This proposal is untenable and should be denied. Prado predicates the need for intervention, severance, and more interim counsel on a supposed "inherent conflict of interest" between this action's putative class and those "who received mortgage modifications and did not lose their homes." *Id.* In so arguing, Prado apparently did not review her own putative class definition, which is not so limited, but instead includes "all Persons . . .who received at least one letter from Wells Fargo alerting them that an error occurred relating to their mortgage loan and/or modification[.]" *Prado v. Wells Fargo & Co.*, No. 3:24-cv-05105-MMC ("*Prado*"), ECF No. 1 at 11, 12 ("Prado Compl."). But in any event, there is no conflict between Prado, whose home was not foreclosed, and putative class members, whose homes were foreclosed, because they all seek damages resulting from the same alleged conduct. Consolidation, not intervention and severance, is the appropriate course here.

Nor is there any reason to appoint more and separate interim counsel. Wells Fargo does not opine on the qualifications or reputations of Prado's proposed counsel team. However, the appointment of interim class counsel must promote efficiency and economy. Prado's motion does not address those requirements, but instead focuses on the non-existent conflict of interest. Prado cannot demonstrate why anything other than the appointment of a single interim counsel would increase efficiency or benefit the putative class.

Prado's motion should be denied.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

There are three relevant putative class action lawsuits: this action, *Prado*, and *Flores v. Wells Fargo Bank, N.A.*,[1] pending in the Northern District of Florida.

   A.   **This Action**

*Curry v. Wells Fargo Bank, N.A.* and *Beloff v. Wells Fargo Bank, N.A.*[2] were filed on March 7 and 12, 2024, respectively. ECF No. 1; *Beloff*, ECF. No 1. On April 3, 2023, Marc E. Dann of The Dann Law

---

[1] No. 4:24-cv-00359-RH-MAF (N.D. Fla.) ("*Flores*").
[2] No. 3:24-cv-01522 ("*Beloff*").

1
WELLS FARGO BANK, N.A.'S RESPONSE TO BARBARA PRADO'S MOTION TO INTERVENE
CASE NO. 3:24-CV-01358-MMC

Firm and Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C. were appointed interim co-lead class counsel in the *Curry* and *Beloff* actions.  ECF No. 27; *Beloff*, ECF No. 12.  *Curry* and *Beloff* were consolidated and recaptioned *In re Wells Fargo Mortgage Modification Litigation* on April 23, 2024 (ECF No. 34), and Plaintiffs filed the Consolidated Class Action Complaint ("CAC") on July 8, 2024, over a month before Prado filed her complaint.  ECF No. 41.

The CAC alleges that Plaintiffs and the putative class members were injured when they sought loan modifications from Wells Fargo and their applications were denied or approved with erroneous terms. CAC ¶¶ 116, 126, 135, 144, 156, 168, 177, 185, 195, 202, 211.  According to Plaintiffs, those errors were caused by faulty modification software, and they resulted in the loss of some Plaintiffs' properties, either by sale (voluntary or short sale), deed-in-lieu of foreclosure, or foreclosure.  *Id*. ¶¶ 113, 118, 124, 133, 137, 142, 154, 166, 193, 209.  Other Plaintiffs remain in their homes and are making their modified mortgage payments.  *Id*. ¶¶ 179, 183, 204.

Plaintiffs seek to represent a nationwide class defined as:

> All persons, as identified by Defendant constituting mortgagors and for which Defendant was the mortgagee or servicer, in the United States who since January 1, 2008 (i) qualified for a home loan modification, (ii) either were denied a temporary or permanent loan modification by Defendant due to a calculation error in Defendant's loan modification decision process, or received a temporary or permanent loan modification by Defendant based on inaccurate calculations due to a calculation error in Defendant's loan modification decision process, and (iii) were sent an apology letter from Defendant stating that an error may have occurred related to their loan modification.

*Id*. ¶ 214.  They bring nationwide claims for breach of contract, intentional infliction of emotional distress, negligence, and violation of the California Unfair Competition Law.  *Id*. ¶¶ 234–274, 291–301.  The California-based plaintiffs also seek to represent a California subclass to pursue fraudulent concealment claims and claims under the California Homeowner Bill of Rights, while other plaintiffs seek to represent subclasses of borrowers from their respective states (Illinois, Pennsylvania, North Carolina, Washington, Washington, D.C., and Virginia) to bring claims under various state unfair trade practices and mortgage lending statutes.  *Id*. ¶¶ 214–22, 303–11, 313–21, 323–33, 335–45, 347–57, 359–69.

