**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Ryan L. McBride Esq. (SBN: 297557)
ryan@kazlg.com
Jonathan Gil (SBN: 347431)
jonathan@kazlg.com
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KELLETT & BARTHOLOW PLLC**
Theodore O. Bartholow, III*
thad@kblawtx.com
Karen L. Kellett *
kkellett@kblawtx.com
11300 N. Central Expy., Suite 301
Dallas, TX 75243
Telephone: (214) 696-9000
Facsimile: (214) 696-9001

*Admitted pro hac vice*

*Attorneys for Proposed Intervenor Barbara Prado*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re Wells Fargo Mortgage Modification Litigation* | Case No.: 3:24-cv-01358 MMC<br><br>**PROPOSED INTERVENOR BARBARA PRADO'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OTHER ACTION**<br><br>Date:   December 13, 2024<br>Time:   9:00 a.m.<br>Place:  San Francisco Courthouse<br>           Courtroom 7 – 19th Floor<br>           450 Golden Gate Avenue<br>           San Francisco, CA  94102<br><br>Judge: Hon. Maxine M. Chesney |

- 1 -

**TABLE OF CONTENTS**

I.    Introduction ..................................................................................................................... 4

II.   Factual and Procedural Background................................................................................ 5

III.  Argument and Authorities ............................................................................................... 7

    A.  The *Prado* case and this case do not have overlapping factual and legal issues warranting consolidation. ..................................................................................... 7

    B.  The cases cited by Wells Fargo are distinguishable from the two cases they seek to consolidate here. ............................................................................................... 11

    C.  Wells Fargo has failed to show that the discovery needed to prove the claims in *Prado* will overlap with the discovery needed to prove the claims of the class members in this case who lost their homes. ........................................................ 13

    D.  Alternatively, if this Court consolidates the *Prado a*ction with this case, it should separate the two distinct classes and appoint *Prado* counsel as interim lead counsel for the *Prado*-related class............................................................................... 14

# TABLE OF AUTHORITIES

Cases

*Amador v. Logistics Express, Inc.,*
2010 WL 3489038, 2010 U.S. Dist. LEXIS 97999, at *5 (C.D. Cal. Aug. 27, 2010) ..................... 14

*Crews v. Rivian Auto., Inc.,*
2022 WL 17883615, 2022 U.S. Dist. LEXIS 118795 at *4-5 (C.D. Cal. July 1, 2022) ................ 12

*Daly v. Amazon.Com, Inc.,*
2024 U.S. Dist. LEXIS 34501, 2024 WL 841457, at * 3 (W.D. Wash. Feb. 28, 2024 ..................... 4

*In re Amazon Serv. Fees Litig.,*
2024 WL 1328657, 2024 Dis. LEXIS 56788, *4 (W.D. Wa. March 28, 2024) .......................... 7, 13

*In re Oreck Corp. Halo Vacuum and Air Purifiers Mktg. and Sales Pracs. Litig.,*
282 F.R.D. 486, 492 (C.D. Cal. 2012) ............................................................................................ 11

*Melgoza v. Aegis Sen Cmtys. LLC,*
2022 WL 1693706, 2022 U.S. Dist. LEXIS 95146 (N.D. Cal. May 26, 2022) .............................. 12

*Snyder v. Nationstar Mortgage, LLC,*
2016 WL 3519181, 2016 U.S. Dist. LEXIS 83924, *4-5 (N.D. Cal. June 28, 2016) ...................... 7

Statutes

California Penal Code § 496(a) .................................................................................................. 6, 8
California Civil Code § 1670.5. ...................................................................................................... 8

Regulations

12 C.F.R. § 1024.41(c)(1)-(2) (Regulation X) .............................................................................. 10

## I. INTRODUCTION

As noted by one court when considering consolidation of cases against an extremely large company:

> [Defendant] is huge; it may get accused of violating similar laws many times a year, in many different ways, and not all of these actions can or should be consolidated.

