Amanda L. Groves (SBN: 187216)
agroves@winston.com
Shawn R. Obi (SBN: 288088)
sobi@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Angela A. Smedley (admitted pro hac vice)
asmedley@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Defendant,
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Wells Fargo Mortgage Modification Litigation,* | **Case No. 3:24-cv-01358-MMC**<br><br>WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT,<br><br>Date: May 23, 2025<br>Time: 9:00 a.m.<br>Place: San Francisco Courthouse<br>Courtroom 7 – 19th Floor<br>450 Golden Gate Avenue, San Francisco, CA 94102<br>Judge: Hon. Maxine M. Chesney<br><br>Compl. Filed: March 7, 2024<br>Consolidated Class Action Compl. Filed: July 8, 2024<br>Second Amended Consolidated Class Action Compl. Filed: January 9, 2025 |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT ....................................................................................................... 1

    A.  Plaintiffs' Breach of Contract Claim Fails as a Matter of Law (Count One). ................. 1

        1.  The Fannie Mae/Freddie Mac Security Instrument Is Unambiguous and Flatly Forecloses Plaintiffs' Proffered Interpretation. ...................................................... 1

        2.  Because the Fannie Mae/Freddie Mac Security Instrument Is Not Ambiguous, Plaintiffs' Reliance on Extrinsic Evidence Is Improper. ..................................... 3

        3.  The FHA Security Instrument Does Not Support Plaintiffs' Proffered Interpretation. ...................................................................................................... 4

        4.  Plaintiffs Cannot Enforce HAMP Via a Breach of Contract Theory .................. 5

        5.  Plaintiffs' Third Theory of Breach Similarly Fails. .......................................... 6

        6.  The Implied Covenant of Good Faith and Fair Dealing Cannot Save Plaintiffs' Breach of Contract Claim. .................................................................................. 6

    B.  Plaintiffs' Intentional Infliction of Emotional Distress Claim Should Be Dismissed or, Alternatively, the Court Should Strike the Class Allegations for This Claim (Count Two). ...................................................................................................................... 7

        1.  Plaintiffs Cannot Base the IIED Claim on Alleged Consent Order Violations. ... 7

        2.  The SAC Does Not Allege Outrageous Conduct. ............................................. 7

        3.  Plaintiffs Do Not Allege Severe Emotional Distress. ....................................... 8

        4.  The Court Should Strike the Class Allegations for the IIED Claim. .................. 9

    C.  Plaintiffs' Negligence-Based Claims Fail (Counts Three and Four). ............................. 9

        1.  Plaintiffs' Negligence Claims Are Preempted by the Fair Credit Reporting Act ("FCRA"). ........................................................................................................... 9

        2.  The Negligence Claims Also Fail for Lack of a Legal Duty. ........................... 11

    D.  Plaintiffs' California Homeowner Bill of Rights Claim Is Defective and Should Be Dismissed With Prejudice (Count Five). .................................................................... 11

    E.  The Court Should Dismiss Plaintiffs' UCL Claim (Count Six). ................................... 12

        1.  The UCL Cannot Apply to Non-California Plaintiffs. ...................................... 12

        2.  Plaintiffs' UCL Claim Is Insufficiently Pled. ................................................. 13

-i-

DEFENDANT WELLS FARGO BANK, NA.'S
REPLY ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01358-MMC

F.     Plaintiffs' Claim Under the Illinois Consumer Fraud Act Fails (Count Seven). ............ 15

G.     The Court Should Dismiss the Pennsylvania and North Carolina Unfair Trade Practices Claims (Counts Eight and Nine) ........................................................................ 16

H.     The SAC Does Not State a Claim Under the D.C. Consumer Protection Procedures Act (Count Ten). .................................................................................................................. 17

I.     The SAC Does Not State a Claim Under New York General Business Law § 349 (Count Eleven). ........................................................................................................................ 18

J.     The Unjust Enrichment Claim Fails as a Matter of Law (Count Twelve). ..................... 19

III.     CONCLUSION ............................................................................................................................ 20

-ii-

Defendant Wells Fargo Bank, NA.'s
Reply ISO Motion to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint
Case No. 3:24-cv-01358-MMC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Albert v. Wells Fargo Bank, N.A.*,
5    2012 WL 1213718 (N.D. Cal. Apr. 11, 2012) ...................................................... 5

6

*Anderson v. Apple, Inc.*,
    500 F. Supp. 3d 993 (N.D. Cal. 2020) .......................................................... 15

7

8

*Ansanelli v. JP Morgan Chase Bank, N.A.*,
    2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) ................................................ 6

9

*Astiana v. Hain Celestial Grp., Inc.*,
10    783 F.3d 753, 762 (9th Cir. 2015). .............................................................. 19

11

*Azadpour v. Sun Microsystems, Inc.*,
    2007 WL 2141079 (N.D. Cal. July 23, 2007) .............................................. 16

12

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*,
13    857 F.3d 939 (D.C. Cir. 2017) ..................................................................... 18

14

*Berke v. Presstek, Inc.*,
15    188 F.R.D. 179 (D.N.H. 1998) ...................................................................... 7

16

*Bostick v. Gen. Motors, LLC*,
    2020 WL 13283478 (C.D. Cal. July 22, 2020) ............................................ 20

17

*Bruton v. Gerber Prods. Co.*,
18    703 F. Appx 468 (9th Cir. 2017) .................................................................. 19

19

*Busby v. Cap. One, N.A.*,
20    772 F. Supp. 2d 268 (D.D.C. 2011) ............................................................. 17

21

*Busby v. Cap. One, N.A.*,
    932 F. Supp. 2d 114 (D.D.C. 2013) ............................................................. 17

22

*Byrd v. Jackson*,
23    902 A.2d 778 (D.C. 2006) ........................................................................... 18

24

*Campbell v. CitiMortgage, Inc.*,
25    2014 WL 4924251 (M.D.N.C. Sept. 30, 2014) ............................................ 11

26

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
    222 Cal. App. 3d 1371 (1990) ....................................................................... 7

27

28

-iii-

D<small>EFENDANT</small> W<small>ELLS</small> F<small>ARGO</small> B<small>ANK</small>, NA.'<small>S</small>
R<small>EPLY</small> ISO M<small>OTION TO DISMISS</small> P<small>LAINTIFFS</small>' S<small>ECOND</small> A<small>MENDED</small> C<small>ONSOLIDATED</small> C<small>LASS</small> A<small>CTION</small> C<small>OMPLAINT</small>
C<small>ASE</small> N<small>O.</small> 3:24-cv-01358-MMC

*Carreon v. Edwards*,
   2022 WL 4664569 (E.D. Cal. 2022) ................................................................. 8

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................................................. 14

*Chen v. Bell-Smith*,
   768 F. Supp. 2d 121 (D.D.C. 2011) ............................................................ 18

*Chu v. Fay Servicing, LLC*,
   2016 WL 5846990 (N.D. Cal. Oct. 6, 2016) ................................................ 11

*Cleveland v. Aurora Loan Servs., LLC*,
   2011 WL 2020565 (N.D. Cal. May 24, 2011) ................................................. 5

*Clinical Staffing, Inc. v. Worldwide Travel Staffing*,
   60 F. Supp. 3d 618 (E.D.N.C. 2013) ........................................................... 17

*Colombo v. Palo Alto Unified Sch. Dist.*,
   2025 WL 929955 (N.D. Cal. Mar. 27, 2025) ................................................ 17

*Copart, Inc. v. Sparta Consulting, Inc.*,
   339 F. Supp. 3d 959 (E.D. Cal. 2018) ......................................................... 19

*Curran v. Wells Fargo Bank, N.A.*,
   2021 WL 6753480 (D.D.C. Mar. 11, 2021) ............................................ 17, 18

*DeLeon v. Wells Fargo Bank, N.A.*,
   2011 WL 311376 (N.D. Cal. Jan. 28 2011) .................................................... 2

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................ 15

*Dumont v. Litton Loan Servicing, LP*,
   2014 WL 815244 (S.D.N.Y. 2014) .............................................................. 18

*Edw C. Levy Co. v. Rein*,
   85 F.3d 635 (9th Cir. 1996) .......................................................................... 2

*Ellis v. Bank of Am.*,
   2013 WL 5935412 (C.D. Cal. Oct. 28, 2013) .............................................. 12

*Ensor v. Wells Fargo Bank, N.A.*,
   2022 WL 345513 (D. Md. Feb. 4, 2022) ....................................................... 8

*Esquivel v. Bank of America, N.A.*,
   2013 WL 5781679 (E.D. Cal. Oct. 25, 2013) .............................................. 10

-iv-

DEFENDANT WELLS FARGO BANK, NA.'S
REPLY ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01358-MMC

