1

2

3    IN THE UNITED STATES DISTRICT COURT

4    FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6                                                    Case No.  24-cv-01358-MMC

7    IN RE WELLS FARGO MORTGAGE         **ORDER GRANTING DEFENDANT'S**
     MODIFICATION LITIGATION           **MOTION TO DISMISS SECOND**
8                                       **AMENDED COMPLAINT; AFFORDING**
                                        **PLAINTIFFS LEAVE TO AMEND;**
9                                       **MAINTAINING STAY OF DISCOVERY**

10

11

12         Before the Court is defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") "Motion to

13   Dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint," whereby

14   Wells Fargo seeks dismissal of said pleading pursuant to Rule 12(b)(6) of the Federal

15   Rules of Civil Procedure.  Plaintiffs, who are identified below, have filed opposition, to

16   which Wells Fargo has replied.  Having read and considered the papers filed in support of

17   and in opposition to the motion, the Court rules as follows.[1]

18                                 **BACKGROUND**

19         Plaintiffs consist of fourteen individuals, namely, in the order set forth in the SAC,

20   Myron Curry ("Curry"), Darrell Forney ("Forney"), Chester Nelson ("Nelson"), Samuel

21   Beloff ("Beloff"), John Risconsin ("Risconsin"), Adrenia Kea ("Kea"), Ruth Vergara

22   ("Vergara"), Laurence Peterson and Marcia Peterson ("the Petersons"), Bradley Liggett

23   and Kyra Liggett ("the Liggetts"), Deanna Clingerman ("Clingerman"), Brian Keaveny

24   ("Keaveny"), and Renee Boucher Ferguson ("Ferguson").

25         The following factual allegations, set forth in plaintiffs' operative complaint, the

26   Second Amended Consolidated Class Action Complaint ("SAC"), are assumed true for

27   _____

28         [1] By order filed May 14, 2025, the Court took the matter under submission.

United States District Court
Northern District of California

purposes of the instant motion.

Each plaintiff has or had a mortgage held or serviced by Wells Fargo (see SAC ¶¶ 112-16, 124-25, 134-35, 143-44, 152-53, 164, 176, 185, 193, 203, 210, 219), and each sought a loan modification from Wells Fargo (see SAC ¶¶ 114, 127, 135, 145, 157, 165, 177, 186, 194, 204, 211, 220), the earliest in 2009 (see SAC ¶ 114), and the latest in 2018 (see SAC ¶ 169). Six plaintiffs were denied a loan modification, specifically, Curry, Forney, Nelson, Beloff, Risconsin, and Kea (see SAC ¶¶ 116, 128, 136, 145, 157, 170) and, thereafter, one lost his property by foreclosure (see SAC ¶¶ 137-38), one lost his property through a "Sheriff's Sale" (see SAC ¶ 158-59), one transferred the deed on his property to Wells Fargo (see SAC ¶ 147), and three sold their respective properties (see SAC ¶¶ 118, 129, 171). Eight plaintiffs, however, did obtain a loan modification, specifically, Vergara, the Petersons, the Liggetts, Clingerman, Keaveny, and Ferguson. (See SAC ¶ 178-80, 187-88, 197, 205, 213, 221.)

Each plaintiff received from Wells Fargo, in December 2023 or June 2024, a "form" which plaintiffs refer to as an "Apology Letter[ ]," in which Wells Fargo states: "[D]uring a review of the account, we identified that when the loan was considered for payment assistance options, an error may have occurred. As a result we are enclosing a check for [a specified amount]." (See SAC ¶ 105; see also SAC ¶¶ 119, 130, 139, 148, 160, 172, 181, 189, 199, 206, 215, 222.)[2]

According to plaintiffs, when each plaintiff who did not receive a modification read the Apology Letter, he/she "learned" for "the first time" that Wells Fargo had "committed a calculation error" and that his/her "modification request should have been approved" (see SAC ¶ 121, 131, 140, 149, 161, 173), and, when each plaintiff who obtained a loan modification read the Apology Letter, he/she "learned" for "the first time" that Wells Fargo

---

[2] Five of the six plaintiffs who were denied a loan modification received $200.00 (see SAC ¶¶ 120, 132, 141, 150, 162), while the sixth received $500 (see SAC ¶ 174). The plaintiffs who obtained a loan modification received checks ranging from $250 to $5148.12. (See SAC ¶ 224 ($250), SAC ¶ 208 ($569.54), SAC ¶ 183 ($1000), SAC ¶ 201 ($3321.20), SAC ¶ 217 ($2316.23), SAC ¶ 191 ($5148.12).)

had "committed a calculation error" and either that his/her "modification payments may have been lower" (see SAC ¶¶ 182, 207, 216, 223) or that the modification "was miscalculated" (see SAC ¶¶ 190, 200). According to plaintiffs, the "errors at issue . . . involve[d] inaccurate calculations as to amounts due and owing for escrow accounts, attorneys' fees, default servicing fees, and accrued interest." (See SAC ¶ 109.)[3]

Based on the above allegations, plaintiffs assert twelve Counts, each arising under state law.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

---

[3] Plaintiffs do not further describe the "errors," other than to state they "do not reasonably believe" the "errors" at issue herein are the same "errors" identified by borrowers in two prior class actions brought against Wells Fargo, which plaintiffs refer to as "Hernandez" and "Ryder" (see SAC ¶ 13), and in which, according to plaintiffs, the errors therein were described by those courts as "excessive attorneys' fees being included in the loan modification decisioning process" (see SAC ¶¶ 95, 98).

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual

allegations must be enough to raise a right to relief above the speculative level,"

Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion

couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and

citation omitted).

## DISCUSSION

Wells Fargo argues that each of the twelve Counts is subject to dismissal.  The

Court considers the twelve Counts, in turn.