Wells Fargo moved to dismiss the CAC on September 20, 2024. ECF No. 56. The Court vacated the hearing on that motion pending resolution of the instant motion and Wells Fargo's motion to consolidate *Prado* with this action. ECF No. 68.

### B.     The *Prado* Action

Prado filed her complaint on August 13, 2024. *Prado*, ECF No. 1. As she admits, her claims depend on the same allegations at issue here: namely, that Wells Fargo made errors in connection with her loan modification request. Mot. at 6 ("[T]he factual allegations for these newly added plaintiffs' claims are compatible with the factual allegations in *Prado*[.]"). Prado purports to bring nationwide claims for unjust enrichment and conversion (*Prado* Compl. ¶¶ 115–18, 120–24), and although she now argues that there is a meaningful difference between her putative class and Plaintiffs' putative class, that is simply not true. Prado's putative class is broadly defined to include "all Persons" who received letters from Wells Fargo regarding "error[s] . . .relating to their mortgage loan and/or modification"—regardless of outcome (*i.e.*, approved, denied, foreclosed, etc.)—and is thus wholly subsumed by the putative class in this first--filed action:

> All persons within the United States who received at least one letter from Wells Fargo alerting them that an error occurred relating to their mortgage loan and/or modification and enclosing a payment to compensate such customer such error within the statutory time period for claims brought in this complaint.

*Id.* ¶ 68. Prado also seeks to represent a California subclass to pursue claims under the California Unfair Competition Law and California Penal Code § 496(c). *Id.* ¶¶ 69, 81–102, 104–13.

By order dated September 26, 2024, this Court deemed *Prado* related to this action pursuant to Local Rule 3-12(a), meaning that the cases "concern substantially the same parties, property, transaction, or event." ECF No. 64; L.R. 3-12(a). Wells Fargo moved to consolidate the *Prado* action with this action on October 15, 2024. ECF No. 66. The next day, Prado filed her motion to intervene and sever, asking the Court to sever the claims of seven named Plaintiffs in this case, consolidate their claims with hers, and appoint her lawyers as their lawyers and as interim lead counsel for a new putative class that includes borrowers "who received mortgage modifications and did not lose their homes." Mot. at 7.

### C. The *Flores* Action

Denise Georgette Flores filed her complaint in the Northern District of Florida on September 6, 2024. *Flores*, ECF No. 1. Like Plaintiffs here and Prado, Flores alleges that Wells Fargo made mistakes in connection with her loan modification request because of faulty automation software. *See id.* Plaintiff Flores seeks to represent a nationwide class defined as:

> All persons within the United States who applied to Wells Fargo Bank, N.A. for a mortgage loan modification, were denied a modification by Wells Fargo due to an automation error, and lost their home to foreclosure by Wells Fargo.

*Id.* ¶ 33.

On October 28, 2024, Wells Fargo filed an Unopposed Motion to Stay the *Flores* action pending resolution of the instant motion and Wells Fargo's motion to consolidate *Prado* with this action. *Flores*, ECF No. 13. Flores's lawyers have indicated that the outcome of the instant motion may impact whether they agree it is appropriate to transfer the *Flores* action to this Court. In the meantime, and in any event, Wells Fargo believes *Flores* should be dismissed, stayed or transferred under the first-to-file rule. It filed a motion to that effect in the Northern District of Florida on November 2, 2024. *See Flores*, ECF No. 14.

## II. ARGUMENT

### A. Consolidation—Not Intervention and Severance—Is Warranted Here.

Prado's basis for intervening in this first-filed action, and for severing the claims of seven named plaintiffs and replacing their counsel with hers, is a supposed "inherent conflict of interest" between the putative classes. Mot. at 7, 13. As demonstrated above, however, Prado's own complaint proves that this supposed "conflict" does not exist. Her putative class, like Plaintiffs' putative class, includes all borrowers—whether foreclosed or not—who received a letter from Wells Fargo regarding potential errors in connection with their loan modification applications. And in any event, there is no conflict between foreclosed and non-foreclosed borrowers, because both groups seek damages resulting from the same alleged conduct. And finally, Prado admits that her factual allegations are "compatible" with those at issue here. *Id.* at 6. The interests of the putative classes are aligned, and Prado cannot meet the requirements of Rule 24.