*Daly v. Amazon.Com, Inc.*, No. C22-910, 2024 U.S. Dist. LEXIS 34501, 2024 WL 841457, at * 3 (W.D. Wash. Feb. 28, 2024). That quote applies equally to Wells Fargo with respect to this case and *Prado*.[1]

Proposed Intervenor Barbara Prado has set out at length why *Prado* should not be consolidated with this case, but rather, that the *Prado*-related plaintiffs in this case who obtained a mortgage modification and did not lose their homes (Vegara, the Petersons, the Liggetts, Clingerman and Keaveny), should be severed from this action and consolidated with *Prado*. Prado's motion to intervene, ECF 67-1 is incorporated as set forth herein. The motion to intervene discusses the differences in the facts and law with respect to *Prado* and the *Prado*-related plaintiffs who obtained mortgage modifications, and the other plaintiffs in this case who lost their homes, allegedly as a result of Wells Fargo's failure to grant them mortgage modifications. The motion to intervene explains why consolidation with Ms. Prado's case with this case prejudices her, and how the widely different claims of the two sets of plaintiffs will make certification of the class as pled almost impossible. In short, for all the reasons set out in the motion to intervene, Ms. Prado and the *Prado*-related plaintiffs in this case have conflicts of interest such that they cannot be adequate class representatives for each other's claims, and that the current lead counsel cannot adequately represent the class because of these conflicts of interest among the class members. ECF 67-1.

---

[1] *Barbara Prado v. Wells Fargo & Company, et al.*, No. 24-cv-0515-MMC, in the United States District Court for the Northern District of California ("*Prado*").

## II. FACTUAL AND PROCEDURAL BACKGROUND

The original complaint in this case was filed on March 7, 2024, as *Curry, et. al v. Wells Fargo Bank, N.A.* (the "Curry Case" or "*Curry*"). The *Curry* plaintiffs originally asserted claims against Wells Fargo based on the common facts that they (1) received letters from Wells Fargo in December of 2023, which explained that Wells Fargo may have made an error with respect to the *Curry* plaintiffs' previously-*denied* mortgage modification applications and attached checks purporting to compensate each of the *Curry* plaintiffs for consequences they may have experienced as a result of Wells Fargo's unspecified errors, and (2) each of the *Curry* plaintiffs asserted that they *lost their homes* (either through foreclosure, short sale, or economically disadvantageous quick sale to preserve accumulated equity) as a consequence of Wells Fargo's improper denial of their mortgage modification applications. ECF 1 at ¶¶ 97-127. The *Curry* plaintiffs brought claims on behalf of a nationwide class for: breach of contract (Count I), intentional infliction of emotional distress (Count II), and negligence (Count III); on behalf of a California subclass for fraudulent concealment (Count IV), and violation of the California homeowners' bill of rights (Count V); and on behalf of plaintiff Nelson for an Illinois subclass for violation of the Illinois consumer fraud and deceptive business practices act (Count VII).[2] *See id.* at ¶¶ 142 – 219.

The original *Curry* complaint's class definitions all included allegations that the plaintiffs qualified for but were denied a permanent loan modification. *Id.* at ¶¶ 128-130. In general, the original complaint is replete with allegations that the plaintiffs were eligible for loan modifications, Wells Fargo denied them loan modifications, and plaintiffs lost their homes as a result. *See id.*, generally.

On July 8, 2024, under the name *In re Wells Fargo Mortgage Modification Litigation*, the

---

[2] There is no count VI in the original complaint.

*Curry* plaintiffs, following voluntary consolidation with plaintiffs in another case, *Beloff v. Wells Fargo Bank, N.A.*, filed a Consolidated Class Action Complaint ("CCAC"), adding ten (10) new named plaintiffs, including Beloff, and four (4) new state-law causes of action. ECF 41. (The new named plaintiffs are Beloff, ¶¶ 17, 138-146; Risconsin, ¶¶ 18, 147-158; Kea, ¶¶ 19, 159-170; Vegara, ¶¶ 20, 171-179; the Petersons, ¶¶ 21, 180; the Liggetts; ¶¶ 22, 188-197; Clingerman, ¶¶ 23, 198-204; and Keaveny, ¶¶ 24, 205-213.)  Like the original plaintiffs, new plaintiffs Beloff, Risconsin, and Kea alleged that they should have received a mortgage modification from Wells Fargo, but because of Wells Fargo's malfeasance, plaintiffs did not obtain the modification and lost their home as a result. *See, i.e., id.* at ¶ 142 (deed in lieu), ¶ 154 (foreclosure), ¶ 166 (forced sale).  In contrast, new plaintiffs Vegara, the Petersons, the Liggetts, Clingerman and Keaveny claim in the CCAC that they received mortgage modifications, and *none* lost their home due to Wells Fargo's illegal conduct. *See id.* at ¶¶ 171-213.  Nevertheless, the CCAC places both types of plaintiffs in the same classes. *See i*d*.* at ¶¶ 212-222.