*Ferchau v. CitiMortg., Inc.*,
   2014 WL 27528 (N.D. Cal. Jan. 2, 2014) ..................................................................... 6

*Fletcher v. OneWest Bank, FSB*,
   798 F. Supp. 2d 925 (N.D. Ill. 2011) ....................................................................... 11

*Georgia-Pac. v. Officemax Inc.*,
   2013 WL 5273007 (N.D. Cal. Sept. 18, 2013) ............................................................. 4

*Hernandez v. Wells Fargo & Co.*,
   2019 WL 2359198 (N.D. Cal. June 3, 2019) ................................................ 2, 3, 11, 14

*Hernandez v. Wells Fargo & Co.*,
   2019 WL 3017657 (N.D. Cal. July 10, 2019) .............................................................. 14

*Hernandez v. Wells Fargo & Co.*,
   2019 WL 3891342 (N.D. Cal. Aug. 19, 2019) .............................................................. 3

*Hernandez v. Wells Fargo Bank, N.A.*,
   2020 WL 469893 (N.D. Cal. Jan. 29, 2020) ................................................................. 9

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589, 601 (9th Cir. 2020) ............................................................................. 13

*In re Hitachi Television Optical Block Cases*,
   2011 WL 9403 (S.D. Cal. Jan. 3, 2011) .................................................................... 13

*Holden v. Target Corp.*,
   2016 WL 3938950 (N.D. Cal. July 21, 2016) ............................................................. 9

*Hundal v. PLM Loan Mgmt. Servs., Inc.*,
   2016 WL 7157644 (N.D. Cal. Dec. 8, 2016) ............................................................... 2

*Jaraczewski v. Equity Nat'l Title*,
   2024 WL 3861248 (W.D. Pa. Aug. 19, 2024) ........................................................... 16

*Lansdown v. Bayview Loan Servicing, LLC*,
   2023 WL 2934932 (N.D. Cal. Apr. 17, 2023) ................................................ 5, 6, 13, 16

*Lowry v. Wells Fargo Bank, N.A.*,
   2016 WL 4593815 (N.D. Ill. Sept. 2, 2016) .............................................................. 16

*Magruder v. Educ. Sys. Fed. Credit Union*,
   194 F. Supp. 3d 386 (D. Md. 2016) ......................................................................... 10

*Marques v. Wells Fargo Home Mortgage, Inc.*,
   2010 WL 3212131 (S.D. Cal. Aug. 12, 2010) ............................................................. 6

-v-

DEFENDANT WELLS FARGO BANK, NA.'S
REPLY ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01358-MMC

*In re Mattel*,
   588 F. Supp. 2d 1111 (C.D. Cal. 2008) ........................................................................ 13

*Michaels v. NCO Fin. Sys., Inc.*,
   2020 WL 2800664 (D.D.C. May 29, 2020), *aff'd*, 2023 WL 3563079 (D.C. Cir. May 19, 2023) ... 17

*Miller v. Bank of Am., Nat'l Ass'n*,
   858 F. Supp. 2d 1118 (S.D. Cal. 2012).......................................................................... 10

*Monroe Cnty. Emps. Ret. Sys. v. YPF Sociedad Anonima*,
   15 F. Supp. 3d 336 (S.D.N.Y. 2014)........................................................................ 18, 19

*Morais v. Cent. Beverage Corp. Union Emps. Supplemental Ret. Plan*,
   167 F.3d 709 (9th Cir. 1999) ........................................................................................ 4

*Mushala v. U.S. Bank, Nat'l Ass'n*,
   2019 WL 1429523 (D.D.C. Mar. 29, 2019) .................................................................. 18

*In re Natera Prenatal Testing Litig.*,
   664 F. Supp. 3d 995 (N.D. Cal. 2023) .......................................................................... 15

*Nguyen v. BAC Home Loan Servs., LP*,
   2010 WL 3894986 (N.D. Cal. Oct. 1, 2010).................................................................... 5

*Nissou-Rabban v. Cap. One Bank (USA), N.A.*,
   285 F. Supp. 3d 1136 (S.D. Cal. 2018)........................................................................ 10

*Nolasco v. CitiMortgage, Inc.*,
   2012 WL 3648414 (S.D. Tex. Aug. 23, 2012) ................................................................ 2

*Orcilla v. Bank of Am., N.A.*,
   2010 WL 5211507 (N.D. Cal. Dec. 16, 2010)................................................................. 6

*Overfelt v. Hagerty Ins. Agency, LLC*,
   2019 WL 4645323 (N.D. Cal. Sep. 24, 2019) ................................................................ 7

*Paleg v. Kmart Corp.*,
   2017 WL 2974923 (C.D. Cal. July 11, 2017) ................................................................ 8

*Penermon v. Wells Fargo Bank, N.A.*,
   47 F. Supp. 3d 982 (N.D. Cal. 2014) .......................................................................... 11

*Ragland v. U.S. Bank Nat'l Ass'n*,
   209 Cal. App. 4th 182 (2012) ................................................................................. 7, 8

*Ramirez v. Baxter Credit Union*,
   2017 WL 1064991 (N.D. Cal. Mar. 21, 2017).................................................................. 4

-vi-

DEFENDANT WELLS FARGO BANK, NA.'S
REPLY ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01358-MMC

*Rockridge Tr. v. Wells Fargo, N.A.*,
    2013 WL 3200631 (N.D. Cal. June 24, 2013) ................................................................. 5

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal. App. 4th 221 (2014) ................................................................................. 19

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ................................................................................. 14

*Smith v. Cap. One Fin. Corp.*,
    2012 WL 1669347 (N.D. Cal. May 11, 2012) ................................................................. 9

*Stang v. Teal Drones, Inc*.,
    2023 WL 11956370 (N.D. Cal. Mar. 24, 2023) ................................................................. 19

*STMicroelectronics, Inc. Pension Restoration Plan v. Santoni*,
    2007 WL 9757795 (D. Ariz. Mar. 9, 2007) ................................................................. 4

*Tabler v. Panera LLC*,
    2019 WL 5579529 (N.D. Cal. Oct. 19, 2019) ................................................................. 15

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................. 12

*Tobiason v. BMO Bank N.A.*,
    2024 WL 5007292 (E.D. Wis. Dec. 5, 2024) ................................................................. 10

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ................................................................. 13

*Tyler v. Bank of N.Y. Mellon*,
    2020 WL 2735367 (N.D. Ill. May 26, 2020) ................................................................. 15

*United States v. Asarco, Inc.*,
    430 F.3d 972 (9th Cir. 2005) ................................................................................. 4

*Warren v. PNC Bank Nat'l Ass'n*,
    671 F. Supp. 3d 1035 (N.D. Cal. 2023) ................................................................. 12

*White v. Green Tree Servicing, LLC*,
    118 F. Supp. 3d 867 (D. Md. 2015) ................................................................................. 10

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ................................................................. 3, 13, 15

*Wilson v. Bank of Am., N.A.*,
    48 F. Supp. 3d 787 (E.D. Pa. 2014) ................................................................. 11

-vii-

*Yaffe v. JP Morgan Chase Bank, N.A.*,
    2024 WL 5063820 (N.D. Cal. Dec. 11, 2024) ................................................. 5, 6, 13, 16

*Yanahan v. Wells Fargo Bank, N.A.*,
    2025 WL 606847 (N.D. Ill. Feb. 25, 2025) ........................................................ 15

*Young v. State Farm Mut. Auto. Ins. Co.*,
    2025 WL 918293 (D. Md. Mar. 26, 2025)........................................................... 8

*Young v. Wells Fargo Bank, N.A.*,
    717 F.3d 224 (1st Cir. 2013) ............................................................................. 3

**Statutes**

15 U.S.C. § 1681t(b)(1)(F)(ii) ................................................................................. 10

Cal. Civ. Code § 1785.25(a) ................................................................................... 10

Cal. Civ. Code § 2923.4 ......................................................................................... 14

Cal. Civ. Code § 2924.9(a)(1) ................................................................................ 12

Cal. Civ. Code § 2924.12(b) ................................................................................... 11

Cal. Civ. Code § 2924.17 ....................................................................................... 12

Cal. Civ. Code § 3281 ....................................................................................... 11, 12

D.C. Consumer Protection Procedures Act.............................................................. 17

Fair Credit Reporting Act ................................................................................ 9, 10, 11

Ill. Consumer Fraud Act ......................................................................................... 15

N.Y. GBL § 349 ................................................................................................ 18, 19

**Other Authorities**

Cal. Homeowner Bill of Rights ......................................................................... 11, 12

Fed. R. Civ. P. 9(b) ................................................................................................ 15

Fed. R. Civ. P. 12(f) ................................................................................................. 7

-viii-

DEFENDANT WELLS FARGO BANK, NA.'S
REPLY ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01358-MMC

## I.    INTRODUCTION

Notwithstanding Plaintiffs' empty rhetoric and repeated pleas for liberal construction, their Opposition does not meaningfully address Wells Fargo's arguments.  Instead, it confirms that Plaintiffs seek to enforce OCC consent orders and HAMP, which they do not have standing to do.  That problem plagues the SAC and requires dismissal.