### A.  Count One: "Breach of Contract"

Plaintiffs allege they entered into "Security Instruments (typically referred to as

either a mortgage, deed of trust or security deed)" (see SAC ¶ 249)[4] and that Wells Fargo

breached various express provisions set forth therein as well as the covenant of good

faith and fair dealing implied therein.  The Court first addresses the alleged express

provisions, which provisions fall into three separate categories

#### 1.  Express Provisions Re: Lender Charges

Plaintiffs allege that some of their respective Security Instruments include the

following provision:

> 14. Loan Charges. Lender may charge Borrower fees for services
> performed in connection with Borrower's default, for the purpose of
> protecting Lender's interest in the Property and rights under the Security
> Instrument, including, but not limited to, attorneys' fees, property inspection
> and valuation fees. . . .  Lender may not charge fees that are expressly
> prohibited by the Security Instrument or Applicable Law.

(See SAC ¶ 250 n.10.)

Plaintiffs allege that other Security Instruments include the following:

> [7.]  . . . . If Borrower fails to make these payments or the payments
> required by paragraph 2,[5] or fails to perform any other covenants and

---

[4] Wells Fargo's unopposed request that the Court take judicial notice of each
plaintiff's Security Instrument, as well as each plaintiff's note, is GRANTED.  (See Def.'s
Req. for Judicial Notice Exs. A-X.)

[5] The term "these payments" refers to "governmental or municipal charges, fines
and dispositions that are not included in paragraph 2."  (See Def.'s Req. for Judicial

United States District Court
Northern District of California

agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.[6]

8. Fees. Lender may collect fees and charges authorized by the Secretary [of Housing and Urban Development].

(See SAC ¶ 250 n.11; Def.'s Req. for Judicial Notice Ex. D.)

Although plaintiffs assert in conclusory fashion that the above-referenced provisions were breached when Wells Fargo denied plaintiffs' loan modification requests or approved them based upon "faulty automated calculations" (see SAC ¶ 251), they do not allege, as Wells Fargo correctly observes, that Wells Fargo imposed a fee or charge on any plaintiff in violation of any of the above-quoted provisions. Indeed, the SAC includes no discussion of the imposition of any fee or charge, but, rather, as noted, alleges errors allegedly committed with respect to consideration of loan modification requests, a topic not the subject of the above-quoted provisions.

Accordingly, to the extent Count One is based on alleged breaches of the above-quoted provisions, Count One is subject to dismissal.

### 2. Express Provisions Re: Options to Cure Default

Plaintiffs allege their respective Security Instruments contain a "specific contract term" requiring Wells Fargo to "provide [them] all available options to cure a default at the time a default existed under the terms of the Security Instrument" (see SAC ¶ 256), and, in particular, that Wells Fargo provide them a "loss mitigation option," i.e., a loan modification, "if appropriate" (see SAC ¶ 258). Plaintiffs, however, fail to identify such

---

Notice Ex. D.) Payments required by paragraph 2 consist of "the principal and interest set forth in the Note and any late charges," "taxes and special assessments levied or to be levied against the Property," "leasehold payments or ground rents on the Property," and "premiums for insurance." (See id.)

[6] Although not alleged in the SAC, paragraph 7 goes on to state: "Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument." (See id.)

contractual term(s) in the SAC, as is required to state a cognizable claim.  See Twaite v. Allstate Ins. Co., 216 Cal. App. 3d 239, 252-53 (1989) (holding, "[t]o state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect"; finding breach of contract claim subject to dismissal where plaintiff failed to allege the "terms of the [contract]" asserted breached by defendant).[7]

In its motion, however, Wells Fargo states the Security Instruments have one of the following provisions, which Wells Fargo understands to be, and plaintiffs do not dispute, are the terms to which plaintiffs are referring:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

> (See Def.'s Req. for Judicial Notice Ex. A ¶ 22.)

> Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument and due under the Note if: (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
> . . . .

> Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. . . .  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs

---

[7] One or more plaintiffs reside in California, the District of Columbia, Illinois, New York, North Carolina, Ohio, Pennsylvania, Virginia, and Washington.  Wells Fargo, in its motion, and plaintiffs, in their opposition, cite to California law with respect to their respective analyses of Count One, although Wells Fargo states, and plaintiffs do not disagree, that each Security Instrument provides that the law of the State in which the subject property is located applies.  The Court thus understands the parties to agree, at least for purposes of the instant motion, that there are no material differences among the relevant States' laws with respect to breach of contract claims.

and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. . . . .

(See id. Ex. D ¶¶ 9(a), 10.)

Contrary to plaintiffs' allegations, no language in the above-quoted provisions requires Wells Fargo to provide loan modifications, and, indeed, plaintiffs cite to none in their opposition. Although plaintiffs cite cases in which, under the contractual terms in the agreements at issue therein, a mortgage servicer was found to be contractually obligated to provide a loan modification, no such language is included in plaintiffs' respective Security Instruments. See Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 560-66 (7th Cir. 2012) (holding, where specific provision of contract required servicer "to offer [plaintiff] a permanent loan modification if two conditions were satisfied" and plaintiff alleged both conditions were satisfied, plaintiff stated cognizable claim for breach of contract); Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 234-36 (1st Cir. 2013) (holding, where "plain terms" of parties' agreement required servicer to "offer [plaintiff] a permanent modification" upon plaintiff's compliance with "certain conditions," and plaintiff alleged "she performed all of her obligations under the [contract]," plaintiff stated cognizable claim for breach of contract).

Accordingly, to the extent Count One is based on alleged breaches of the above-quoted provisions, Count One is subject to dismissal.