1. **Prado Is Not Entitled to Intervene as of Right.**

Courts will grant intervention as of right under Rule 24(a)(1) when (1) the motion is timely; (2) the applicant asserts "an interest relating to the property or transaction which is the subject of the action"; (3) the disposition may impair the applicant's ability to protect her interest; and (4) "the applicant's interest is not adequately represented by the existing parties." *McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992). "Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Because Prado fails at prongs (3) and (4), her motion should be denied.

a. **Prado's Interests Will Not Be Impaired Absent Intervention.**

First, Prado cannot show that her interests may be impaired absent intervention. In support of this factor, Prado first invokes the non-existent conflict of interest between her putative class and Plaintiffs' putative class. Mot. at 13. But according to Prado's own allegations, she (1) was given a permanent loan modification with erroneous terms; and (2) received letters stating "that an error may have occurred relating to your approval [sic] and finalized loan modification." *Prado* Compl. ¶¶ 39, 52, 59–66. She thus falls within Plaintiffs' putative class, which includes (1) "[a]ll Persons"; (2) who "received a permanent loan modification . . .based on inaccurate calculations"; and (3) "were sent an 'apology letter' from [Wells Fargo] stating that an error may have occurred related to their loan modification." CAC ¶ 214. And because Prado "is a member of the proposed class in this action[,]" her "interests are in no way impaired or impeded if she is not permitted to intervene." *Allen v. Hyland's Inc.*, 2012 WL 12887827, at *2 (C.D. Cal. Aug. 28, 2012) (denying intervention as of right). Indeed, "Rule 23 is specifically designed to avoid this kind of intervention by a class member." *Id.* at *3 (citing *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 551 (1974)).

In any event, there would be no conflict even if Prado's description of her putative class were correct (and it is not). Prado admits the factual allegations here "are compatible" with her factual allegations, and her claims are based on the same underlying conduct at issue here. Mot. at 6. Accordingly, whether or not a borrower was foreclosed makes no practical difference at this stage. Moreover, doubts about whether Plaintiffs' putative class might ultimately be certified, or claims that certain groups may

seek different types of damages, do not create a conflict of interest before the certification stage. Instead, "[a] conflict must be manifest at the time of certification rather than dependent on some future event or turn in the litigation that might never occur." 1 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:58 (6th ed. 2023). Accordingly, "simply pointing to some future events that might never occur, as [Prado] does here, is not enough to show a manifest conflict." *Fine v. Kan. City Life Ins. Co.*, 2023 WL 7393027, at *5 (C.D. Cal. Nov. 6, 2023).

Finally, Prado argues that consolidation would deprive her of "counsel of her own choosing," Mot. at 13. That argument is quite curious, given that Prado urges the Court to sever the claims of seven named plaintiffs and appoint her lawyers as their lawyers, thereby depriving them of "counsel of their own choosing." But she notably "makes no argument as to why Plaintiffs' choice of counsel deserves any less respect than [her] own[.]" *Espinosa v. Hyundai Motor Am.*, 2012 WL 13226634, at *7 (C.D. Cal. Dec. 28, 2012).

Prado has not shown that her interests will be impaired absent intervention.

### b.  Prado Cannot Establish Inadequate Representation.

Nor can Prado establish inadequate representation. Courts consider three factors in determining the adequacy of representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (quotations and citation omitted). Of these factors, "the most important" is "how the interest [of the movant] compares with the interests of the existing parties." *Forsyth v. HP Inc.*, 2020 WL 71379, at *3 (N.D. Cal. Jan. 7, 2020) (quotations and citation omitted). When the moving party and the existing parties "have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* (quotations and citation omitted). Moreover, when the movant "has an identical interest to the present party," the movant must make "a compelling showing to show inadequate representation." *Id.* (quotations and citation omitted).