On August 13, 2024, unaware that the CCAC had been filed adding seven plaintiffs who obtained mortgage modifications and did not lose their homes due to Wells Fargo's failing to provide them a mortgage modification, Ms. Prado filed her class action in this same district, Case No. 3:24- cv-05105. *Prado*, Dkt. No. 1.

Ms. Prado's case is based on her receipt of two vague letters in June of 2024, each with checks, related to her "approved and finalized loan modification[.]" *Id*. at ¶¶ 34-35. Prado's claims solely concern Wells Fargo's misconduct against class members who *received* modifications along with these vague letters and checks. *See id.* at ¶¶ 33-66. Ms. Prado brings two causes of action for a California subclass: California's UCL and California Penal Code 496(c), *id.* at ¶¶ 80-113, and two causes of action on behalf of a nationwide class:  conversion and unjust enrichment. *Id*. at ¶¶ 114 – 124.

### III. ARGUMENT AND AUTHORITIES

In deciding whether to consolidate, courts generally look to such factors as "judicial economy, whether consolidation would expedite resolution of the case, whether separate cases may yield inconsistent results, and the potential prejudice to [any opposing party]." *In re Amazon Serv. Fees Litig.*, Case No. 2:22-cv-00743-TL, 2024 WL 1328657, 2024 Dis. LEXIS 56788, *4 (W.D. Wa. March 28, 2024). As set out in Ms. Prado's motion to intervene, the Court should sever the claims of the *Prado*-related plaintiffs and consolidate them and their claims with *Prado*. Consolidating Ms. Prado's claims with this case subjects her to the same conflicts of interest that exist between those class members whose homes were foreclosed and those whose homes were not, and prejudices Ms. Prado for all the reasons listed in the motion to intervene. ECF 67-1.

The party seeking consolidation bears the burden of demonstrating that convenience and judicial economy would result from consolidation. *Snyder v. Nationstar Mortgage, LLC*, Case No. 15-cv-03079-JSC, 2016 WL 3519181, 2016 U.S. Dist. LEXIS 83924, *4-5 (N.D. Cal. June 28, 2016). Wells Fargo has failed to meet its burden.

**A.   The *Prado* case and this case do not have overlapping factual and legal issues warranting consolidation.**

Wells Fargo cites alleged common issues of fact and law in the two cases, but that is not true of the claims of Ms. Prado and the *Prado*-related plaintiffs in this case who did not lose their homes but were instead granted a mortgage modification that had some accounting error. Exhibit A attached hereto sets out the CCAC's alleged common questions of law and fact, and typicality assertions, compared with whether those alleged "common" questions of law and fact actually are common to or typical of the claims of Ms. Prado, or the *Prado*-related plaintiffs in this case.

The causes of action in the two lawsuits are not the same.

The causes of action in the CCAC are:

> Count I – breach of contract – nationwide
> Count II – intentional infliction of emotional distress – nationwide
> Count III – negligence – nationwide

The new named plaintiffs who were granted mortgage modifications and did not lose their homes based on Wells Fargo's alleged malfeasance, allege:

> Count IV – California fraudulent concealment (Curry, Liggetts)*
> Count V – California homeowner's bill of rights (Curry, Liggets)* [3]
> Count VI – California UCL (Curry, Liggetts)
> Count VII – Illinois law (Nelson, Petersons)
> Count X – Washington law (Keaveny)
> Count XI – Virginia law (Vergara)

Ms. Prado brings the following causes of action:

> First Cause of Action - California's UCL – California subclass
> Second Cause of Action - California Penal Code § 496(c) – California subclass
> Third Cause of Action - Conversion – nationwide class
> Fourth Cause of Action - Unjust Enrichment – nationwide class

Even though both lawsuits bring a California UCL claim, the underlying allegations that support the California UCL claim are different in the two cases. In this case, the UCL claim is based on denying of mortgage modifications, offering mortgage modifications that were miscalculated in violation of HAMP and other governmental requirements, failing to properly verify or audit Wells Fargo's software, and the failure by Wells Fargo's executives to ensure Wells Fargo's compliance with HAMP. For the unlawful prong of the California UCL, the CCAC alleges that Wells Fargo's verification and auditing practices run afoul of the public policies underlying HAMP and the California Homeowner's Bill of Rights. *See* ECF 41, ¶¶ 291-300.