Plaintiffs' claims fail for additional, independent reasons they cannot overcome.  The contract-based claim is barred by the plain language of the contracts Plaintiffs seek to enforce.  The fact-free IIED claim cannot survive as a matter of law, whether on an individual or class-wide basis.  The negligence claims fail for lack of duty, a point Plaintiffs seem to concede by failing to point to any relevant authority holding otherwise.  The HBOR claim is similarly foreclosed by controlling California precedent.  And finally, Plaintiffs' kitchen-sink consumer fraud claims invoke statutes that do not apply and are otherwise insufficiently pled.

As none of Plaintiffs' arguments rescue their claims from the pleading deficiencies set forth in Wells Fargo's Motion, the SAC should be dismissed in its entirety without leave to amend.

## II.    ARGUMENT

### A.    Plaintiffs' Breach of Contract Claim Fails as a Matter of Law (Count One).

Wells Fargo had no duty under Plaintiffs' Security Instruments "to consider the Plaintiffs and Class members for a loss mitigation option and to provide that loss mitigation option, if appropriate."  SAC ¶ 258.

#### 1.    The Fannie Mae/Freddie Mac Security Instrument Is Unambiguous and Flatly Forecloses Plaintiffs' Proffered Interpretation.

Contrary to Plaintiffs' theory, the relevant Fannie Mae/Freddie Mac Security Instruments did not require Wells Fargo to modify Plaintiffs' mortgages or notify them of their right to a loan modification.

Nothing in the relevant contracts supports Plaintiffs' reading, so they ask the Court to rewrite them.[1]  According to Plaintiffs, Wells Fargo was not required to notify them of "***the*** action required to cure the default," but instead, "many, "one of," or "any" "action***s*** required to cure the default."  *See, e.g.,*

---

[1] *See* ECF No. 98-1, 98-6, 98-11, 98-19, 98-24.

ECF No. 102 (hereinafter "Opp.") at 3. ("the phrase 'action required' is not limited to lump-sum payment"; "the 'action required' should reasonably include alternative options, such as loan modifications, allowing a borrower to cure a default"; and "loan modification is a standard and recognized loss mitigation tool"). That is misdirection. The relevant inquiry is not whether a loan modification may enable a borrower to eventually cure a default, but whether Wells Fargo was contractually obligated "to consider the Plaintiffs and Class members for a loss mitigation option and to provide that loss mitigation option, if appropriate." Without question, it was not. Every court that has considered this issue— including courts in this district—agrees. *See* ECF No. 97 (hereinafter "Mot.") at 3–4 (collecting cases). Indeed, that is precisely what the Court held in *Hernandez v. Wells Fargo & Co.*, 2019 WL 2359198, at *9 (N.D. Cal. June 3, 2019) (Alsup, J.) ("*Hernandez I*").[2]

Indeed, Paragraph 22 of the Fannie Mae/Freddie Mac Security Instrument does not even mention loan modification. In fact, other than an unrelated mention in Paragraph 12 regarding "modification" of the amortization schedule, the Fannie Mae/Freddie Mac Security Instrument does not reference loan modification at all. And, the reference to "modification" elsewhere in the Security Instrument confirms that had the parties intended "the action required to cure the default" to include loan modifications, they would have said so. *See Nolasco v. CitiMortg., Inc.*, 2012 WL 3648414, at * 4 (S.D. Tex. Aug. 23, 2012) ("paragraph 12 of the [Fannie Mae/Freddie Mac security instrument] supports the contrary view"—*i.e.*, that "the [security instrument] . . . do[es] not require defendants to provide [plaintiff] with a list of cure options—[it] obligate[s] them to give her notice of the action required to cure").

Moreover, it is well-settled that when interpreting a contract, "the court must ascertain and give effect to the intention of the parties at the time it was made, if at all possible." *Edw C. Levy Co. v. Rein*, 1996 WL 89263, at *2 (9th Cir. 1996). Plaintiffs do not explain (because they cannot) how their security instruments reasonably can be read to require their servicer to offer them a loan modification under programs that did not even exist at the time of contracting. Their reliance on the *Hernandez* court's later

---

[2] *See also Hundal v. PLM Loan Mgmt. Servs., Inc.*, 2016 WL 7157644, at *7 (N.D. Cal. Dec. 8, 2016) ("although a loan modification may. . . enable[] [a borrower] to *eventually* cure any default," it is payment of the full amount due that constitutes an actual cure of the default) (emphasis in original); *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28 2011) ("In order to cure the default, Plaintiffs would have had to pay [the amount in arrears] in full, plus any payment obligations that accrued after the default was recorded.").

1   decision in *Hernandez v. Wells Fargo & Co.*, 2019 WL 3891342 (N.D. Cal. Aug. 19, 2019) ("*Hernandez*

2   *III*"), is misplaced.[3]   Indeed, in allowing those plaintiffs to amend their complaint to replead their

3   previously dismissed breach of contract claim, the *Hernandez* court appears to have invented a new rule

4   of contract interpretation.  In particular, the court found that it was not required to discern the parties'

5   intent at the time of contracting, but instead at the time of default.  *Id.* at *2.  The court notably cited no

6   caselaw in support of its proclamation, *id.*, and the undersigned has found none.  That is not surprising,

7   because again, the parties' intent at the time of contracting is what controls.  *Hernandez III* is contrary to

8   the law on this issue, and this Court should reject it.

9       Plaintiffs otherwise make no attempt to distinguish the cases Wells Fargo cited in its opening brief,

10  instead countering with irrelevant case law that sheds no light on this inquiry.  *See* Opp. at 3.  Neither

11  *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 235 (1st Cir. 2013), nor *Wigod v. Wells Fargo Bank,*

12  *N.A.*, 673 F.3d 547, 556–57 (7th Cir. 2012), say anything about the Fannie Mae/Freddie Mac (or any)

13  Security Instrument.  Instead, those courts considered an entirely different and unrelated issue: whether a

14  HAMP trial payment plan is a valid contract.  Those cases have no bearing here.

15      **2.    Because the Fannie Mae/Freddie Mac Security Instrument Is Not Ambiguous,**
        **Plaintiffs' Reliance on Extrinsic Evidence Is Improper.**

16

17      In the face of unambiguous contractual language that wholly undercuts their claim, and lacking

18  any caselaw supporting their position, Plaintiffs resort to extrinsic evidence, namely, that "the action

19  required to cure the default" "should be considered in their correct context with federal mortgage servicing

20  guidelines and mortgage industry standards recognizing loan modification as a valid cure for default."

21  Opp. at 3.  Plaintiffs are wrong.  As the *Hernandez I* court identified, "the action required to cure the

22  default" means only one thing—"payment of the amount required to bring the loan current."  *Hernandez*

23  *I*, 2019 WL 2359198, at *9.

24      Because the Fannie Mae/Freddie Mac Security Instrument has a plain meaning and can be given a

25  plain reading, Plaintiffs' extrinsic evidence in the form of vaguely described "federal mortgage servicing

26  guidelines and mortgage industry standards" is not relevant.  *See* ECF No. 98-1, 98-6, 98-11, 98-19, 98-

27  ───────────────────────
    [3] Plaintiffs refer to this opinion in as "*Hernandez II*."  Because there are three relevant *Hernandez*
28  opinions, Wells Fargo refers to them as *I*, *II*, and *III*, in the order they were issued.

24. Where, as here, "contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." *Georgia-Pac. v. Officemax Inc.*, 2013 WL 5273007, at *6 (N.D. Cal. Sept. 18, 2013) (internal quotation omitted). Accordingly, "a court should not consider extrinsic evidence to give meaning to a contract unless the contract's terms are vague and ambiguous." *Morais v. Cent. Beverage Corp. Union Emps. Supplemental Ret. Plan*, 167 F.3d 709, 713 (9th Cir. 1999) (internal quotation omitted). Because Plaintiffs agree that the Fannie Mae/Freddie Mac deed of trust is unambiguous (albeit for different—and incorrect—reasons),[4] their reliance on unspecified extrinsic evidence is improper and should be rejected. *See Ramirez v. Baxter Credit Union*, 2017 WL 1064991, at *4 (N.D. Cal. Mar. 21, 2017) ("a contract is not ambiguous simply because the parties disagree as to its meaning") (citation and quotation marks omitted); *United States v. Asarco, Inc.*, 430 F.3d 972, 980 (9th Cir. 2005) ("[A] contract . . . must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the [contract]."); *STMicroelectronics, Inc. Pension Restoration Plan v. Santoni*, 2007 WL 9757795, at *6 (D. Ariz. Mar. 9, 2007) (rejecting extrinsic evidence when plaintiff "acknowledge[d] that the [contract's] language [was] straightforward, but still argue[d] for consideration of the extrinsic evidence to reach [its] desired result").