### 3. Violation of HAMP Rules and Guidelines

Plaintiffs allege Wells Fargo "agreed to participate in HAMP" (see SAC ¶ 45), i.e., "the Home Affordable Modification Program" implemented by the Secretary of the Treasury in 2009 (see SAC ¶¶ 6, 46), and that Wells Fargo "repeatedly violated" HAMP "rules and guidelines" (see SAC ¶ 6).[8] Although not clearly expressed in the SAC, the

---

[8] The SAC also asserts Wells Fargo failed to comply with "servicing guidelines" implemented by four entities, specifically, Fannie Mae, Freddie Mac, the Secretary of the Department of Housing and Urban Development, and the Secretary of the Department of Veterans' Affairs. (See SAC ¶ 252-53.) In their opposition, however, plaintiffs clarify that the breach of contract claim "does not seek to enforce [such] servicing guidelines." (See Pls.' Opp. at 4:15.5.)

United States District Court
Northern District of California

1    Court understands plaintiffs to be asserting they are third-party beneficiaries of an

2    agreement Wells Fargo has under HAMP with a non-party.  (See Pls.' Opp. at 18:4-5.)

3    The SAC, however, fails to identify the specific term(s) in any such contract that Wells

4    Fargo is alleged to have breached.  See Twaite, 216 Cal. App. 3d at 252.[9]

5         Accordingly, to the extent Count One is based on Wells Fargo's alleged failures to

6    comply with HAMP rules and guidelines, Count One is subject to dismissal.

7         **4. Implied Covenant of Good Faith and Fair Dealing**

8         Plaintiffs allege Wells Fargo breached the implied covenant of good faith and fair

9    dealing in connection with Wells Fargo's consideration of plaintiffs' respective loan

10   modification requests.  (See SAC ¶¶ 260, 264.)

11        A covenant of good faith and fair dealing "is implied as a *supplement* to the

12   express contractual provisions, to prevent a contracting party from engaging in conduct

13   which (while not technically transgressing the express covenants) frustrates the other

14   party's rights to the benefits of the contract."  See Racine & Laramie, Ltd. v. Department

15   of Parks & Recreation, 11 Cal. App. 4th 1026, 1031-32 (1992) (emphasis in original;

16   internal quotation and citation omitted).  Here, however, plaintiffs fail to allege they have

17   an express contractual right to have loan modification requests considered in a particular

18   manner.  See Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 349–50 (2000) (holding implied

19   covenant "cannot impose substantive duties or limits on the contracting parties beyond

20   those incorporated in the specific terms of their agreement"); Plastino v. Wells Fargo

21   Bank, 873 F.Supp.2d 1179, 1991-92 (N.D. Cal. 2012) (finding plaintiff failed to allege

22   breach of implied covenant where plaintiff did not identify "specific contractual provision

23

24        [9] The parties cite conflicting authority as to whether a borrower can be a third-party
     beneficiary under a HAMP agreement.  As the SAC does not set forth the language of
25   any HAMP agreement on which plaintiffs rely, the Court finds consideration of such issue
     premature.  See County of Santa Clara v Astra USA, Inc., 588 F.3d 1237, 1244 (9th Cir.
26   2009), rev'd on other grounds, 563 U.S. 110 (2010) (holding, where plaintiff alleges such
     plaintiff is third-party beneficiary of contract between defendant and federal government,
27   courts must "examine the precise language of the contract to rebut [a] presumption that
     the third parties are merely incidental beneficiaries") (internal quotation, citation, and
28   alteration omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   that was frustrated").

2   Accordingly, to the extent Count One is based on alleged breaches of the implied

3   covenant of good faith and fair dealing, Count One is subject to dismissal.

4   **B. Count Two: "Intentional Infliction of Emotional Distress ('IIED')"**

5   In Count Two, plaintiffs allege Wells Fargo, in employing a software error when it

6   either denied or granted loan modification requests, engaged in "extreme and outrageous

7   conduct" (see SAC ¶ 268) that caused plaintiffs "severe emotional distress and anxiety"

8   (see SAC ¶ 274).

9   As Wells Fargo correctly observes, plaintiffs fail to allege facts to support a finding

10  that, when it considered plaintiffs' respective loan modification requests, Wells Fargo

11  engaged in the type of outrageous behavior that can support an IIED claim.  See Hughes

12  v. Pair, 46 Cal. 4th 1035, 1050-51 (2009) (holding, to state claim for IIED, defendant's

13  conduct must be "so extreme as to exceed all bounds of that usually tolerated in a

14  civilized community") (internal quotation and citation omitted).  The Court agrees.

15  Plaintiffs' theory appears to be based on their allegation that Wells Fargo knew, as

16  early as 2013, of three "automated calculation errors." (See SAC ¶¶ 68-71, 76, 84-85.)

17  Even assuming a loan servicer's continuing to use software that it knows contains an

18  error could constitute the type of outrageous conduct on which an IIED claim can be

19  based, plaintiffs fail to allege any facts to support a finding that the three errors identified

20  in the SAC consist of or include errors that Wells Fargo employed when considering

21  plaintiffs' respective requests.  Indeed, plaintiffs allege those three errors were errors

22  addressed in two prior cases brought by other borrowers against Wells Fargo (see SAC

23  ¶ 94), and which errors plaintiffs allege are not the errors at issue in the instant action

24  (see supra n.3).  Stated otherwise, the SAC lacks any facts to support a finding that the

25  error(s) allegedly employed when Wells Fargo considered plaintiffs' respective loan

26  modification requests were known to Wells Fargo at the time those requests were

27  considered.