Here, Prado and Plaintiffs "have the same ultimate objective": pursing claims based upon Wells Fargo's use of allegedly faulty loan modification software, which may have impacted the outcome of some

6
WELLS FARGO BANK, N.A.'S RESPONSE TO BARBARA PRADO'S MOTION TO INTERVENE
CASE NO. 3:24-CV-01358-MMC

modification applications. While Prado argues that her case is different because "the only overlapping claim between the cases is the sole California UCL claim," that is irrelevant. As this Court has explained, "[t]he standard is not whether the intervenor and present party share identical claims." *Forsyth*, 2020 WL 71379, at *4. Instead, "district courts should look at the ultimate purpose of the litigation, *i.e.*, what goals is the present party trying to achieve by litigating the action." *Id*. Here, Prado and Plaintiffs' end goal is the same: compensation for alleged errors made in connection with their loan modification applications. Accordingly, Prado "must make a compelling showing to demonstrate inadequate representation." *Callahan*, 42 F.4th at 1021. No such showing is or could be made here. Given the overlap between the cases, Prado's and Plaintiffs' interests are aligned. *Forsyth*, 2020 WL 71379, at *4 (denying intervention because the movant was a member of the putative class he purported to challenge); *see also Opperman v. PATH, Inc.*, 2015 WL 12941889, at *2 (N.D. Cal. Jan. 5, 2015) (denying intervention as of right because movant's claims were "highly duplicative of those already alleged on behalf of the class" and "existing parties adequately represent his interest") (quotations and citation omitted).

Prado's disagreements with Plaintiffs' counsel's litigation strategy—including whether Plaintiffs' putative class is "intrinsically unmanageable," whether it will ultimately be certified or settled, and whether damages can be calculated on a classwide basis[3]—do not move the needle. "Differences in litigation strategy are not enough to justify intervention as a matter of right." *Forsyth*, 2020 WL 71379, at *5 (quotations and citation omitted); *see also Callahan*, 42 F.4th at 1021 (affirming denial of intervention of right when movant's arguments amounted to "a disagreement over litigation strategy or legal tactics"). As this Court has explained, "[e]vidence that the proposed intervenor and the existing parties have different views of the facts, the applicable law, or the likelihood of success of a particular litigation strategy is insufficient to rebut the presumption of adequate representation." *Forsyth*, 2020 WL 71379, at *5 (quotations and citation omitted); *see also Russell v. Kohl's Dep't Stores*, 2016 WL 4414848, at *3 (C.D. Cal. Apr. 12, 2016) (denying intervention as of right and rejecting argument that plaintiffs were inadequate because their proposed class was too broad to be certified). Prado cannot show inadequate representation.

---

[3] Mot. at 6–7, 11.

The motion to intervene as of right should be denied.

### 2. The Court Should Deny Prado's Request for Permissive Intervention.

Federal Rule of Civil Procedure 24(b) provides for permissive intervention. "A court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996) (citation omitted). If these factors are met, "the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The court may also consider other factors, including the nature and extent of the intervenors' interest and whether the intervenors' interests are adequately represented by other parties." *Perry*, 587 F.3d at 95. Ultimately, whether to grant permissive intervention is in the court's sole discretion. *See S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002).

Prado invokes the "inherent conflict of interest" as the lone basis for permissive intervention. Mot. at 15. As shown above, however, there is no conflict of interest between class members who were foreclosed and those who were not, because their claims are based on the same underlying conduct: alleged errors made during the loan modification process. Accordingly, Prado's interests are aligned with those of Plaintiffs, and she is adequately represented here. Prado also does address whether intervention and severance would prejudice Wells Fargo's rights, perhaps because she has no good answers. Indeed, Prado's proposal would subject Wells Fargo to needlessly duplicative discovery, motions practice and discovery, and class certification proceedings. Permissive intervention should be denied. *See Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (permissive intervention is not proper where it "would only serve to undermine the efficiency of the litigation process") (quotations omitted); *Callahan*, 42 F.4th at 1022 (affirming denial of permissive intervention because, inter alia, "permitting intervention would not contribute to the factual development of issues in the case").