By contrast, *Prado* pleads that Wells Fargo violated the deceptive and unfair prongs of the UCL by committing errors in connection with loan modifications and failure to provide an adequate remedy. The *Prado* unlawful prong is based on California Penal Code § 496(a), conversion, and California Civil Code § 1670.5. *Prado*, Dkt. No. 1, ¶¶ 80-102.

---

[3] Curry brought the California fraudulent concealment and the California homeowner's bill of rights claims in the original complaint.

The two different types of class members (ones who lost their homes and ones who received a mortgage modification) received letters from Wells Fargo at different times, with different amounts of money, with different representations about different errors, and creating vastly different damages.

As to class members in the captioned case who allegedly lost their homes as a result of Wells Fargo's errors, they received letters in December 2023 stating in part as follows:

> "During a review of the account, we identified that when the loan was considered for payment assistance options, an error may have occurred. As a result, we are enclosing a check for $200.00." (the "Apology Letters").

ECF 41, ¶ 103.

Ms. Prado, and presumably the *Prado*-related plaintiffs in this case, received letters beginning in June of 2024 stating that Wells Fargo had "identified that an error may have occurred related to your approved and finalized loan modification." *See Prado*, Dkt. No. 1, p. 7, l. 16-25. Ms. Prado's first letter enclosed a check for $500, and the second letter enclosed a check for $690.65. *See id*.

The CCAC alleges a broad array of facts and actions that allegedly make Wells Fargo liable in this case as to those plaintiffs who were denied mortgage modifications and lost their homes. Wells Fargo will deny those alleged facts, and the proof of the truth or falsity of those alleged facts will require vast discovery simply not relevant to any of Ms. Prado's claims.

For instance, plaintiffs in this case allege that Wells Fargo's "calculation error" caused Wells Fargo to deny class members mortgage modifications, and the denial of the modification caused them to lose their homes. ECF 41, ¶ 116, 126, 135, 144, 156 and 168.

However, Wells Fargo has admitted none of this. Wells Fargo (a) has not admitted that the error referenced in the December 2023 letters was a "calculation error," (b) has not admitted that the error caused Wells Fargo to deny the class members mortgage modifications, and (c) has

not admitted that class members lost their homes as a result of (a) and (b).

Class members will have to obtain evidence of each of these factual allegations, prove the allegations, and show that Wells Fargo's actions were fairly uniform in order for plaintiffs to survive a predominance argument.

This may be difficult as loan modifications can be denied for a number of reasons, some of which are alluded to by the class representatives.[4] *See, e.g.*, ECF 41, ¶ 152 (Defendant Risconsin indicating receipt of letter from Wells Fargo indicating that the modification was not approved because he did not provide Wells Fargo with all of the information requested). Even if Wells Fargo denied class members loan modifications, it does not follow necessarily that the class members lost their homes because of the denial of the modifications.[5] On top of that, of course, remains the issue of individual damages, which will be completely different and subject to different proof for each class member who lost a home. None of Ms. Prado's claims require discovery of information to prove the truth or falsity of these alleged facts and defenses.

For Plaintiffs' breach of contract claim, with respect to class members who were denied loan modifications, the CCAC alleges that "each class member provided the required documents, information and certifications for Wells Fargo to review for loan modification eligibility." ECF 41, ¶ 238. Wells Fargo will deny that, and seek to prevent class certification on that claim, arguing its defenses are unique to the individual class members. Both the claims and the defenses require discovery not relevant to Ms. Prado or the *Prado*-related plaintiffs who actually received

---

[4] Mortgage servicers routinely deny the applicant's modification applications for a number of reasons wholly unrelated to any potential "calculation error," such as failure to provide the required paperwork, failure to provide required paperwork timely, failure to accept the loan modification offered timely, and failure to send additional information or paperwork requested, among other reasons. *See* loss mitigation section 12 C.F.R. § 1024.41(c)(1)-(2) (Regulation X) and Official Interpretation to same, setting timelines for submission of all documents required by servicer for a "complete" modification application, and establishing a temporary prohibition against foreclosure only if a complete application is timely received the requisite number of days before a scheduled foreclosure.

[5] For example, a class member who received a loan modification may still have been unable to afford the payments because they thereafter lost their job, or for some other reason.

modifications and did not lose their homes.