Here, there is nothing ambiguous about the phrase "the action required to cure the default." Plaintiffs' attempt to recast "the action" as "any action" or "many actions" is directly contrary to the contract's plain language, and Plaintiffs cannot rely on extrinsic evidence to manufacture an ambiguity that does not exist. Dismissal is required.

### 3. The FHA Security Instrument Does Not Support Plaintiffs' Proffered Interpretation.

The Opposition confirms that the FHA contract claim fails for the same reasons. As shown in the opening brief, the FHA Security Instrument expressly states that the action needed to cure the default is payment of "a lump sum" of "all amounts required to bring Borrower's account current[.]" Mot. at 4–5. That language is plain and unambiguous, and it does not contemplate loan modifications as a way to cure the default. Plaintiffs' contrary arguments fail, and this claim should be dismissed.

---

[4] Opp. at 2, 5.

1

### 4.     Plaintiffs Cannot Enforce HAMP Via a Breach of Contract Theory.

2      In the opening brief, Wells Fargo showed that Plaintiffs cannot base their contract claim on alleged

3   violations of "servicing guidelines." Mot. at 5–6.  Plaintiffs respond to this argument with an attempted

4   sleight of hand.  They now insist—despite repeated references in the SAC to Wells Fargo's alleged

5   breaches of "servicing guidelines"[5]—that their contract claim is based on alleged violations of HAMP.

6   Opp. at 4–6.[6]

7      Plaintiffs' theory is contrary to the overwhelming weight of authority in this District, which holds

8   that because plaintiffs lack standing to enforce HAMP, they cannot bring a breach of contract claim based

9   on alleged violations of its terms.  In dismissing plaintiffs' breach of contract claim, the court in *Rockridge*

10   *Trust v. Wells Fargo, N.A.* explained, "[Plaintiffs'] breach of contract claim is a pure attempt to enforce

11   the [HAMP servicer participation agreement] against Wells Fargo and Bank of America as a third party

12   beneficiary by holding them liable for failing to give Plaintiffs a loan modification in light of the HAMP

13   criteria."  2013 WL 3200631, at *20 (N.D. Cal. June 24, 2013).  Recognizing that fatal flaw in the

14   plaintiffs' pleadings, the *Rockridge* court "[joined] many others in this district in holding that Plaintiffs

15   are not third party beneficiaries under the [servicer participation agreement] and are unable to enforce that

16   agreement."  *Id.; see also Albert v. Wells Fargo Bank, N.A.*, 2012 WL 1213718, at *3 (N.D. Cal. Apr. 11,

17   2012) (dismissing HAMP-based breach of contract claim with prejudice because "many district courts in

18   the Ninth Circuit have rejected this argument"); *Cleveland v. Aurora Loan Servs., LLC*, 2011 WL

19   2020565, at *5 (N.D. Cal. May 24, 2011) (a "plaintiff has no standing to assert a claim of breach of

20   contract or promissory estoppel based on alleged HAMP violations, as he is not (contrary to what he

21   alleges) a third-party beneficiary of any HAMP contract between a servicer or lender and the

22   government"); *Nguyen v. BAC Home Loan Servs., LP*, 2010 WL 3894986, at *4 (N.D. Cal. Oct. 1, 2010)

23

24   [5] *See, e.g.*, SAC ¶¶ 252–53, 260.

[6] Having failed to address Wells Fargo's argument that they cannot enforce "servicing guidelines" via a
25   breach of contract theory, Plaintiffs have conceded the point and abandoned this theory.  *See, e.g., Yaffe*
*v. JP Morgan Chase Bank, N.A.*, 2024 WL 5063820, at *2 (N.D. Cal. Dec. 11, 2024) (the "[plaintiff's]
26   opposition fails to address, and thus concedes, the argument") (citation omitted); *Lansdown v. Bayview*
*Loan Servicing, LLC*, 2023 WL 2934932, at *4 (N.D. Cal. Apr. 17, 2023) (a plaintiff "fails to address
27   [defendant's] argument in her opposition and, as the Court indicated in its previous order dismissing the
SAC, a failure to respond in an opposition to an argument constitutes waiver or abandonment, and thus
28   concedes the argument") (quotations and citation omitted).

1    (dismissing HAMP-based breach of contract claim because the plaintiffs lacked standing to enforce its

2    terms).  Plaintiffs offer no reason why the Court should reject this clear line of opposite authority in favor

3    of *Marques v. Wells Fargo Home Mortgage, Inc.*, 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010), which

4    has been expressly disavowed by courts in this district—not once, but multiple times.  *See, e.g., Ferchau*

5    *v. CitiMortg., Inc.*, 2014 WL 27528, at *5 (N.D. Cal. Jan. 2, 2014) (declining to follow *Marques* because

6    it is not "in line with the weight of authority"); *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL

7    1134451, at *6 (N.D. Cal. Mar. 28, 2011) ("One such decision [*Marques*] in the face of many others to

8    the contrary is not persuasive"); *Orcilla v. Bank of Am., N.A.*, 2010 WL 5211507, at *3 n.2 (N.D. Cal.

9    Dec. 16, 2010) (expressly disagreeing with *Marques*).

10        Plaintiffs cannot salvage their breach of contract claim via HAMP.

11            **5.    Plaintiffs' Third Theory of Breach Similarly Fails.**

12        To save their third theory of breach, Plaintiffs argue that "the SAC explicitly cites the contractual

13    obligations that prohibit Wells Fargo from charging unauthorized fees."  Opp. at 6.  That may be true, but

14    it is only half of the equation.  As shown in the opening brief, Plaintiffs' third theory of breach fails

15    because it is inconsistent with the terms of the contracts as a whole.  Mot. at 6–7 (arguing Plaintiffs failed

16    to allege an "express prohibition" for the various, unidentified fees they challenge, as required for breach).

17    Plaintiffs' failure to offer any argument on this point means they concede it.  *See, e.g., Yaffe, 2024* WL

18    5063820, at *2; *Lansdown*, 2023 WL 2934932, at *4.

19            **6.    The Implied Covenant of Good Faith and Fair Dealing Cannot Save Plaintiffs'**
              **Breach of Contract Claim.**

20

21        Plaintiffs insist that they can plead breach of the implied covenant of good faith and fair dealing

22    as an alternative to their breach of contract claim.  Opp. at 7.  But they ignore Wells Fargo's cited cases,

23    which hold that a good faith and fair dealing claim cannot be "essentially based on the same allegations"

24    as a breach of express contract."  Mot. at 8.  Instead, an implied covenant claim requires allegations that

25    the defendant breached an agreement in bad faith.  *Overfelt v. Hagerty Ins. Agency, LLC*, 2019 WL

26    4645323, at *5 (N.D. Cal. Sep. 24, 2019) ("The party alleged to have breached the implied covenant must

27    have acted unreasonably and in bad faith.").  Plaintiffs have pled themselves out of any such claim,

28    because, as the SAC repeatedly alleges, the claimed improper loan modification decisions were not based

on bad faith conduct, but on *errors* in Wells Fargo's loan modification software. *See* SAC ¶¶ 64–93, 107–111, 339–340, 342 (characterizing Wells Fargo's conduct as an "error"). Under California law, such errors, even when based on bad judgment, cannot constitute bad faith for purposes of an implied covenant claim. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (a breach of the covenant of good faith and fair dealing is "prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act").

For all these reasons, Plaintiffs' breach of contract claim in Count One fails as a matter of law and should be dismissed.

### B. Plaintiffs' Intentional Infliction of Emotional Distress Claim Should Be Dismissed or, Alternatively, the Court Should Strike the Class Allegations for This Claim (Count Two).

Citing no relevant caselaw, and struggling to distinguish the cases cited in the opening brief, Plaintiffs insist that their IIED claim is sufficiently pled. They are wrong.

### 1. Plaintiffs Cannot Base the IIED Claim on Alleged Consent Order Violations.

Plaintiffs' attempt to disclaim reliance on consent order violations as the basis for their IIED claim is disingenuous. Plaintiffs selectively cite their SAC, apparently hoping the Court will ignore the SAC's express—and repeated—reliance on alleged violations of government consent orders as the basis for their claim. *See, e.g.*, SAC ¶¶ 56–62, 66. As shown in the opening brief, that attempt fails as a matter of law. Mot. at 8–9.[7] Thus, to the extent the IIED claim are based on alleged violations of government consent orders, the claims should be dismissed with prejudice.