28  //

Moreover, plaintiffs allege no facts to support their conclusory assertions that they experienced severe distress.  (See SAC ¶¶ 271, 274, 277); Iqbal, 556 U.S. at 678 (holding "conclusory statements" fail to state cognizable claim for relief); Hughes, 46 Cal. 4th at 1051 (holding, "[w]ith respect to the requirement that the plaintiff show severe emotional distress, [California] court[s] ha[ve] set a high bar," specifically, that the plaintiff suffer "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it") (internal quotation, citation, and alteration omitted); Pitman v. City of Oakland, 197 Cal. App. 3d 1037, 1047-48 (1988) (holding "mere allegation that [a] plaintiff[ ] suffered severe emotional distress, without facts indicating the nature or extent of any mental suffering incurred as a result of the defendant's alleged outrageous conduct, fail[s] to state a cause of action for [IIED]").

Accordingly, Count Two is subject to dismissal.[10]

## C.  Count Three: "Negligent Reporting"

In Count Three, plaintiffs allege Wells Fargo made "negative and derogative statements" about them to "credit reporting agencies," namely, statements that plaintiffs had "experienced a foreclosure or other negative event related to their mortgages."  (See SAC ¶ 280.)  According to plaintiffs, Wells Fargo "knew or should have known that the statements were false and/or inaccurate."  (See SAC ¶ 281.)

Wells Fargo argues such claim, described by plaintiffs as "negligent reporting" (see SAC at 62:7), is preempted by the Fair Credit Reporting Act ("FCRA").

Under FCRA, "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of [FCRA], relating to the responsibilities of persons who furnish information to consumer reporting agencies."  See 15 U.S.C. § 1681t(b)(1)(F).  Section 1681s-2, in turn, provides

---

[10] In light of said ruling, the Court makes no determination herein as to Wells Fargo's alternative request to "strike the class allegations for [the IIED] claims."  (See Def.'s Mot. at 25:14-15.)

United States District Court
Northern District of California

1   that "[a] person shall not furnish any information relating to a consumer to any consumer

2   reporting agency if the person knows or has reasonable cause to believe that the

3   information is inaccurate." See 15 U.S.C. § 1681s-2(a)(1)(A). In other words, § 1681s-2

4   covers the precise conduct on which plaintiffs' negligent reporting claim is based.[11]

5   Consequently, plaintiff's negligent reporting claim is preempted.

6         Accordingly, Count Three is subject to dismissal.

7   **D. Count Four: "Negligent Undertaking of Loan Modification"**

8         In Count Four, plaintiffs allege Wells Fargo, in considering plaintiffs' loan

9   modification requests, was negligent, in that it "fail[ed] to properly consider whether

10  [p]laintiffs . . . were entitled to a loan modification." (See SAC ¶ 313.)

11        Wells Fargo, citing, inter alia, Sheen v. Wells Fargo Bank, N.A., 12 Cal. 5th 905

12  (2022), notes that, under the laws of the applicable nine states, mortgage servicers and

13  lenders do not owe non-contractual duties with respect to processing loan modification

14  requests. See id. at 948 (holding, "when a borrower requests a loan modification, a

15  lender owes no tort duty sounding in general negligence principles to process, review and

16  respond carefully and completely to the borrower's application"; affirming dismissal of

17  negligence claim against loan servicer arising out of alleged failure to process loan

18  modification request) (internal quotation omitted).[12]

19        In their opposition, plaintiffs fail to cite any authority holding to the contrary as to

20  common law claims, such as Count Four. Rather, plaintiffs point to statutes under which,

21  _____

22  [11] Although FCRA's preemption statute provides an exception for claims brought under "§ 1785.25(a) of the California Civil Code (as in effect on September 30, 1996),"
23  see 15 U.S.C. § 1681t(b)(1)(F)(ii), plaintiffs have not asserted a claim under § 1785.25(a).

24  [12] Wells Fargo cites to cases analyzing the law in the other states wherein plaintiffs
25  reside, which cases similarly find no negligence claim can be brought against mortgage servicers or lenders arising out of the processing of loan modification requests. (See
26  Def.'s Mot. at 12:11-25.) Indeed, in Sheen, the California Supreme Court observed that, as of March 2022, a date that postdates the last date on which Wells Fargo is alleged to
27  have considered any plaintiff's loan modification request, no "state high court" had "impos[ed] a duty on lenders to exercise due care in processing, reviewing and
28  responding to loan modification applications." See Sheen, 12 Cal. 5th at 948.

United States District Court
Northern District of California

1   they contend, a loan servicer or lender can be held liable for failing to properly handle

2   loan modification requests.  Specifically, plaintiffs cite the California Homeowner Bill of

3   Rights ("HBOR") and the "consumer protection statutes" of each relevant state other than

4   New York.  (See Pls.' Opp. at 12:22-13:2.)  Even assuming, however, a negligence claim

5   can be based on a violation of HBOR or a consumer protection statute, a proposition for

6   which plaintiffs cite no authority, plaintiffs' HBOR claim and claims under consumer

7   protection statutes, as discussed below, are subject to dismissal.

8        Accordingly, Count Four is subject to dismissal.

9   **E.  Count Five: "Violations of the California Homeowner Bill of Rights"**

10       In Count Five, plaintiffs allege, on behalf of California residents Curry and the

11  Liggetts, a claim under HBOR, based on Wells Fargo's alleged failure to "ensure that

12  competent and reliable evidence" supported its "right to foreclose before it filed a notice

13  of default or notice [of] sale."  (See SAC ¶ 317.)  Plaintiffs base such claim on § 2924.17

14  of the California Civil Code, a section within HBOR, which provides that "[b]efore

15  recording or filing" a notice of default or notice of sale, "a mortgage servicer shall ensure

16  that it has reviewed competent and reliable evidence to substantiate the borrower's

17  default and the right to foreclose, including the borrower's loan status and loan

18  information."  See Cal. Civ. Code § 2924.17(b).