### B. The Court Should Deny the Motion to Sever.

The Court should also deny Prado's motion to sever the claims of seven named plaintiffs, which would also result in duplicative discovery, motions practice, and class certification proceedings. *See*

*Moulvi v. Safety Holdings, Inc.*, 2021 WL 4494191, at *11 (E.D. Va. Sept. 30, 2021) (denying motion to sever, reasoning that "[s]hould this Court grant Defendants' motions to sever, '[s]everance would . . . require duplicative presentation of at least some common factual and legal issues in separate judicial forums'" and the parties "may be forced to contend with inconsistent rulings on important issues, such as class certification or discovery disputes, among separate courts") (citations omitted).  Prado has not cited a single case where the court severed the claims of putative class members, much less at such an early stage of the litigation.[4]  In fact, none of her cases deal with class actions at all.  In *Hard Drive Products, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1158–65 (N.D. Cal. 2011), and *Maverick Entertainment Group, Inc. v. Doe*, 810 F. Supp. 2d 1, 10–17 (D.D.C. 2011), the courts considered whether to sever the plaintiffs' claims against hundreds of separate "Doe" (i.e., unknown) defendants accused of copyright infringement.  And *Investors Research Co. v. United States District Court*, 877 F.2d 777 (9th Cir. 1989), does not address severance at all, but instead—as demonstrated by Prado's own quotation—says that "[t]he district court has broad discretion under this rule ***to consolidate cases pending in the same district***."  Mot. at 16 (emphasis added).  That is precisely what the Court should do here.

Judge Donato's recent order in *In re Wells Fargo Mortgage Discrimination Litigation*, No. 3:22-cv-00990 (ECF No. 49, Jan. 18, 2023), granting consolidation and ordering the plaintiffs to file a single, consolidated complaint, is instructive.  There, the plaintiffs, who alleged discrimination in connection with their mortgage loan applications, sought to file two complaints, one on behalf of Black loan applicants and another on behalf of non-Black minority applicants, based on the argument that Black applicants suffered more extensive harm than other applicants.  In denying the request, Judge Donato explained:

> The cases will be consolidated into a single action with one amended complaint.  The reasons for this are straightforward.  All of the complaints allege the same theory, namely that Wells Fargo discriminated against non-white customers with respect to residential mortgages and refinances.  It may be, as plaintiffs suggest, that some plaintiffs experienced more discriminatory conduct and impacts than others, but that is a difference of degree and

---

[4] Indeed, these issues are better suited for resolution at the class certification stage.  *See, e.g.*, *Fraihat v. U.S. Immigr. & Customs Enf't*, 2020 WL 2759848, at *13 (C.D. Cal. Apr. 15, 2020) ("On balance, the Rule 21 factors weigh against severance.  Defendants' arguments are better suited for the class certification stage, and the Court cannot agree that joinder is so defective as to warrant severance at this juncture.").

>   not substance. … Differences among plaintiffs in treatment and impact can be readily managed in a variety of ways at class certification and other proceedings.

No. 3:22-cv-00990, ECF No. 49 at 2.

The same is true here. Prado's and Plaintiffs' claims are based on the same theory—that Wells Fargo's use of allegedly faulty software led to mistakes on their loan modification applications—but Prado nonetheless justifies her request for separate actions and separate counsel on the supposition that some borrowers suffered more harm than others. But, as shown above, that is not grounds for the Court to sever the claims of seven named plaintiffs and have them proceed in a separate, duplicative action.

The motion to sever should be denied.

### C.  There Is No Reason to Appoint More Interim Lead Counsel.

Finally, the Court should deny Prado's motion to appoint more interim lead counsel, which is not necessary to protect the interests of the putative class and would only hinder efficiency.

A court may—but is not required to—"designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The court's goal in appointing interim counsel is "achieving efficiency and economy without jeopardizing fairness to the parties." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) (quoting Manual for Complex Litigation (Fourth) § 10.224 (2004)). Accordingly, interim counsel should not be appointed unless it would make the litigation "more efficient, or perhaps, more significantly, provide a benefit to the putative classes." *Neal v. Wal-Mart Stores, Inc.*, 2019 WL 3407143, at *4 (W.D.N.C. July 26, 2019). When appointment of co-lead counsel would "impede efficiency and coordination," it should be denied. *Stasi v. Inmediata Health Grp. Corp.*, 2021 WL 5861563, at *2 (S.D. Cal. Mar. 10, 2021); *see also In re Nest Labs Litig.*, 2014 WL 12878556, at *2 (N.D. Cal. Aug. 18, 2014) (declining to appoint co-lead interim class counsel because "greater efficiency and clarity can only be realized if the Court appoints *one* firm as interim class counsel") (emphasis in original); *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *4 (S.D. Cal. Mar. 1, 2013) (declining appointment of an executive committee or liaison counsel, in part, because "there has been no showing that the interests of efficiency and economy are best served" by the appointment).