In addition, some of the causes of action in the CCAC rest on an allegation that Wells Fargo provided negative credit reporting. *See id.* at ¶¶ 89-90, 105, ¶ 242 (breach of contract), ¶¶ 257 – 266, 270 – 274 (negligence). Ms. Prado's causes of action are not based on negative credit reporting, she will not need any discovery based on negative credit reporting, and she will not need to prove negative credit reporting at trial.

In paragraph 226 of the CCAC, plaintiffs describe numerous issues of law and fact that they assert are true for all class members. ECF 41, ¶ 226. These are mostly allegations of common questions of fact, presumably facts plaintiffs believe they will need to prove at trial to prevail on their claims in this case. As shown on Exhibit A, Ms. Prado will not need to prove these facts at trial, and thus will not need any discovery with respect to these alleged facts. Several of the questions of fact, allegedly common to all class members, are not even common to the *Prado*-related plaintiffs.

**B.  The cases cited by Wells Fargo are distinguishable from the two cases they seek to consolidate here.**

In support of its argument that common questions of law and fact favor consolidation of *Prado* with the captioned action, Wells Fargo cites three cases, each of which are distinguishable from the case at bar. ECF 66, pp. 4-5.

First, Wells Fargo cites *In re Oreck Corp. Halo Vacuum and Air Purifiers Mktg. and Sales Pracs. Litig.*, 282 F.R.D. 486, 492 (C.D. Cal. 2012) for the assertion that district courts in California have consolidated class actions where common issues of fact were found, but less than a complete overlap of claims existed. ECF 66, p. 4. In that case, the court found that consolidation (for pre-trial purposes only) was justified because, although two separate Oreck products were involved (vacuum cleaners and air filters), the cases involved nearly identical misrepresentations by Oreck about how their products could kill certain bacteria and viruses and were largely

marketed together. 282 F.R.D. at 490-492.

Unlike *Oreck*, the instant cases do not involve an identical, uniform set of misrepresentations contained in an advertising campaign to market the defendant's line of disease-fighting products, where the only factual difference is which of two products the putative plaintiffs purchased. Here, there are stark factual differences between the original *Curry* complaint and the *Prado* complaint: the original *Curry* plaintiffs received offers from Wells Fargo to compensate them for an error or errors that occurred when Wells Fargo was considering them for payment assistance. ECF 41, at ¶ 103. The original *Curry* plaintiffs allege that the denial of the loan modification caused them to lose their homes. Conversely, each of the *Prado* plaintiffs received a modification and did not lose their homes. For this reason, there is very little overlap between the factual allegations in the instant cases, including the causation and damages.

Second, Wells Fargo cites *Melgoza v. Aegis Sen Cmtys. LLC*, No. 3:22-cv-01756-LB, 2022 WL 1693706, 2022 U.S. Dist. LEXIS 95146 (N.D. Cal. May 26, 2022) for the same proposition: that less than a complete overlap of claims is required to justify consolidation of actions. ECF 66 at p. 5. In *Melgoza*, the court consolidated two putative wage and hour class action cases (*Melgoza* and *Salgona*) which contained six identical causes of action and considerable overlap in the handful of remaining claims, because "the putative class in *Melgoza* action is subsumed within the putative class in *Salgona*." 2022 WL 1693706 at *2. Here, the class definition in *Prado* is not "subsumed within the putative class" in the original *Curry* complaint, because the class definitions between the cases and underlying facts and claims are demonstrably different for the reasons stated herein. As argued in Prado's motion to intervene and this response, the *Curry* plaintiffs' subsequent attempts to expand the *Curry* class in the CCAC to include the *Prado* plaintiffs demonstrates the reality that the two cases have different facts and different proofs, placing class certification at risk.

Finally, Wells Fargo cites *Crews v. Rivian Auto., Inc.*, No. 2:22-CV-01524-RGK-EX,

2022 WL 17883615, 2022 U.S. Dist. LEXIS 118795 at *4-5 (C.D. Cal. July 1, 2022), in which the court, in the absence of any objection, consolidated three cases which were factually identical in that they were based on the exact same misrepresentations by senior executives of the car manufacturer Rivian prior to its initial public offering. *Id*. at *4-5. The cases also shared the exact same causes of action, except one case alleged fewer causes of action, which did not bar consolidation because all of the claims were based on the same alleged course of conduct. *Id*. at *5-6. The claims in this case are not based on the same alleged course of conduct.