### 2. The SAC Does Not Allege Outrageous Conduct.

Apparently abandoning the IIED claim on behalf of Plaintiffs who did not experience foreclosure (Beloff, Clingerman, Curry, Ferguson, Kea, Liggett, Keaveny, Peterson, and Vergara), Plaintiffs argue only that "unlawful foreclosures have been held to be sufficiently outrageous conduct to support an IIED claim." Opp. at 9. But even Plaintiffs' narrowed theory lacks legal support. In *Ragland v. U.S. Bank National Ass'n*, the plaintiff alleged that her loan servicer told her to skip her loan payments, subsequently

---

[7] If Plaintiffs' attempt to disclaim reliance on consent orders is serious, then pursuant to Rule 12(f), the Court should strike all paragraphs of the SAC that reference them. *See Berke v. Presstek, Inc.*, 188 F.R.D. 179, 181 (D.N.H. 1998) (striking allegations that the defendant "consented to an order making findings of fact . . . .").

refused to accept payments, and then sold her home at foreclosure. 209 Cal. App. 4th 182, 204 (2012). Plaintiffs make no similar allegations here. *Carreon v. Edwards* is similarly unhelpful. 2022 WL 4664569 (E.D. Cal. 2022). There, the plaintiff also alleged intentional misconduct not present here—namely, the defendants foreclosed on her property without ever notifying her of the proceedings. *Id*. at *6.

Unlike Plaintiffs' cited cases, *Ensor v. Wells Fargo Bank, N.A.*, is directly on point and shows why the Court should dismiss the IIED claim for failure to allege outrageous conduct. 2022 WL 345513 (D. Md. Feb. 4, 2022); *see* Mot. at 10. Indeed, unable to distinguish *Ensor* on the alleged facts (which Plaintiffs admit were virtually identical to those they allege here) or the law,[8] Plaintiffs blithely argue "it is a non-binding opinion lacking substantial reasoning and fails to adequately consider relevant policy implications, making it an unreliable precedent." Opp. at 9. Plaintiffs go on to cite the inapplicable summary judgment standard, arguing that they have "raise[d] a genuine dispute of material fact." *Id*. at 10. Plaintiffs' arguments are misguided. Summary judgment tests evidence (there is none), while a motion to dismiss tests allegations. The allegations are insufficient here. Plaintiffs do not allege outrageous conduct, requiring dismissal of the IIED claim.

### 3.     Plaintiffs Do Not Allege Severe Emotional Distress.

Finally, the IIED claim fails because Plaintiffs do not allege severe emotional distress. Tellingly, the Opposition points to no well-pled factual allegations, but instead parrots this element of an IIED claim and then says "[r]esearch has shown that being in foreclosure can lead to high rates of depression, anxiety and other mental health challenges" and "[l]osing or potentially losing one's home is an emotionally significant event that causes severe emotional distress and anxiety." Opp. at 10–11. Perhaps, but that is beside the point. As shown in the opening brief, a conclusory allegation that the plaintiff suffered "severe

---

[8] The elements of an IIED claim under Maryland law are identical to those under California law. *Compare Young v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 918293, at *5 (D. Md. Mar. 26, 2025) ("To state a claim for IIED under Maryland law, a plaintiff must plead that the defendant engaged in conduct that was both intentional or reckless and extreme and outrageous, that there is a causal connection between the wrongful conduct and the emotional distress, and that the emotional distress was severe.") (citation omitted), *with Paleg v. Kmart Corp.*, 2017 WL 2974923, at *3 (C.D. Cal. July 11, 2017) ("To state a claim for IIED in California, Plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress.") (quotations and citation omitted).

emotional distress and damages" is insufficient as a matter of law.  *See, e.g.*, *Holden v. Target Corp.*, 2016 WL 3938950, at *5 (N.D. Cal. July 21, 2016) (dismissing IIED claim because the "mere allegation that a plaintiff suffered severe emotional distress, without facts indicating the nature or extent of any mental suffering incurred as a result of the defendant's alleged outrageous conduct, fails to state a cause of action for [IIED]").  But that is all Plaintiffs allege here.  *See* SAC ¶ 271 (alleging that Plaintiffs collectively suffered "severe emotional distress and damages").

The Court should dismiss the IIED claim with prejudice.

### 4.    The Court Should Strike the Class Allegations for the IIED Claim.

If the Court declines to dismiss the IIED claim, it should nonetheless strike the class allegations because this claim is inherently unsuited for class treatment.  *See* Mot. at 25; *see also Hernandez v. Wells Fargo Bank, N.A.*, 2020 WL 469893, at *5 (N.D. Cal. Jan. 29, 2020).

### C.    Plaintiffs' Negligence-Based Claims Fail (Counts Three and Four).

Plaintiffs agree that their negligence claims are based only on "statements to the credit reporting agencies regarding the Plaintiffs and Class members that were derogatory to their credit."  SAC ¶ 279. Plaintiffs argue that the claims can nonetheless proceed, but none of their arguments bear scrutiny.

### 1.    Plaintiffs' Negligence Claims Are Preempted by the Fair Credit Reporting Act ("FCRA").

Under the majority rule in this Circuit, the FCRA expressly preempts state law claims based on alleged credit reporting activity by credit information furnishers like Wells Fargo here.  *Smith v. Cap. One Fin. Corp.*, 2012 WL 1669347, at *6 (N.D. Cal. May 11, 2012) (dismissing negligence claim with prejudice because the FCRA preempted it).  Under this majority approach, Plaintiffs' negligence claim is preempted, regardless of whether Plaintiffs allege "willful" conduct.  *See* Mot. at 11–12 (collecting cases). Plaintiffs have no answer for Wells Fargo's cited cases, which presumably is why they ignore them.  Opp. at 11–12.

Instead, Plaintiffs urge the Court to follow the minority approach taken by out-of-district and out-of-state courts.  *Id.*  But Plaintiffs rely on cases that undermine their argument.[9]  In *Nissou-Rabban v.*

---

[9] For example, only ***one*** of the *six* cases Plaintiffs cite adopted the minority approach to preemption, *Magruder v. Education System Federal Credit Union*, 194 F. Supp. 3d 386 (D. Md. 2016).  Plaintiffs' inability to point to any more authority supporting their position is telling.

*Capital One Bank (USA), N.A.*, the court did not hold, as Plaintiffs suggest, that the FCRA "does not preempt claims when the defendant provided information it knew was incomplete or inaccurate." Opp. at 11; 285 F. Supp. 3d 1136 (S.D. Cal. 2018). Rather, the claim under California Civil Code § 1785.25(a) could proceed because the FCRA preemption statute expressly says that it shall not apply to that statute. *Nissou-Rabban*, 285 F. Supp. 3d at 1152 (citing 15 U.S.C. § 1681t(b)(1)(F)(ii)). The same was true in *Esquivel v. Bank of Am., N.A.*, 2013 WL 5781679, at *5 (E.D. Cal. Oct. 25, 2013). The court there went on to note that, "to the extent Plaintiffs' [state law] claim is based on [anything] other than § 1785.25(a), the claim is preempted"—thus adopting the majority preemption approach that Plaintiffs ask the Court to ignore here. *Id*. The court in *Miller v. Bank of America, N.A.* likewise adopted the majority approach[10] and found that the plaintiff's credit reporting-based negligence claim was preempted "***despite*** his allegations that Defendant acted with the willful intent to injure." 858 F. Supp. 2d 1118, 1126–27 (S.D. Cal. 2012). The defendant in *White v. Green Tree Servicing, LLC* did not argue, and the court did not analyze, whether the plaintiff's willfulness claims were preempted by the FCRA. 118 F. Supp. 3d 867, 873 (D. Md. 2015). Finally, in *Tobiason v. BMO Bank N.A.*, the defendant invoked federal question jurisdiction to remove a complaint that brought only state law claims, arguing that FCRA preemption provided a complete defense to those claims. 2024 WL 5007292, at *5 (E.D. Wis. Dec. 5, 2024). Recognizing that "complete preemption" differs from "substantive preemption," the court found that FCRA preemption constitutes the latter and thus could not provide a basis for removal. *Id*. As the court explained, "[s]ection 1681t substantively preempts state law claims—and [defendant] can certainly invoke [it] in response to [the plaintiff's] claims." *Id*. However, "the existence of a federal defense, even a plainly meritorious one, does not create grounds for removal on federal question jurisdictional grounds." *Id*. *Tobiason* has no relevance here.