19       Under HBOR, a plaintiff who asserts a violation of § 2924.17 is, under some

20  circumstances, entitled to seek damages and, under other circumstances, injunctive

21  relief.  As Wells Fargo points out, however, plaintiffs have failed to plead facts to support

22  a finding that Curry or the Liggetts are entitled to recover either form of relief.  First,

23  damages for an alleged violation of § 2924.17 are available only "[a]fter a trustee's deed

24  upon sale has been recorded."  See Cal. Civ. Code § 2924.12(b).[13]  Consequently,

25  plaintiffs lack statutory standing to bring a claim for damages, as they do not allege a

26

27       [13] A trustee's deed upon sale is recorded "[a]fter a nonjudicial foreclosure sale."

28  See Zieve, Brodnax & Steele, L.L.P. v. Dhindsa, 49 Cal. App. 5th 27, 36 (2020).

United States District Court
Northern District of California

1    trustee's deed upon sale has been recorded as to Curry's property or the Liggett's

2    property.  Nor have plaintiffs alleged facts to support a finding that either Curry or the

3    Liggetts are entitled to injunctive relief, given plaintiffs' allegation that Curry and the

4    Liggetts sold their respective properties prior to bringing the instant action.  (See SAC

5    ¶¶ 118, 198.)

6         Accordingly, Count Five is subject to dismissal.

7    **F.  Count Six: "Violations of the California Unfair Competition Law"**

8         In Count Six, plaintiffs allege the manner in which Wells Fargo considered their

9    respective loan modification requests violated § 17200 of the California Business and

10   Professions Code, which section prohibits "unfair competition," namely, "unlawful, unfair

11   or fraudulent" business acts or practices.  See Cal. Bus. & Prof. Code § 17200.  Plaintiffs

12   allege claims under all three "prongs."  (See SAC at 73 at 8, 74 at 16, 76 at 7.)  Before

13   addressing plaintiffs' three claims, however, the Court first addresses whether the claims

14   can be brought on behalf of all plaintiffs or only on behalf of the California plaintiffs, i.e.,

15   Curry and the Liggetts.

16        "[S]tate statutory remedies," including those set forth in § 17200, "may be invoked

17   by out-of-state parties when they are harmed by wrongful conduct occurring in

18   California."  See Norwest Mortgage, Inc. v. Superior Court, 72 Cal. App. 4th 214, 224-25

19   (1999).  Here, plaintiffs do not allege Wells Fargo engaged in any conduct in California

20   with respect to any of the non-California plaintiffs.  Rather, plaintiffs rely on allegations

21   they make regarding Wells Fargo & Company ("WF & Co."), which, plaintiffs allege, is the

22   parent of defendant Wells Fargo and engages in "substantial sales and marketing

23   activities in California."  (See SAC ¶ 326.)

24        Plaintiffs do not allege, however, that WF & Co.'s "sales and marketing activities in

25   California" had any effect on any plaintiff.  Although plaintiffs do allege Wells Fargo's

26   conduct on which their claims are based was "conceived, designed, facilitated, instigated,

27   overseen, managed, and coordinated by WF & Co.'s leadership in California" (see SAC

28   ¶ 327), such conclusory allegations are insufficient to plead a viable claim.  See Iqbal,

556 U.S. at 678.  Further, although plaintiffs rely on statements made by WF & Co. in two "quarterly reports" it issued in 2018, namely, statements that "'[a]n internal review of the Company's use of a mortgage loan modification underwriting tool identified an automated calculation error that caused it to wrongfully deny loan modifications'" (see SAC ¶ 71 (quoting August report); see also SAC ¶ 85 (citing November report)), plaintiffs acknowledge those comments pertain to the activities of "[d]efendant" herein, i.e., Wells Fargo (see, e.g., ¶¶ SAC 70, 72, 80, 86, 88).  Lastly, to the extent plaintiffs rely on allegations that WF & Co. was warned, fined, and/or otherwise subject to adverse action by a federal agency, based on the conduct of Wells Fargo (see SAC ¶ 327), plaintiffs fail to allege such adverse action was taken based on any conduct on the part of WF & Co., let alone any conduct on the part of WF & Co. in California.

Under such circumstances, the Court finds Count Six may be brought on behalf of Curry and the Liggetts only and, consequently, next turns to the question of whether plaintiffs have sufficiently pleaded a § 17200 claim on behalf of those three plaintiffs.

### 1.  "'Deceptive' Prong"

Plaintiffs allege Wells Fargo was "obligated to timely disclose the extent of the 'error' committed as to the modification and/or mortgage loan accounts of [p]laintiffs" but that it "revealed only half-truths and hid the true nature and basis for the error."  (See SAC ¶ 331-32.)

Where, as here, a § 17200 claim is based on assertedly fraudulent conduct, whether a "false representation" or a theory of "nondisclosure," the plaintiff must plead the claim in conformity with Rule 9(b).  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-27 (9th Cir. 2009).  Plaintiffs, however, fail to identify the statements or omissions on which they rely with the particularity required by Rule 9(b).  Additionally, plaintiffs fail to allege facts, let alone the requisite "evidentiary facts," to support a finding that any such statement or omission was "untrue or misleading *when made*."  See Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995) (emphasis in original).  Further, plaintiffs fail to plead facts to support a finding that Curry or the Liggetts relied to their detriment on any

1    such statement or omission.  See Kwikset v. Superior Court, 51 Cal. 4th 310, 326-27

2    (2011) (holding plaintiff cannot bring claim § 17200 based on "fraud theory," where

3    plaintiff does not allege "actual reliance on the allegedly deceptive or misleading

4    statements") (internal quotation and citation omitted); Patera v. Citibank, N.A., 79 F.

5    Supp. 3d 1074, 1085 (N.D. Cal. 2015) (dismissing fraud claim against loan servicer

6    where plaintiff failed to plead facts to support finding she relied on loan servicer's

7    allegedly false statements to her detriment).