The Court has already appointed two lawyers (Mr. Dann and Mr. Zimmerman), each from a separate law firm, to serve as interim lead counsel in this case. ECF No. 27. On September 23, 2024, after the Court had already appointed Mr. Dann and Mr. Zimmerman as interim lead counsel, yet another lawyer, Mr. Timothy G. Blood, purported to enter an appearance on Plaintiffs' behalf, albeit without Court permission. ECF No. 63. Now, Prado asks this Court to appoint three more lawyers, from two additional firms, as interim counsel for a new putative class (*see* Mot., generally), and the parties can reasonably anticipate yet another set of lawyers (three firms have appeared in *Flores*) vying for a position in these overlapping litigations. But appointing multiple co-lead counsel here is not necessary to protect the interests of the putative class and would only hinder efficiency. Prado's proposal—having three lawyers represent a separate class in a separate lawsuit seeking damages based on the same underlying conduct—would entail duplicative discovery, duplicative motion practice, and duplicative class certification proceedings. That is not efficiency. It is the opposite. Again, as this Court has observed, "greater efficiency and clarity can only be realized if the Court appoints *one* firm as interim class counsel." *In re Nest Labs Litig.*, 2014 WL 12878556, at *2 (emphasis in original); *see also Cadena v. Am. Honda Motor Co.*, 2020 WL 3107798, at *1 (C.D. Cal. June 9, 2020) (noting the inefficiencies that are likely to arise if another firm were to serve as third co-lead counsel, especially where the parties have not agreed to do so); *Haynie v. Cornell Univ.*, 2020 WL 6043947, at *3 (N.D.N.Y. Oct. 13, 2020) ("appointment of a single lead counsel best serves the interests of judicial economy while protecting the interests of the putative class" because "the legal theories and claims are not so complex as to warrant a multi-firm counsel structure").

There is no reason to appoint additional interim counsel. Prado's motion should be denied.[5]

### III.    CONCLUSION

Consolidation—not intervention, severance, and appointment of additional interim counsel—is the proper course here. Prado's motion should be denied.

---

[5] Alternatively, Prado's proposal should be modified to avoid inefficiencies, duplication of effort, misjudgments in staffing, and the like. For example, should the Court determine that co-lead counsel is warranted, it should impose timekeeping and billing guidelines that require timekeepers to enter their time by the last day of the month and finalization of bills within 14 days thereafter; billing in .10 increments; prohibition of block billing; and limiting the fees that can be recovered (e.g., by prohibiting recovery of fees for multiple attorneys attending a deposition).

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: November 13, 2024 | WINSTON & STRAWN LLP |
| 3 | | |
| 4 | | By: */s/ Shawn R. Obi* |
| | | Shawn R. Obi |
| 5 | | Amanda L. Groves (SBN: 187216) |
| | | agroves@winston.com |
| 6 | | Shawn R. Obi (SBN: 288088) |
| | | sobi@winston.com |
| 7 | | WINSTON & STRAWN LLP |
| | | 333 S. Grand Avenue, 38th Floor |
| 8 | | Los Angeles, CA 90071 |
| | | Telephone: (213) 615-1700 |
| 9 | | Facsimile: (213) 615-1750 |
| 10 | | Angela A. Smedley (Admitted pro hac vice) |
| | | asmedley@winston.com |
| 11 | | WINSTON & STRAWN LLP |
| | | 35 W. Wacker Drive |
| 12 | | Chicago, IL 60601 |
| | | Telephone: (312) 558-5600 |
| 13 | | Facsimile: (312) 558-5700 |
| 14 | | Attorney for Defendant, |
| | | WELLS FARGO BANK, N.A. |