 **C.**   **Wells Fargo has failed to show that the discovery needed to prove the claims in *Prado* will overlap with the discovery needed to prove the claims of the class members in this case who lost their homes.**

Wells Fargo argues that the cases' "factual and legal overlap means that consolidation will save time and effort." ECF 66, p. 12 of 16. For this point, Wells Fargo cites cases that discuss overlapping discovery in *those* case. *Id.* However, Wells Fargo does not actually describe any such anticipated overlapping discovery or how consolidation would promote judicial economy in this case. In a similar situation, as another court observed:

> Defendant insists that "overlapping and duplicative discovery" supports consolidation, but this is not a self-evident proposition. Defendant does not at all explain what the overlapping discovery might be and thus to what degree consolidation would promote judicial economy.

*In re Amazon Serv. Fee Litig.*, 2024 U.S. Dist. LEXIS 56788, * 7.

As set forth *supra*, and as shown on <u>Exhibit</u> <u>A</u>, the discovery needed to prove up the factual allegations of the claims of those class members who lost their homes is vastly different from, and irrelevant to, the discovery needed for Ms. Prado's allegation of some monetary miscalculation in connection with the modifications she and her class members did receive.

Also, while it is true that both cases are at an early stage, Wells Fargo has not shown how consolidation would expedite resolution of Ms. Prado's claims. Her claims need much less discovery, have damages that can be calculated mechanically, and could be settled more easily as

a stand-alone case. Nor has Wells Fargo shown how Ms. Prado is not prejudiced as set forth in her motion to intervene. It has not shown how the court will conduct class certification proceedings efficiently; indeed, consolidation will only create classes that are not certifiable for the reasons set for the herein and in Ms. Prado's motion to intervene. Moreover, trying the two types of claims together (of plaintiffs who lost their homes and plaintiffs who obtained mortgage modifications) will hopelessly confuse the jury.

**D. Alternatively, if this Court consolidates the *Prado a*ction with this case, it should separate the two distinct classes and appoint *Prado* counsel as interim lead counsel for the *Prado*-related class.**

Because this case and *Prado* contain material differences between its classes, the *Prado* case is well-suited as a stand-alone class action. However, if the Court chooses to consolidate *Prado* with this case, the Court should create a separate class (not a "sub" class) within this action. See ECF 67-1, p. 22-23. Courts should consider "whether designated counsel fairly represent the various interests in the litigation—where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests." *See* Manual for Complex Litigation (Fourth), § 10.224. "In certain cases, courts have agreed to appoint liaison counsel, in addition to interim lead counsel, to represent the possibly diverging interests of a putative class which has brought some separate, 'non-overlapping' claims." *Amador v. Logistics Express, Inc.*, CV 10-4112-GHK, CV 10-4280-GHK, 2010 WL 3489038, 2010 U.S. Dist. LEXIS 97999, at * 5 (C.D. Cal. Aug. 27, 2010). Moreover, courts may consider matters "pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, due to the conflicts of interest described here, and in the motion to intervene, should this Court consolidate *Prado* with the captioned case, Ms. Prado requests that a separate *Prado* class be created, which includes Ms. Prado and the *Prado*-related Plaintiffs, with plaintiffs' counsel in *Prado* appointed to represent their diverging interests. *See* ECF 67-1, p. 17-23, and the declarations of Ms. Prado's counsel at ECF 67-2, 67-3 and 67-4.

Dated: November 13, 2024

                                              Respectfully submitted,

**KELLETT & BARTHOLOW PLLC**

By: */s/ Karen L. Kellett*
Theodore O. Bartholow, III
*Admitted pro hac vice*
thad@kblawtx.com
Karen L. Kellett
*Admitted pro hac vice*
kkellett@kblawtx.com
11300 N. Central Expy., Suite 301
Dallas, TX 75243
Telephone: (214) 696-9000
Facsimile: (214) 696-9001

**KAZEROUNI LAW GROUP, APC**

Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Ryan L. McBride Esq. (SBN: 297557)
ryan@kazlg.com
Jonathan Gil (SBN: 347431)
jonathan@kazlg.com
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**CERTIFICATION OF SERVICE**

The undersigned hereby certify that on November 13, 2024, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record who have appeared in this action.

By: <u>*/s/ Claude Smith*</u><br>
Claude Smith, Esq.