Plaintiffs offer no reason for the Court to depart from the majority preemption approach. They make no attempt to distinguish Wells Fargo's cases, nor do they explain how their bare allegations of malice or willful intent warrant a different result. The negligence claims are preempted by the FCRA, and the Court should dismiss them with prejudice.

---

[10] *Id*. at 1124 ("the FCRA expressly preempts ***all*** state common law and statutory claims regulating the duties of furnishers of credit information") (emphasis added).

### 2.    The Negligence Claims Also Fail for Lack of a Legal Duty.

Plaintiffs' negligence claims also fail for lack of a legal duty.  Plaintiffs' half-hearted response relies on irrelevant authorities and offers no substantive analysis.  Opp. at 12.  Plaintiffs' first cited case, *Hernandez I*, does not hurt Wells Fargo's position; it helps it.  As the court there explained in dismissing the negligence claim, "***this order concludes that plaintiffs have not alleged a duty of care in connection with their requests for loan modifications***."  *Hernandez I*, 2019 WL 2359198, at *8 (emphasis added).  Plaintiffs' reliance on *Campbell v. CitiMortgage, Inc.* similarly undermines their position because the court there also dismissed the negligence claim for failure to allege a legal claim.  2014 WL 4924251, at *9 (M.D.N.C. Sept. 30, 2014).  Plaintiffs' only other examples where the court considered negligence claims resulted in the court's dismissal of those claims.  *See Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 1002 (N.D. Cal. 2014); *Chu v. Fay Servicing, LLC*, 2016 WL 5846990 at *6 (N.D. Cal. Oct. 6, 2016).  All of Plaintiffs' other cited cases are irrelevant because they do not involve negligence claims, a point that Plaintiffs conceded.  *See* Opp. at 12–13 (citing *Wilson v. Bank of Am.*, *N.A.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014) (discussing UTPCPL); *Fletcher v. OneWest Bank, FSB*, 798 F. Supp. 2d 925 (N.D. Ill. 2011) (discussing ICFA)).

Plaintiffs' negligence claims fail as a matter of law.  They should be dismissed with prejudice.

### D.    Plaintiffs' California Homeowner Bill of Rights Claim Is Defective and Should Be Dismissed With Prejudice (Count Five).

Attempting to salvage their HBOR claim, Plaintiffs argue that "a homeowner is still entitled to damages under the HBOR if the defendant's actions have affected the plaintiff's loan obligations and caused harm." Opp. at 13.  That argument ignores the law, and the Court should reject it.  It is well-settled that relief under the HBOR is available only *after* a trustee's deed upon sale is recorded.  *See* Cal. Civ. Code § 2924.12(b) ("*After* a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section . . . 2924.17.") (emphasis added).  It follows, then, that if no deed upon sale is recorded, then HBOR cannot provide any relief.  *See Ellis v. Bank of Am.*, 2013 WL 5935412, at *4 (C.D. Cal. Oct. 28, 2013) ("[S]ection 2924.12 shields defendants from ***any liability*** for their alleged violations of [HBOR] requirements" where "[t]here is currently no

foreclosure activity against the property and plaintiff does not allege that a trustee's sale ever took place")
(emphasis added).

*Warren v. PNC Bank National Ass'n* does not advance Plaintiffs' cause. 671 F. Supp. 3d 1035
(N.D. Cal. 2023). Indeed, unlike Plaintiffs Curry and Liggett here, the plaintiff in *Warren* alleged the
existence of a deed upon sale. *Id*. at 1045. Thus, the fundamental flaw plaguing these Plaintiffs' claim—
the lack of a deed upon sale—simply did not exist in *Warren*, which is why that HBOR claim could
proceed, and this claim cannot.[11] The claim fails as a matter of law and should be dismissed with
prejudice.

**E.    The Court Should Dismiss Plaintiffs' UCL Claim (Count Six).**

   **1.    The UCL Cannot Apply to Non-California Plaintiffs.**

Plaintiffs claim they can pursue the UCL claim on behalf of a nationwide class because the claim
"arise[s] from [Wells Fargo's] actions and omissions, which were conceived, designed, facilitated,
instigated, overseen, managed, and coordinated by [Wells Fargo's] parent company in California." Opp.
at 14–15. Of course, Wells Fargo's parent company is not a party to this litigation, and Plaintiffs cite no
authority supporting their attempt to impute its conduct to Wells Fargo here. *See id*. The Court should
thus reject Plaintiffs' position that they may pursue a UCL claim on behalf of a nationwide class. In any
event, however, Plaintiffs' allegations are insufficient to apply the UCL to non-California putative class
members.

To attempt to assert that Wells Fargo's actions emanate from California, Plaintiffs rely on
paragraphs 71, 85, 326, and 327 of the SAC, which say that "[Wells Fargo's] parent company. . . engages
in substantial sales and marketing activities in California," that the parent company received "warnings"
and "reprimands" about **Wells Fargo's** alleged conduct, and that the parent company disclosed Wells

---

[11] Plaintiffs attempt to circumvent their pleading deficiency by citing to other provisions within the HBOR.
In particular, Plaintiffs point to Cal. Civ. Code § 2924.9(a)(1), which requires a mortgage servicer to
provide meaningful alternatives to foreclosure. However, Plaintiffs do not allege a violation of Cal. Civ.
Code § 2924.9(a)(1). And Plaintiffs cannot use their opposition brief to amend their complaint.
*Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) ("It is axiomatic that the complaint may
not be amended by briefs in opposition to a motion to dismiss."). Nothing in the SAC (or the Opposition)
alleges a violation of Cal. Civ. Code § 2924.9(a)(1). In fact, the SAC asserts the opposite. *See* Mot. at 1
(recognizing that Plaintiffs experienced multiple outcomes besides foreclosure, including Plaintiffs
Vergara, Peterson, Clingerman, and Ferguson, who remain in their homes and are making modified
mortgage payments).

1  Fargo's modification software error in its filings with the SEC.  *See id.* (citing SAC ¶¶ 71, 85, 326–27).

2  Their argument misses the mark.  The issue is not whether Wells Fargo's parent company does some

3  business in California, or whether it received or disclosed some information about its subsidiary (actions

4  that have nothing to do with Plaintiffs' claims).  Rather, the issue is whether the alleged wrongful conduct

5  at issue—i.e., the Bank's alleged failure to "test and audit its automated mortgage loan modification

6  underwriting tool"[12] and to "timely identify a number of automated calculation errors in its mortgage

7  software"[13]—emanated from California.  *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 916–918

8  (C.D. Cal. 2011) (nonresident plaintiff failed to state a UCL claim without adequately alleging that

9  decisions concerning the wrongful conduct emanated from California); *In re Hitachi Television Optical*

10  *Block Cases*, 2011 WL 9403, at *9 (S.D. Cal. Jan. 3, 2011) (California laws could not apply to non-

11  Californians where the alleged wrongdoing did not arise in California and the California contacts thus

12  "little significance" to the claims).[14]  Plaintiffs' failure to identify any such allegations against Wells Fargo

13  means they have none.  The UCL claim cannot apply outside California.

14  ### 2.  Plaintiffs' UCL Claim Is Insufficiently Pled.

15  The Opposition does not save the UCL claim, either.

16  First, as Plaintiffs concede, their claim under the unlawful prong of the UCL is based on Wells

17  Fargo's alleged failure to comply with HAMP.  Opp. at 16–17.[15]  Yet, they make no attempt to distinguish

18  the cases cited in the opening brief, which show that Plaintiffs cannot use HAMP as the basis for the claim

19  because HAMP only established guidelines, not laws or regulations.  Mot. at 15–16.  Instead, Plaintiffs

20  invoke *Wigod*, which is not a UCL case and has thus been deemed by at least one court in this district as

21  irrelevant to the UCL analysis.  *Hernandez v. Wells Fargo & Co.*, 2019 WL 3017657, at *3 (N.D. Cal.

22  July 10, 2019) (Alsup, J.) ("*Hernandez II*").  Indeed, the *Hernandez II* court rejected a HAMP-based

---

23  [12] SAC ¶ 66.

24  [13] SAC ¶ 68.

25  [14] Plaintiffs' reliance on *In re Mattel* is misplaced.  588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008).  There,

26  the plaintiffs brought misrepresentation claims based on the defendant's statements that were made from and approved in California.  *Id.*  Plaintiffs' claim here is not based on any of Wells Fargo & Co.'s alleged statements.  *In re Mattel* is inapposite.

27  [15] Plaintiffs do not address Wells Fargo's arguments that they cannot base their UCL claim on the HBOR or on their breach of contract, IIED, or negligence claims.  They have therefore waived and conceded

28  those issues.  *See, e.g., Yaffe*, 2024 WL 5063820, at *2; *Lansdown*, 2023 WL 2934932, at *4.

unlawful claim that was based on the same alleged conduct at issue here.  *See id*. ("WFC claims HAMP is not a law but a government program.  WFC is correct.  Plaintiff does not cite to any support that HAMP is a law or regulation that was subject to formal notice and comment rulemaking . . . Secretary of Treasury directives are not the equivalent of laws or regulations.").  This Court should do the same.