8        Accordingly, to the extent Count Six is based on the deceptive prong, Count Six is

9    subject to dismissal.

10        **2.  "'Unfair' Prong"**

11        Plaintiffs allege Wells Fargo's conduct with respect to their respective loan

12    modification requests was "unfair."  (See SAC ¶ 338.)  In their opposition, plaintiffs clarify

13    that the basis for such claim is that Wells Fargo's practices "undermined the policies

14    underlying HAMP and HBOR" (see Pls.' Opp. at 17:27), and, additionally, were

15    "unscrupulous" (see id. at 18:23).  As set forth below, however, insufficient facts have

16    been pleaded to support those theories.

17        To the extent plaintiffs contend Wells Fargo undermined policies underlying

18    HAMP, plaintiffs must establish such policies are "tethered to specific constitutional,

19    statutory or regulatory provisions," see Gregory v. Albertson's, Inc., 104 Cal. App. 4th

20    845, 854 (2002) (internal quotation and citation omitted), and no such provisions have

21    been identified in the SAC.

22        To the extent plaintiffs contend Wells Fargo undermined policies underlying

23    HBOR, which policies the Court understands to be the policies implicit in the statute on

24    which Count Five is based, namely, § 2924.17(b) of the California Civil Code, Curry and

25    the Liggetts, for the reasons stated above with respect to Count Five, lack standing to

26    seek monetary relief under that statute, the California Legislature having determined

27    monetary relief for a violation of § 2924.17 is limited to persons who, unlike them, lost

28    their properties due to a foreclosure.  Moreover, the forms of relief available to "private

United States District Court
Northern District of California

1    individuals" bringing claims under § 17200 are "limited to injunctive relief and restitution,"

2    see California v. IntelliGender, LLC, 771 F.3d 1169, 1174 (9th Cir. 2014), and, as

3    discussed above with respect to Count Five, Curry and the Liggetts cannot seek

4    injunctive relief under § 2924.17(b) because they no longer own the subject properties.

5         To the extent plaintiffs contend Wells Fargo's conduct was unscrupulous, plaintiffs

6    have failed, for the reasons set forth above with respect to Count Two, to plead facts to

7    support a finding that Wells Fargo knew of the alleged "errors" at the time it considered

8    Curry's and the Liggetts' respective loan modification requests.

9         Accordingly, to the extent Count Six is based on the unfair prong, Count Six is

10   subject to dismissal.

11        **3. "'Unlawful' Prong"**

12        Plaintiffs allege Wells Fargo's consideration of Curry's and the Liggetts' loan

13   modification requests was, under several theories, unlawful, namely, Wells Fargo's

14   having allegedly engaged in "breach of contract, [IIED], negligence, [ ] violations of

15   HAMP," and violations of HBOR.  (See SAC ¶ 346.)  As set forth below, however,

16   insufficient facts have been alleged to support any of those theories.

17        First, plaintiffs' breach of contract, IIED, and negligence claims fail for the reasons

18   stated above, and, consequently, cannot support an "unlawful" prong claim.  See

19   Berryman v. Merit Property Management, Inc., 152 Cal. App. 4th 1544, 1554 (2007)

20   (holding "unlawful prong" claim cannot be based on violations of law, where plaintiff fails

21   to allege "facts to support [plaintiff's] allegations that [defendant] has violated [those

22   laws]").  Moreover, an "'unlawful' prong" claim cannot be based on a "common law

23   violation," such as breach of contract.  See Shroyer v. New Cingular Wireless Services,

24   Inc., 622 F.3d 1035, 1041, 1043-44 (9th Cir. 2010) (holding, although plaintiff sufficiently

25   alleged breach of contract, he failed to state § 17200 claim based on unlawful practices

26   as he did "not go beyond alleging a violation of common law").

27        Next, as to HAMP, plaintiffs fail to identify a statute or regulation, or, for that

28   matter, any enactment with the force of law, that Wells Fargo violated when it considered

16

1  Curry's and Liggetts' respective loan modification requests.

2  Nor can plaintiffs rely on an alleged violation of HBOR, i.e., § 2924.17(b) of the

3  California Civil Code, as Curry and the Liggetts lack statutory standing to seek monetary

4  relief thereunder and lack any basis upon which to seek injunctive relief thereunder.  See

5  Reynolds v. McLaren Automotive, Inc., 2024 WL 2000644, at *10 (S.D. Cal. May 6, 2024)

6  (dismissing cause of action brought under "'unlawful' prong" of § 17200 where plaintiff

7  based claim on violation of Song-Beverly Act but lacked statutory standing to bring claim

8  thereunder)

9  Accordingly, to the extent Count Six is based on the unlawful prong, Count Six is

10  subject to dismissal.

11  **G.  Count Seven: "Violations of the Illinois Consumer Fraud and Deceptive**
12  **Business Practices Act"**

13  In Count Seven, plaintiffs allege, on behalf of Illinois residents Nelson and the

14  Petersons, a claim under the Illinois Consumer Fraud and Deceptive Business Practices

15  Act ("IFCA").

16  "The ICFA protects consumers against unfair or deceptive acts or practices,

17  including fraud, false promise, and the misrepresentation or the concealment,

18  suppression or omission of any material fact."  Wigod, 673 F.3d at 574 (internal quotation

19  and citation omitted).  An ICFA claim based on deceptive acts or practices "requires (1) a

20  deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely

21  on the deception, (3) the occurrence of the deception in a course of conduct involving

22  trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the

23  deception."  See De Bouse v. Bayer AG, 235 Ill. 2d 544, 550 (2009).