Plaintiffs' unfairness arguments fare no better.  Plaintiffs summon HAMP and belatedly, their HBOR claim, as predicates under *Cel-Tech*.  Because HAMP is decidedly not legislation, and because Plaintiffs' HBOR claim fails as a matter of law, Plaintiffs cannot show that Wells Fargo's alleged conduct is "tethered to some legislatively declared policy."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 186–87 (1999).  Nor do they argue, because they cannot, that Wells Fargo's alleged conduct had an effect on competition.  *See id*.  Plaintiffs do not meet the *Cel-Tech* test.

Plaintiffs also do not meet the *South Bay* test, which requires conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp*., 72 Cal. App. 4th 861, 887 (1999) (citation omitted).  With this approach, courts examine the practice's "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer."  *Id*. at 886.  Plaintiffs make no attempt to apply this test.  Instead, citing *Hernandez I*, they boldly proclaim that Wells Fargo "act[ed] unscrupulously" by "[relying] on its flawed software to determine loan modification eligibility, leading to improper denials and inflated balances."  Opp. at 18.  But *Hernandez I* offers no support here.  That court's holding that the plaintiffs plausibly pled a UCL unfairness claim was based on its finding that borrowers were entitled to a "'meaningful opportunity to obtain[] available loss mitigation options, if any,'" and allegations that Wells Fargo had "prioritiz[ed] profits over adequate oversight, despite being on notice of deficiencies in its foreclosure practices, and caus[ed] hundreds of unnecessary foreclosures."  *Hernandez I*, 2019 WL 2359198, at *5 (quoting Cal. Civ. Code § 2923.4).  Plaintiffs make no such allegations about a profit motive here.  And, Plaintiffs admit that they ***were*** considered for and ***did*** obtain several loss mitigation options, including loan modifications, short sales, and deeds-in-lieu of foreclosure, placing these claims squarely outside *Hernandez I*'s ambit, where all plaintiffs had alleged their loan modification applications were denied.  *See id*. at *1.  Further, Plaintiffs' charge of "unscrupulous" behavior is undermined by their

own allegations that Wells Fargo made errors or mistakes.  SAC ¶¶ 64–93, 107–111, 339–340, 342 (characterizing Wells Fargo's conduct as an "error"); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 928 (N.D. Cal. 2012) (dismissing UCL claim under the *South Bay* test, explaining that "the court is loath to pass judgment on a design decision that is clear only in hindsight to have been a mistake").

The Court should also dismiss their claim under the fraudulent prong of the UCL.  Despite agreeing that this claim is governed by Rule 9(b), Plaintiffs identify no allegations meeting its requirements. Instead, they say that "their discussions with [Wells Fargo] concerned loan modifications."  Opp. at 19. That is plainly insufficient.  *See, e.g., Tabler v. Panera LLC*, 2019 WL 5579529, at *12 (N.D. Cal. Oct. 19, 2019) ("courts in this circuit have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon"); *Anderson v. Apple, Inc.*, 500 F. Supp. 3d 993, 1019 (N.D. Cal. 2020) (dismissing partial misrepresentation claims where the plaintiffs "failed to spell out when they encountered these statements, where they did so, [ ] how it affected them . . . [or] if they encountered them"); *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1005–06 (N.D. Cal. 2023) (same) (collecting cases).  And, here again, Plaintiffs do not confront the SAC's allegations that undermine any theory of deception.  SAC ¶¶ 64–93, 107–111, 331–334, 336 (characterizing conduct as "erroneous").

The UCL claim should be dismissed.

## F.    Plaintiffs' Claim Under the Illinois Consumer Fraud Act Fails (Count Seven).

In support of their ICFA claim, Plaintiffs first assert reliance on HAMP.  Opp. at 20.  A practice can offend public policy under ICFA when it "violates statutory or administrative rules that establish a certain standard of conduct."  *Tyler v. Bank of N.Y. Mellon*, 2020 WL 2735367, at *9 (N.D. Ill. May 26, 2020).  However, as shown above and in the opening brief, HAMP was not a statutory or administrative rule, but rather a voluntary government program, and its guidelines were neither law nor regulation.  It cannot provide the predicate for an ICFA claim.

Plaintiffs' cited cases are readily distinguishable.  The ICFA claim in *Wigod* was not based on HAMP, but on the defendant's alleged breach of a ***contract*** (a HAMP trial payment plan) via false pretenses.  673 F.3d at 557–58.  And in *Yanahan v. Wells Fargo Bank, N.A.*, 2025 WL 606847 (N.D. Ill.

Feb. 25, 2025), and *Lowry v. Wells Fargo Bank, N.A.*, 2016 WL 4593815 (N.D. Ill. Sept. 2, 2016), the courts assumed without analysis that HAMP guidelines were "statutes or regulations" that could provide the predicate for an ICFA claim. This Court should not follow suit.

Plaintiffs' public policy arguments also falter. Again, the SAC's allegations show only that errors occurred. SAC ¶¶ 64–93, 107–111, 331–334, 336. Moreover, Plaintiffs' arguments here undercut their earlier attempt to disclaim reliance on consent orders as the basis for their claim. Plaintiffs cite paragraphs 6, 10, 59, 108, 111, 268, and 269 as support for their ICFA claim, all of which make various allegations regarding those consent orders. Opp. at 21. However, Plaintiffs do not address the cases in the opening brief, which establish that Plaintiffs cannot base their claim on Wells Fargo's alleged violations of various consent orders. Mot. at 8–9. Plaintiffs' failure to address that argument means they concede it. *Yaffe*, 2024 WL 5063820, at *2; *Lansdown*, 2023 WL 2934932, at *4.

The ICFA claim should be dismissed with prejudice.

### G. The Court Should Dismiss the Pennsylvania and North Carolina Unfair Trade Practices Claims (Counts Eight and Nine).

In support of the UTPCPL and NCUDTPA claims, Plaintiffs argue that "Wells Fargo engaged in deceptive conduct by failing to disclose material facts about the errors in its loan modification software—which it was aware of and had agreed to correct—which directly affected the Plaintiffs' applications, hence causing the loss." Opp. at 21. That is deflection. The issue here is not whether Plaintiffs sufficiently allege a "loss" (they do not), but whether they have adequately alleged reliance. *Jaraczewski v. Equity Nat'l Title*, 2024 WL 3861248, at *5 (W.D. Pa. Aug. 19, 2024) (claims under the UTPCPL require allegations that the plaintiff "justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance") (quotations and citation omitted). Plaintiff Risconsin previously admitted, in a pleading filed with this Court, that his loan modification application was denied because he failed to return required paperwork, not because of a faulty decision. *See* CAC ¶ 152. That admission forecloses any UTPCPL claim as a matter of law. Tellingly, Risconsin does not address Wells Fargo's showing that the omission of that critical fact from the SAC was improper and that his "changed allegations are false and [a] sham." *Azadpour v. Sun Microsys., Inc.*, 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) ("where allegations in an amended complaint contradict those in a prior complaint, a

district court need not accept the new alleged facts as true"); *Colombo v. Palo Alto Unified Sch. Dist.*, 2025 WL 929955, at *10 (N.D. Cal. Mar. 27, 2025) ("Although an amended complaint supersedes a prior complaint, a court 'need not disregard the fact that an inconsistent allegation was previously made.'") (collecting cases). The Court should therefore dismiss the UTPCPL claim.[16]

The NCUDTPA claim fails for the same reasons. Similar to Plaintiff Risconsin, Plaintiff Kea has no answer for her allegation that Wells Fargo never issued a decision on her modification application. SAC ¶ 170. Indeed, Wells Fargo's alleged "reliance on a defective system and failure to notify borrowers of errors," Opp. at 23, had no impact on Plaintiff Kea. She thus has pled herself out of any allegation that errors in Wells Fargo's modification software "proximately caused" her "actual injury." *Clinical Staffing, Inc. v. Worldwide Travel Staffing*, 60 F. Supp. 3d 618, 627 (E.D.N.C. 2013).

The Court should dismiss the UTPCPL and NCUDTPA claims.