24  Here, for the reasons set forth above with respect to Count Two, plaintiffs fail to

25  allege facts to support a finding that Wells Fargo was aware, at the time it considered

26  Nelson's and the Peterson's respective loan modification requests, of the error on which

27  plaintiffs base their claims.  Even though, as plaintiffs point out, an intent to deceive is not

28  required under the ICFA, see Wigod, 673 F.3d at 574-75, plaintiffs, for the reasons set

forth above with respect to Count Six, fail to identify the "deceptive information" they assert Wells Fargo gave to them (see SAC ¶ 356), i.e., a statement or omission on which Wells Fargo intended plaintiffs to rely and on which they, in fact, relied.  See De Bouse, 235 Ill. 2d at 554 (holding, "to maintain an action under the [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant"). Further, to the extent plaintiffs, in their opposition, refer to Wells Fargo's having "repeatedly violated the HAMP rules and guidelines" (see Pls.' Opp. at 21:10), plaintiffs fail to identify the nature of the alleged HAMP violations, let alone allege facts to support a finding that any such violation was "unfair or deceptive."  See Wigod, 673 F.3d at 574 (internal quotation and citation omitted).

Accordingly, Count Seven is subject to dismissal.

**H. Count Eight:  "Violations of the Pennsylvania Uniform Trade Practices Act"**

In Count Eight, plaintiffs allege, on behalf of Pennsylvania resident Risconsin, a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

Under the UTPCPL, a person who "purchases or leases goods or services primarily for personal, family or household purposes" and "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of [the] act, may bring a private action."  See 73 Pa. Stat. and Cons. Stat. § 201-9.2.  Section 3, in turn, provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 21 of this act and regulations promulgated under section 3.12 of this act are hereby declared unlawful."  See 73 Pa. Stat. and Cons. Stat. § 201-3(a). Although plaintiffs do not identify the subclause in clause (4) of section 21 or identify any regulation upon which they rely, plaintiffs assert in their opposition that the basis of their claim is Wells Fargo's alleged "failure to disclose material facts about the errors in its loan modification software—which it was aware of and had agreed to correct."  (See Pls.' Opp.

18

United States District Court
Northern District of California

at 21:24-25.)  Plaintiffs' claim does not fall within any of the twenty specified "unfair methods of competition" and "unfair or deceptive acts of practices" identified in clause (4) of section 21,[14] and, consequently, is cognizable only if it falls within the scope of a catchall provision therein, namely, the prohibition against "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." See 73 Pa. Stat. and Cons. Stat. § 201-2(4)(xxi).

Here, for the reasons set forth above with respect to Count Two, plaintiffs fail to allege facts to support a finding that Wells Fargo, at the time it considered Risconsin's loan modification request, was aware of the error on which plaintiffs base their claim; i.e., plaintiffs have not identified conduct that is "fraudulent or deceptive." See id.; Christopher v. First Mutual Corp., 2006 WL 166566, at *3 (E.D. Pa. January 20, 2006) (holding "'fraudulent' part of the catchall provision" requires showing defendant made false statement "with knowledge of the falsity or reckless disregard for the truth," and "'deceptive' part of the catchall provision" requires "intentional[ly] misleading by falsehood spoken or acted").

Accordingly, Count Eight is subject to dismissal.

## I.  Count Nine: "Violations of the North Carolina Unfair and Deceptive Trade Practices Act"

In Count Nine, plaintiffs allege, on behalf of North Carolina resident Kea, a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA").

Under the NCUDTPA, "unfair or deceptive acts or practices in or affecting commerce" are "unlawful." See N.C. Gen. Stat. § 75-1.1(a).  "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or

---

[14] The twenty specified methods or acts include, for example, "[p]assing off goods or services as those of another," see 73 Pa. Stat. and Cons. Stat. § 201-2(4)(i), and "[k]nowingly misrepresenting that services, replacements or repairs are needed if they are not needed," see 73 Pa. Stat. and Cons. Stat. § 201-2(4)(x)(v).

1    affecting commerce, and (3) the act proximately caused injury to the plaintiff." <u>Dalton v.</u>

2    <u>Camp</u>, 353 N.C. 647, 656 (2001). "A practice is unfair if it is unethical or unscrupulous,

3    and it is deceptive if it has a tendency to deceive." <u>Id.</u>

4         Here, plaintiffs' claim under the NCUDTPA is based on the same theory as their

5    claim under the UTPCPL, namely, Wells Fargo's alleged "failure to disclose material facts

6    about the errors in its loan modification software—which it was aware of and had agreed

7    to correct." (<u>See</u> Pls.' Opp. at 21:24-25.) For the reasons set forth above with respect to

8    Count Two, however, plaintiffs fail to allege facts to support a finding that Wells Fargo

9    was aware, at the time it considered Kea's loan modification request, of the error on

10   which plaintiffs base their claim.

11        Accordingly, Count Nine is subject to dismissal.

12   **J. Count Ten: "Violations of the District of Columbia Consumer Protection
     Procedures Act"**

13

14        In Count Ten, plaintiffs allege, on behalf of District of Columbia resident Forney, a

15   claim under the District of Columbia Consumer Protection Procedures Act ("CPPA"),

16   under which Act it is unlawful "for any person to engage in an unfair or deceptive trade

17   practice." <u>See</u> D.C. Code § 28-3904.

18        In their opposition, plaintiffs clarify that their basis of their claim is that Wells

19   Fargo's "correspondence failed to disclose a material fact," namely, that its decision was

20   "based on calculations made by software [Wells Fargo] knew to be faulty." (<u>See</u> Pls.'

21   Opp. at 26:5.5-6.5.)[15] Although plaintiffs argue the SAC "adequately alleges [Wells

22   Fargo] knew of these calculation errors prior to denying [Forney's] modification requests"

23   (<u>see</u> Pls.' Opp. at 26:14.5-15.5), the Court, for the reasons set forth above with respect to

24   Count Two, finds plaintiffs have failed to allege facts to support a finding that Wells

25

26                   [15] Plaintiffs allege that, in response to a "loan mitigation application" Forney

27   submitted to Wells Fargo in August 2017," Forney "received a letter . . . which notified
     him that he was not eligible for any assistance programs except a short sale." (<u>See</u> SAC

28   ¶ 128.)