## H. The SAC Does Not State a Claim Under the D.C. Consumer Protection Procedures Act (Count Ten).

Plaintiff Forney insists that he was in a consumer-merchant relationship with Wells Fargo. In support, he cites a single case, *Curran v. Wells Fargo Bank, N.A.*, 2021 WL 6753480 (D.D.C. Mar. 11, 2021). Opp. at 25. *Curran* stands alone and is an outlier. Other courts that have considered this issue have held that there is no consumer-merchant relationship between a borrower and a loan servicer. *See Busby v. Cap. One, N.A.*, 932 F. Supp. 2d 114, 144 (D.D.C. 2013) (dismissing CPPA claim against loan servicer because there was no consumer-merchant relationship); *Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011) (same); *Michaels v. NCO Fin. Sys., Inc.*, 2020 WL 2800664, at *8 (D.D.C. May 29, 2020) (CPPA did not apply to loan servicer because it "did not provide [the plaintiff] with any goods or services"), *aff'd*, 2023 WL 3563079 (D.C. Cir. May 19, 2023); *Mushala v. U.S. Bank, Nat'l Ass'n*, 2019 WL 1429523, at *9 (D.D.C. Mar. 29, 2019) (loan servicer and bank that did not provide borrower with original loan were not subject to liability under the CPPA because they did not provide the

---

[16] Risconsin's attempt to reframe his claim—that he was harmed not by the lack of a loan modification, but by "Wells Fargo's knowledge of the defects and failure to disclose this information" which "misled Plaintiffs into believing that their modification applications were reviewed fairly"—is nonsensical. Risconsin could not have been "misled" that his modification request was being "reviewed fairly" because, as he conceded in the CAC, he failed to complete a loan modification application, leaving nothing to be reviewed.

borrower with any "goods or services" and their "actions did not take place within the context of a consumer-merchant relationship"); *cf. Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 948–49 (D.C. Cir. 2017) (debt collector who did not provide credit to the plaintiff could not be held liable under the CPPA because it was not a "merchant" under the statute). Plaintiffs' analysis-free Opposition offers no reason for the Court to adopt *Curran* despite the clear weight of authority undermining its conclusion.[17]

## I.    The SAC Does Not State a Claim Under New York General Business Law § 349 (Count Eleven).

Wells Fargo has already shown that Plaintiffs cannot rely on alleged software errors to support a § 349 claim. Mot. at 22–23. Unable to meaningfully counter that showing, Plaintiff Ferguson deflects, arguing that she was misled by the so-called "Apology Letter" Wells Fargo sent her on June 11, 2024. Opp. at 27. That argument makes no sense. The harm Ferguson claims—"having to pay a higher mortgage payment" and "having a higher mortgage balance"[18]—could not have been caused by a letter she received twelve years later. Instead, as Ferguson readily admits in the SAC, her "harm" was caused by purported "automated calculation errors"[19]—e.g., mistakes—thereby placing her claim squarely within the authorities cited in the opening brief, which show that the conduct Plaintiffs allege here is not cognizable under § 349. [20]

Plaintiffs' § 349 claim fails for an additional reason: the failure to plead facts showing that Wells Fargo made actionable omissions. Claims under § 349 fail if the "alleged omissions are not sufficiently related to [the defendant's] affirmative statements to render those statements misleading." *Monroe Cnty. Emps. Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 359 (S.D.N.Y. 2014). The Opposition makes clear that Plaintiffs' omissions theory is based on Wells Fargo's alleged failures to "oversee its

---

[17] Plaintiffs' other cases, *Byrd v. Jackson*, 902 A.2d 778 (D.C. 2006), and *Chen v. Bell-Smith*, 768 F. Supp. 2d 121 (D.D.C. 2011), do not address this issue and are thus irrelevant.

[18] SAC ¶ 226.

[19] SAC ¶ 226.

[20] This case presents no analogy to *Dumont v. Litton Loan Servicing, LP*, 2014 WL 815244 (S.D.N.Y. 2014). *See* Opp. at 27. The court there found that the plaintiff adequately alleged his § 349 claims, which included allegations that he made unnecessary loan payments "at least once at the explicit direction of a [loan servicer] representative," received improper notices of default, had false reports made to credit agencies, and was denied a personal loan because of his damaged credit. *Dumont*, 2014 WL 815244 at *11. Plaintiffs do not allege that Plaintiff Ferguson experienced these or similar financial consequences.

procedures to ensure loan modifications were considered properly," "to draft appropriate policies to ensure loan modification applications were considered properly," and "to ensure all models and programming utilized to assist in loan modifications were accurately utilized and functioning properly." Opp. at 29 (citing SAC ¶¶ 411–416). However, the SAC does not allege—because it cannot—that Wells Fargo ever made a single statement about its "procedures," "policies," "models," or "programming" to Plaintiff Ferguson. Accordingly, the omissions theory necessarily fails as a matter of law.

For all these reasons, the Court should dismiss the § 349 claim.

### J.     The Unjust Enrichment Claim Fails as a Matter of Law (Count Twelve).

Finally, the Court should dismiss the unjust enrichment claim. Plaintiffs' arguments under California law are meritless.[21] Plaintiffs insist that "settled" Ninth Circuit law permits a standalone unjust enrichment claim, but that is a red herring. Opp. at 29–30. Wells Fargo did not argue that Plaintiffs cannot bring this claim at all, which renders Plaintiffs' cited cases irrelevant.

Instead, Wells Fargo argued that under California law, *where a valid and enforceable contract exists*, courts find that there can be no claim for unjust enrichment.[22] *See, e.g., Stang v. Teal Drones, Inc.*, 2023 WL 11956370, at *3 (N.D. Cal. Mar. 24, 2023); *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 984 (E.D. Cal. 2018); *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). The SAC admits that for each Plaintiff, a valid and enforceable contract—e.g., their loan agreements—exists and undergirds their claim. SAC ¶¶ 112, 124, 134, 143, 152, 164, 176. That admission requires dismissal of the unjust enrichment claim. Because Plaintiffs' cited cases do not involve valid and enforceable contracts, they are inapposite.[23] *See Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) (permitting unjust enrichment claim to survive a motion to dismiss as a "quasi-contract" claim where consumer plaintiffs did not allege a breach of a valid and enforceable contract);

---

[21] Plaintiffs do not address Wells Fargo's argument that they cannot pursue unjust enrichment claims under Illinois, Pennsylvania, North Carolina, New York, or D.C. law. Mot. at 25. Therefore, they concede it. *See, e.g., Yaffe*, 2024 WL 5063820, at *2; *Lansdown*, 2023 WL 2934932, at *4.

[22] Mot. at 24–25.

[23] Plaintiffs' reliance on *In re Facebook, Inc. Internet Tracking Litigation* does not help their argument. 956 F.3d 589, 601 (9th Cir. 2020). There, the court decided whether the plaintiffs had standing to bring a claim for unjust enrichment; it was not asked to dismiss the plaintiffs' unjust enrichment claim as duplicative of the plaintiffs' breach of contract claim.

1  *Bruton v. Gerber Prods. Co.*, 703 F. Appx 468 (9th Cir. 2017) (same).[24]

2  **III.    CONCLUSION**

3           For the foregoing reasons and the reasons stated in the opening brief, the Court should dismiss the

4  Second Amended Consolidated Class Action Complaint with prejudice.  If the Court declines to dismiss

5  the IIED claims, it should strike the class allegations for those claims.

6

7   Dated: May 5, 2025                        WINSTON & STRAWN LLP

8

9                                              By: /s/ *Amanda L. Groves*
                                                   Amanda L. Groves (SBN: 187216)
10                                                 agroves@winston.com
                                                   Shawn R. Obi (SBN: 288088)
11                                                 sobi@winston.com
                                                   WINSTON & STRAWN LLP
12                                                 333 S. Grand Avenue, 38th Floor
                                                   Los Angeles, CA 90071
13                                                 Telephone: (213) 615-1700
                                                   Facsimile: (213) 615-1750

14                                                 Angela A. Smedley (admitted pro hac vice)
15                                                 asmedley@winston.com
                                                   WINSTON & STRAWN LLP
16                                                 35 W. Wacker Drive
                                                   Chicago, IL 60601
17                                                 Telephone: (312) 558-5600
                                                   Facsimile: (312) 558-5700

18                                                 Attorneys for Defendant
19                                                 WELLS FARGO BANK, N.A.

20

21

22

23

24

25

26

27  [24] Other courts have distinguished *Bruton* when dismissing an unjust enrichment claim as duplicative of a breach of contract claim because *Bruton* "does not address express contracts."  *See Bostick v. Gen. Motors, LLC*, 2020 WL 13283478, at *9 (C.D. Cal. July 22, 2020).

28

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on May 5, 2025, a copy of the foregoing pleading, with any and all

3   attachments, was filed electronically with the clerk of court via ECF, which will serve on all counsel of

4   record.

5

6   Dated: May 5, 2025                        By:    /s/ *Amanda L. Groves*
                                                  Amanda L. Groves
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WELLS FARGO BANK, NA.'S
REPLY ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01358-MMC