1 Fargo, at the time it considered Forney's loan modification request, knew of the error on

2 which plaintiffs base their claims.[16]

3          Accordingly, Count Ten is subject to dismissal.

**K.  Count Eleven:  "Violations of the New York General Business Law § 349"**

5          In Count Eleven, plaintiffs allege, on behalf of New York resident Ferguson, a

6 claim under New York General Business Law § 349, which Law prohibits "[d]eceptive

7 acts or practices in the conduct of any business, trade or commerce or in the furnishing of

8 any service in [New York]."  See N.Y. Gen. Bus. Law § 349(a).

9          Plaintiffs allege Wells Fargo "omitted, concealed, and misrepresented material

10 information as to [p]laintiff Ferguson's . . . applications."  (See SAC ¶ 414.)  In their

11 opposition, plaintiffs clarify that the claim is based on the theory that Wells Fargo "knew

12 of [its] calculation errors prior to . . . approving [Ferguson's] modification[ ] based on

13 inaccurate calculations, yet [Wells Fargo] knowingly did nothing to fix the errors."  (See

14 Pls.' Opp. at 28:4.5-6.5.)  For the reasons set forth above with respect to Count Two,

15 however, the Court finds plaintiffs have failed to allege facts to support a finding that

16 Wells Fargo, at the time it considered Forney's loan modification request, knew of the

17 error on which plaintiffs base their claims.

18          Accordingly, Count Eleven is subject to dismissal.

19 //

20 //

21

22          [16] In light of this finding, the Court does not determine herein whether, as Wells
23 Fargo contends, plaintiffs have failed to plead facts to support a finding that Wells Fargo
   is a "merchant" within the meaning of the CPPA.  See Snowder v. District of Columbia,
24 949 A.2d 590, 599 (D.C. 2008) (explaining, for purposes of CPPA, "an unlawful trade
   practice can only be committed by a 'merchant'," i.e., "a person who does or would sell,
25 lease . . ., or transfer, either directly or indirectly, consumer goods or services, or a
   person who does or would supply the goods or services which are or would be the
26 subject matter of a trade practice") (internal quotation and citation omitted).  The Court
   notes, however, that neither party has cited a decision by the District of Columbia's
27 highest court that discusses the issue of when an entity that has "arranged a loan
   modification, attempted to do so, or was asked to do so" can be a "merchant" for
28 purposes of the CPPA.  See Archie v. U.S. Bank, N.A., 255 A.3d 1005, 1020 (D.C. 2021).

**L.  Count Twelve:  "Unjust Enrichment"**

In Count Twelve, plaintiffs assert a claim titled "Unjust Enrichment," which claim is based on their allegation that plaintiffs "conferred a benefit on [Wells Fargo] in the form of increased fees and interest to which [Wells Fargo] was not entitled but for its calculation errors."  (See SAC ¶ 423.)

Defendants argue that, under the laws of the various States, an unjust enrichment claim cannot be brought where a "valid and enforceable contract exists."  (See Def.'s Mot. at 24:22-23.)  Plaintiffs state no opposition to such principle, but argue Count Twelve should not be dismissed because they have alleged it is pleaded "in the alternative to the extent there is no contract between [Wells Fargo] and [p]laintiffs."  (See SAC ¶ 422.)

As the Ninth Circuit has explained, in a case applying California law, although "there is not a standalone cause of action for 'unjust enrichment,'" a district court "may construe the cause of action as a quasi-contract claim seeking restitution."  See Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 762 (9th Cir. 2015) (citing, as example, California Court of Appeal's holding in Rutherford Holdings, LLC v. Plaza Del Rey); see also Rutherford Holdings, 223 Cal. App. 4th 221, 231 (2014) (holding unjust enrichment claim appropriately pleaded where "the parties ha[ve] an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason") (internal quotation and citation omitted).

Here, a question may be raised as to whether a contract exists between Wells Fargo and at least some of the plaintiffs.[17]  Nevertheless, assuming, arguendo, an unjust enrichment claim, i.e., a quasi-contract claim seeking restitution, can be based on a plaintiff's having paid "increased fees and interest" to a defendant (see SAC ¶ 423),

---

[17] In some of the Security Instruments, Wells Fargo is identified as the "lender," i.e., in privity with some of the plaintiffs (see, e.g., Def.'s Req. for Judicial Notice Exs. C, D), while, in other Security Instruments, a different lender is identified (see, e.g., id. Exs. E, F).  With respect to the latter group, an argument could be made that Wells Fargo is not a party to those Security Instruments.  See Conder v. Home Savings, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) (dismissing breach of contract claim against loan servicer; finding loan servicer was not in "contractual privity" with borrower).

United States District Court
Northern District of California

plaintiffs here fail to allege facts to support a finding that any plaintiff paid "increased fees and interest" to Wells Fargo, i.e., fees or interest plaintiffs were not otherwise required to pay under the terms of their respective Security Instruments.

Accordingly, Count Twelve is subject to dismissal.

### CONCLUSION

For the reasons stated above, Wells Fargo's motion to dismiss is hereby GRANTED.

Plaintiffs are, however, hereby afforded leave to amend to cure any of the above-noted deficiencies; plaintiffs' Third Amended Consolidated Class Action Complaint shall be filed no later than December 19, 2025.

Lastly, as no viable claims are pending, the stay of discovery, imposed by order filed October 20, 2025, remains in effect until such time as it is lifted by the Court.

**IT IS SO ORDERED.**

Dated: November 18, 2025

MAXINE M. CHESNEY
United States District Judge