Amanda L. Groves (SBN: 187216)
agroves@winston.com
Shawn R. Obi (SBN: 288088)
sobi@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Angela A. Smedley (admitted pro hac vice)
asmedley@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Defendant,
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Wells Fargo Mortgage Modification Litigation* | **Case No. 3:24-cv-01358-MMC**<br><br>WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT<br><br>Date:     April 17, 2026<br>Time:<br>Place:    San Francisco Courthouse<br>          Courtroom 7 – 19th Floor<br>          450 Golden Gate Avenue,<br>          San Francisco, CA 94102<br>Judge:   Hon. Maxine M. Chesney<br><br>Compl. Filed: March 7, 2024<br>Consolidated Class Action Compl. Filed: July 8, 2024<br>Second Amended Consolidated Class Action Compl. Filed: January 9, 2025<br>Third Amended Consolidated Class Action Compl. Filed: January 20, 2026 |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2    PLEASE TAKE NOTICE THAT on April 17, 2026 at 9:00 a.m., or as soon thereafter as the

3  matter may be heard, in Courtroom 7 of the above-entitled court, located at 450 Golden Gate Avenue,

4  San Francisco, CA 94102, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") will and hereby does

5  move the Court to dismiss Plaintiffs' Third Amended Consolidated Class Action Complaint pursuant to

6  Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can

7  be granted.

8    This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum

9  of Points and Authorities and Request for Judicial Notice, and the record in this action, and any other

10  written or oral submission that may be presented at or before the hearing on this motion.

11

12   Dated: February 20, 2026            WINSTON & STRAWN LLP

13

14                                By: _/s/ Amanda L. Groves_____
                                     Amanda L. Groves (SBN: 187216)
15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-01358-MMC

1

## TABLE OF CONTENTS

2

Page

I.   INTRODUCTION ................................................................................................... 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................... 2

   A.   Plaintiffs' Original, First Amended, and Second Amended Complaints ....................... 2

   B.   The Court's Dismissal Order Leading to Plaintiffs' Fourth Pleading Attempt ............... 3

      1.   Breach of Contract and Implied Covenant of Good Faith and Fair Dealing ........ 3

      2.   UCL ................................................................................................................ 4

      3.   Other State Consumer Fraud Claims ................................................................ 5

      4.   Unjust Enrichment .......................................................................................... 5

   C.   Plaintiffs' Fourth Pleading Attempt: the TAC ................................................................ 5

III.   LEGAL STANDARD ............................................................................................ 6

IV.   ARGUMENT ........................................................................................................ 7

   A.   Plaintiffs' Breach of Contract Claim Fails as a Matter of Law (Count One). ................. 7

      1.   Plaintiffs Point to No Contractual Term to Support Their Theory of Express Breach ...................................................................................................... 7

      2.   Plaintiffs' Argument that Borrowers Are Third-Party Beneficiaries of Servicing Guidelines Fails ................................................................................ 9

      3.   The Implied Covenant of Good Faith and Fair Dealing Cannot Save Plaintiffs' Contract Claim .............................................................................. 10

   B.   The Court Should Dismiss Plaintiffs' UCL Claims (Count Two). ............................... 12

      1.   The TAC does not overcome the UCL's presumption against extraterritoriality 12

      2.   Plaintiffs' UCL Claims Remain Insufficiently Pled ......................................... 14

         a.   Plaintiffs State No Claim Under the "Unfair" Prong. ............................. 14

         b.   Plaintiffs State No Claim Under the "Fraudulent" Prong. ..................... 15

   C.   Plaintiffs' Amendments Do Not Save Their Illinois Consumer Fraud Act Claims (Count Three). ................................................................................................ 17

   D.   The Court Should Dismiss the Pennsylvania and North Carolina Unfair Trade Practices Claims (Counts Four and Five). ..................................................................... 20

   E.   The TAC Does Not State a Claim Under the D.C. Consumer Protection Procedures Act (Count Six). ............................................................................................. 21

i

F.     The TAC Does Not State a Claim Under the New York General Business Law § 349 (Count Seven). ........................................................................................... 22

G.     The Unjust Enrichment Claim Fails as a Matter of Law (Count Eight). ........................ 24

V.     CONCLUSION ............................................................................................................. 25

Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Third Amended Consolidated Class Action Complaint
Case No. 3:24-cv-01358-MMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................................7, 24

*Astiana v. Hain Celestial Grp., Inc.,*
  783 F.3d 753 (9th Cir. 2015) ..........................................................................................5

*Aston v. Johnson & Johnson,*
  248 F. Supp. 3d 43 (D.D.C. 2017).................................................................................16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).............................................................................................6, 7, 15

*Busby v. Capital One, N.A.,*
  772 F. Supp. 2d 268 (D.D.C. 2011)..........................................................................21, 22

*Caldera v. Bank of N.Y. Mellon,*
  2017 U.S. Dist. LEXIS 34756 (W.D. Tex. Mar. 10, 2017) .................................................10

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
  761 F.3d 732 (7th Cir. 2014) ....................................................................................18, 19

*Caraccioli v. Facebook, Inc.,*
  167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) ...................8

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
  222 Cal. App. 3d 1371 (1990) .......................................................................................12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) .................................................................................................14

*Cervantes v. Countrywide Home Loans, Inc.,*
  656 F.3d 1034 (9th Cir. 2011) .........................................................................................7

*Challenge Printing Co. of the Carolinas, Inc. v. Tesla, Inc.,*
  2024 U.S. App. LEXIS 13115 (4th Cir. May 31, 2024)......................................................16

*Christopher v. First Mut. Corp.,*
  2006 U.S. Dist. LEXIS 2255 (E.D. Pa. Jan. 20, 2006) ......................................................20

*Deerman v. Fed. Home Loan Mortg. Corp.,*
  955 F. Supp. 1393 (N.D. Ala. 1997), *aff'd*, 140 F.3d 1043 (11th Cir. 1998) ........................10

*Dekel v. Unum Provident Corp.*,
    2007 WL 812986 (E.D.N.Y. Mar. 14, 2007)...................................................23

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ..........................................................15

*Duchimaza v. Niagara Bottling, LLC*,
    619 F. Supp. 3d 395 (S.D.N.Y. 2022)...........................................................22

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) .....................................................................11

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ........................................................................15

*Edmond v. Am. Educ. Servs.*,
    2010 WL 4269129 (D.D.C. Oct. 28, 2010) ...................................................22

*Edwards v. JPMorgan Chase Bank, N.A.*,
    2020 WL 1814423 (M.D.N.C. Apr. 9, 2020) ................................................21

*Ehret v. Uber Technologies, Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..........................................................12

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ..................................................................15, 16

*Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*,
    792 F.2d 1432 (9th Cir. 1986) ........................................................................7

*Geske v. Fed. Nat'l Mortg. Ass'n*,
    2015 WL 1397087 (N.D. Ill. Mar. 25, 2015)................................................19

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ........................................................................7

*Gill v. NFL*,
    2021 WL 5087900 (S.D.N.Y. Nov. 2, 2021)................................................25

*Gociman v. Loyola Univ. of Chi.*,
    41 F.4th 873 (7th Cir. 2022) .........................................................................25

*Guz v. Bechtel Nat. Inc.*,
    24 Cal. 4th 317 (2000) ............................................................................4, 11

*Hahn v. Select Portfolio Servicing, Inc.*,
    424 F. Supp. 3d 614 (N.D. Cal. 2020) ..........................................................23

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................15, 16

DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-01358-MMC

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ....................................................................25

*Klamath Water Users Protective Ass'n v. Patterson*,
    204 F.3d 1206 (9th Cir. 2000) ..................................................................10

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
    44 Cal. App. 4th 194 (1996) .....................................................................25

*Lanier v. Specialized Loan Servicing, LLC*,
    2024 U.S. Dist. LEXIS 37556 (N.D. Cal. Mar. 4, 2024).........................10

*Laskowski v. Brown Shoe Co.*,
    2015 U.S. Dist. LEXIS 34865 (M.D. Pa. Mar. 20, 2015)........................16

*Leszanczuk v. Carrington Mortg. Servs., LLC*,
    21 F.4th 933 (7th Cir. 2021) .....................................................................19

*Logan v. Meta Platforms, Inc.*,
    636 F. Supp. 3d 1052 (N.D. Cal. 2022) ...................................................25

*Lyles v. Sangadeo-Patel*,
    225 Cal. App. 4th 759 (2014) ...................................................................24

*McKenzie v. Wells Fargo Bank, N.A.*,
    931 F. Supp. 2d 1028 (2013) ...........................................................4, 9, 10

*Navajo Nation v. Dep't of the Interior*,
    876 F.3d 1144 (9th Cir. 2017) ..................................................................14

*Odle v. GameStop Corp.*,
    774 F. Supp. 3d 982 (S.D. Ill. 2025).........................................................16

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ...............................................................18, 19

*Plastino v. Wells Fargo Bank*,
    873 F. Supp. 2d 1179 (N.D. Cal. 2012) ....................................................11

*Rank v. Nimmo*,
    677 F.2d 692 (9th Cir. 1982) .......................................................................9

*Regents of Univ. of California v. LTI Flexible Prods., Inc.*,
    2021 WL 4133869 (N.D. Cal. Sep. 10, 2021) ..........................................24

*Roberts v. Cameron-Brown Co.*,
    556 F.2d 356 (5th Cir. 1977) ....................................................................10

*Robinson v. Toyota Motor Credit*,
    775 N.E.2d 951 (Ill. 2002)........................................................................19

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ...................................................................14

*Saroya v. Univ. of the Pac.*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ...................................................25

*Schertzer v. Bank of Am., NA*,
    109 F.4th 1200 (9th Cir. 2024) .............................................................12

*Shapiro v. Berkshire Life Ins. Co.*,
    212 F.3d 121 (2d Cir. 2000).................................................................23

*Silverman v. Wells Fargo & Co.*,
    2018 WL 6046209 (N.D. Cal. Nov. 19, 2018) .....................................13

*Stanford West v. Wells Fargo Bank, N.A.*,
    2020 WL 6706351 (E.D. Ky. 2020) .....................................................23

*Streamline Cap., L.L.C. v. Hartford Cas. Ins. Co.*,
    2003 WL 22004888 (S.D.N.Y. Aug. 25, 2003)....................................23

*Thomas v. Wells Fargo Bank, N.A.*,
    2021 WL 1244673 (N.D. Ga. 2021) .....................................................23

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ............................................12, 13

*Tr. Agreement of Sushner v. C.A. Harrison Cos., LLC*,
    2023 WL 6313507 (D.D.C. Sep. 28, 2023) .........................................25

*Twaite v. Allstate Ins. Co.*,
    216 Cal. App. 3d 239 (1989) .................................................................9

*Tyler v. Bank of N.Y. Mellon*,
    2020 WL 2735367 (N.D. Ill. May 26, 2020)........................................19

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ................................................................25

*Vega v. Ocwen Fin. Corp.*,
    2015 U.S. Dist. LEXIS 69212 (C.D. Cal. May 28, 2015) .....................10

*Villarroel v. Recology Inc.*,
    775 F. Supp. 3d 1050 (N.D. Cal. 2025) ...........................................16, 17

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ...........................................12, 13

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ..............................................................24

*Whitefield v. Nationstar Mortg.,*
   LLC, 434 F. Supp. 3d 238 (E.D. Pa. 2020)..................................................25

*Wiener v. Unumprovident Corp.,*
   202 F. Supp. 2d 116 (S.D.N.Y. 2002).......................................................23

*Williams v. Apple, Inc.,*
   449 F. Supp. 3d 892 (N.D. Cal. 2020) .....................................................17

*Willis v. Tritle,*
   2019 U.S. Dist. LEXIS 116272 (W.D.N.C. July 12, 2019).........................25

*Zendejas v. GMAC Wholesale Mortg. Corp.,*
   2010 WL 2629899 (E.D. Cal. June 29, 2010) ...........................................10

*Zoher v. Chase Home Fin.,*
   2010 WL 4064798 (S.D. Fla. Oct. 15, 2010).............................................10

**Statutes**

D.C. Consumer Protection Procedures Act...................................................21

Illinois Consumer Fraud Act................................................................ *passim*

N.Y. Gen. Bus. Law § 349...................................................................22, 23

North Carolina Unfair and Deceptive Trade Practices Act .........................21

Pennsylvania Unfair Trade Practices and Consumer Protection Law ..........16, 20

**Other Authorities**

Fed. R. Civ. P. 8...................................................................................24

Fed. R. Civ. P. 9...................................................................................16

Fed. R. Civ. P. 9(b) ........................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)....................................................................6, 24

## I.    INTRODUCTION

Having failed to state a claim for all twelve causes of action in their Second Amended Consolidated Class Action Complaint ("SAC"), Plaintiffs present an ostensibly reformulated Third Amended Consolidated Class Action Complaint ("TAC") to the Court.  ECF 127.  Even a generous review of Plaintiffs' amendments, however, reveals that the changes impart more volume than substance to the TAC's factual allegations—failing to cure the reasons the claims were dismissed on Wells Fargo's previous motion.

In its analysis, the Court homed in on a global and fatal defect in the SAC: All of Plaintiffs' claims rested on allegations of fraud or deception based on the theory that, because of its alleged past conduct, Wells Fargo knew at the time it made loan modification decisions that errors had impacted its reviews of Plaintiffs' loan modification requests.  *See* Order, *passim*.  Finding a complete absence of facts supporting this theory, the Court concluded that Plaintiffs had failed to plead a connection between the past conduct generally referenced, Wells Fargo's purported knowledge, and Plaintiffs' asserted claims.  *E.g.,* Order at 9.  Rather than add facts to plead the requisite connection, however, the TAC doubles down on the same general and conclusory assertions of knowledge, adding more of the same in larger quantities and through varied verbiage.

On top of this persistent deficiency, Plaintiffs declined to amend several allegations that the Court has already ruled cannot survive a motion to dismiss, including the assertion of UCL claims on behalf of putative class members who are not California residents and their unavailing theories of Wells Fargo & Co.'s liability.  In addition, attempts by Plaintiffs to add more specifics about certain of the named Plaintiffs have demonstrated that their loan modification histories do not support their claims as pled or their membership in the alleged putative classes.

Together, these perpetuating and material flaws are fatal to the TAC.  The factually deficient refrains about Wells Fargo's knowledge of the alleged errors—to which Plaintiffs dedicate many paragraphs of their amendments—do not carry the merits of their claims into the realm of viability.  Plaintiffs have now had several opportunities to allege and reallege all their claims, and they have done so unsuccessfully.  The TAC should be dismissed with prejudice.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs' Original, First Amended, and Second Amended Complaints

Plaintiffs' claims arise out of mortgage loans serviced by Wells Fargo.  TAC ¶¶ 40–41, 253–398. Experiencing financial difficulties and unable to meet their mortgage obligations, Plaintiffs sought loss mitigation options from Wells Fargo.  *Id.* ¶¶ 113, 125, 134, 144–45, 153–57, 165, 178, 186, 195, 207, 215, 224.  Plaintiffs' circumstances varied: some say they were denied a loan modification (Risconsin), *id.* ¶ 157; some say they were granted permanent loan modifications (Vergara, Peterson, Liggett, Clingerman, Keaveny, Ferguson), *id.*  ¶¶ 179, 187, 196–99, 207, 216, 225; and some say they submitted multiple modification requests with varying outcomes—approved, denied, or unacknowledged (Curry, Forney, Nelson, Beloff, Kea), *id.*  ¶¶ 114–16, 126–28, 135–36, 144–45, 166–72.  Plaintiffs allege that automated calculation errors caused wrongful denials of permanent loss mitigation options or approvals of temporary or permanent loss mitigation options based on erroneous calculations.  *Id.* ¶¶ 122, 132, 142, 151, 163, 176, 184, 193, 204, 212, 222, 231.  Some Plaintiffs suggest this error resulted in the loss of their properties, either by standard sale (Curry, Forney, Kea, Liggett, Keaveny), deed-in-lieu of foreclosure (Beloff), or foreclosure (Nelson, Risconsin).  *Id.* ¶¶ 117, 128, 138, 147, 159, 172, 200, 218.  Others (Vergara, Peterson, Clingerman, and Ferguson) remain in their homes and are making their modified mortgage payments.  *Id.* ¶¶ 180, 188, 208, 226.

In 2023, Wells Fargo voluntarily began a remediation program to assist borrowers potentially impacted by the error.  *Id.* ¶ 104.  Plaintiffs acknowledge they received payments via that process.  *Id.* ¶¶ 118, 129, 139, 148, 160, 173, 181, 190, 201, 209, 219, 227.  A few months after receiving and accepting payment, Plaintiffs Curry, Nelson, and Forney filed a putative class action, which was consolidated with an almost identical class action filed by Plaintiff Beloff on April 23, 2024.  Plaintiffs then filed an amended Consolidated Class Action Complaint ("CAC") on July 8, 2024.  On December 6, 2024, the Court granted Wells Fargo's request to consolidate another putative class action and ordered Plaintiffs to file a second amended complaint.  The resulting SAC was filed on January 9, 2025, and added one named plaintiff. With the SAC, Plaintiffs sought to represent, *inter alia*, a class of individuals who were either denied a loss mitigation option or received such an option that was impacted by calculation errors.

2

DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-01358-MMC

On November 18, 2025, this Court granted Wells Fargo's Motion to Dismiss the SAC, dismissing the SAC in its entirety but granting Plaintiffs leave to amend to cure the deficiencies identified by the Court. ECF No. 124 ("Order"). Plaintiffs filed the TAC on January 20, 2026, and seek to represent a nationwide class defined as:

> All persons, as identified by Defendant constituting mortgagors and for which Defendant was the mortgagee or servicer, in the United States who since January 1, 2008 (i) qualified for a loss mitigation option, (ii) received a temporary or permanent loss mitigation option from Defendant based on inaccurate calculations due to a calculation error in Defendant's loss mitigation decision process, and (iii) were sent an apology letter from Defendant stating that an error may have occurred related to their loss mitigation option.

*Id*. ¶ 232. Additionally, Plaintiffs seek to represent an unjust enrichment subclass; Plaintiffs Curry and Liggett seek to represent a subclass of California borrowers; and Plaintiffs Nelson, Peterson, Risconsin, Beloff, Clingerman, Kea, Keaveny, Forney, Vergara, and Ferguson seek to represent subclasses of borrowers from their respective states (Illinois, Pennsylvania, North Carolina, Washington, D.C., and New York) to bring claims under various state unfair trade practices and consumer protection statutes. *Id*. ¶¶ 233–39.

### B. The Court's Dismissal Order Leading to Plaintiffs' Fourth Pleading Attempt

With respect to those claims re-alleged in the TAC,[1] the bases for the Court's dismissal were as follows:

#### 1. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

Plaintiffs asserted several different breach of contract theories, each of which the Court found lacking. Plaintiffs failed to link Wells Fargo's alleged wrongdoing—"errors allegedly committed with respect to consideration of loan modification requests"—to the language of the Security Instruments, which did not require Wells Fargo to provide loss mitigation options. Order at 5, 7. Further, Plaintiffs failed to allege facts supporting their theory that Wells Fargo's assessment of a fee was in violation of the Security Instruments. *Id*. at 5. The Court also rejected Plaintiffs' attempt to ground their breach of contract theory in the HAMP Rules and Guidelines because Plaintiffs failed to identify "the specific term(s) in any such contract that Wells Fargo is alleged to have breached." *Id*. at 8.

---

[1] The Court also dismissed Plaintiffs' claims for intentional infliction of emotional distress, negligence, and HBOR. Plaintiffs did not reassert these claims in their TAC, so they are not addressed here.

Dismissal of the implied covenant of good faith and fair dealing theory of breach of contract followed, as "plaintiffs fail[ed] to allege they have an express contractual right to have loan modification requests considered in a particular manner." *Id.* at 8. The Court held that "a covenant of good faith and fair dealing 'is implied as a supplement to the express contractual provisions'" and "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349–50 (2000)).

## 2. UCL

The Court dismissed Plaintiffs' UCL claim under each prong of that statute—deceptive, unfair, and unlawful. Recognizing that fraud-based claims under the UCL require particularity under Rule 9(b), the Court found that Plaintiffs failed to plead, with specificity, the statements or omissions by Wells Fargo that Plaintiffs purportedly relied upon, and failed altogether to plead facts supporting that such statements or omissions were untrue or misleading when made. *Id.* at 14–15. The Court likewise dismissed Plaintiffs' UCL unfair and unlawful claims, finding Plaintiffs failed to allege any violation of the two predicate statutes pursuant to which they brought their UCL claims—HAMP and HBOR. *Id.* at 15–16. The Court also concluded that Plaintiffs failed to allege Wells Fargo's conduct was unscrupulous because they did not plead sufficient facts that Wells Fargo knew of the alleged errors at the time it considered the applications. *Id.* at 16.

The Court also rejected Plaintiffs' attempt to assert UCL claims for a nationwide class because Plaintiffs did not allege Wells Fargo engaged in conduct in California with respect to the non-California plaintiffs. The Court held that Plaintiffs' allegations concerning the holding company Wells Fargo & Company ("WF & Co.")—*not* the banking entity Wells Fargo Bank, N.A.—were insufficient to extend the application of the UCL beyond California. *Id.* at 13–14. Specifically, Plaintiffs' allegations that WF & Co. engages in "substantial sales and marketing activities in California" did not justify nationwide application because Plaintiffs did not allege those activities had any effect on any plaintiff. *Id.* at 13. In addition, the allegations that WF & Co., in California, had conceived, designed, and coordinated the conduct on which Plaintiffs' UCL claims were based were conclusory. *Id.* at 13–14. Plaintiffs' reliance on quarterly reporting statements made by WF & Co. did not serve to impugn WF & Co. because the conduct reported pertained to the activities of *Wells Fargo*—not WF & Co. *Id.* at 14. Nor did adverse

4

1  action allegations against WF & Co., because of Wells Fargo's conduct, move the needle because there
2  were no non-conclusory allegations that such actions were related to WF & Co.'s conduct at all, let alone
3  its conduct in California. *Id.*

### 3. Other State Consumer Fraud Claims

5  The Court dismissed the remaining state law consumer fraud claims for the same principal
6  reason: Plaintiffs failed to allege sufficient facts to show that Wells Fargo was aware of the errors on
7  which they base their claims at the time the Bank considered Plaintiffs' loan modification requests. *Id.*
8  at 17, 19–21. Specifically, the Court found that, while Plaintiffs alleged that Wells Fargo knew of three
9  automated calculation errors, "plaintiffs fail[ed] to allege any facts to support a finding that the three
10 errors identified in the [complaint] consist of or include errors that Wells Fargo employed when
11 considering ***plaintiffs'*** respective requests." *Id.* at 9 (emphasis added). In fact, the Court emphasized
12 that the SAC indicated the opposite—Plaintiffs alleged "those three errors were errors addressed in two
13 prior cases brought by other borrowers against Wells Fargo, and which errors plaintiffs allege are not
14 the errors at issue in the instant action." *Id.*; *see also id.* at 3 n.3.

15 Moreover, the Court found Plaintiffs' ICFA claim to be compounded by further deficiency,
16 explaining that Plaintiffs failed to "identify the 'deceptive information' they assert Wells Fargo gave to
17 them." *Id.* at 18.

### 4. Unjust Enrichment

19 Finally, the Court reasoned that there is no standalone cause of action for unjust enrichment. *Id.*
20 at 22 (citing *Astiana v. Hain Celestial Group*, Inc., 783 F.3d 753, 762 (9th Cir. 2015). And while the
21 Court acknowledged a possible question as to whether Wells Fargo was in privity with at least some
22 Plaintiffs, it ultimately dismissed the unjust enrichment claims because Plaintiffs failed "to allege facts
23 to support a finding that any plaintiff paid 'increased fees and interest' to Wells Fargo." *Id.* at 23.

### C. Plaintiffs' Fourth Pleading Attempt: the TAC

25 Despite the numerous deficiencies the Court identified when dismissing the SAC, Plaintiffs filed
26 their Third Amended Class Action Complaint on January 20, 2026. In the TAC, Plaintiffs continue to
27 allege that they were harmed by automated calculation errors in their loan modification decisions. TAC
28 ¶ 4. This time, however, Plaintiffs purposefully limit the alleged harm to those who "were ***approved*** for

1   loan modifications or trial payment plans featuring unfair and inflated terms." *Id.* ¶ 19 (emphasis added).

2   In so doing, Plaintiffs abandon their position that the software errors themselves were different from

3   those in the *Hernandez* and *Ryder* litigation.   Instead, Plaintiffs now allege that "the *source* of the

4   calculation errors" is the same, but Plaintiffs in this action are differently situated because their

5   modifications were approved instead of denied. *Id.* ¶¶ 19–20.  Plaintiffs also acknowledge that Wells

6   Fargo provided them with payments as part of its remediation program to assist borrowers potentially

7   impacted by the error. *Id.* ¶¶ 104, 119, 131, 141, 150, 162, 175, 183, 192, 203, 211, 221, 229.

8          Despite narrowing their putative class and the nature of the alleged harm, Plaintiffs' claims do

9   not address the deficiencies identified by the Court.  Plaintiffs reassert claims for breach of contract,

10  relying on the same provisions in the Security Instruments to support their breach theories as they raised

11  in their SAC. *Compare* SAC ¶ 250 n.10–11 *with* TAC ¶ 256 n.10–11.  Plaintiffs also reassert the various

12  state consumer fraud statutory violations, centering their claim on the same three errors already

13  highlighted in Plaintiffs' SAC. TAC ¶ 19.  Plaintiffs have added that Wells Fargo "provided [them] with

14  loan modification options which affirmatively misstated the total balances owed and the amounts of their

15  monthly payments due to the systemic calculation errors." *Id.* ¶¶ 292, 308, 324, 336, 353, 377.  But they

16  do not allege contemporaneous knowledge by the Bank that the modifications were miscalculated at the

17  time they were offered, nor do they allege detrimental reliance.   Plaintiffs reallege their unjust

18  enrichment claim, despite the Court finding there is no standalone cause of action for unjust enrichment

19  where there are valid contracts between Wells Fargo and Plaintiffs. *Id.* ¶¶ 392–98; *see* Order at 23.

20         Plaintiffs still seek to certify state subclasses for each of the state consumer fraud statutes.  TAC

21  ¶¶ 233–39.  And, once again, Plaintiffs seek to certify a nationwide UCL claim, ignoring the Court's

22  clear holding that conclusory allegations that the conduct at issue was "conceived, designed, and/or

23  approved by WF & Co.'s leadership in California" are insufficient to establish that WF & Co.'s actions

24  in California affected Plaintiffs outside of the state. *Id.* ¶¶ 285, 288; *see* Order at 13.

25  **III.   LEGAL STANDARD**

26         To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim

27  to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is

28  facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable

6

DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01358-MMC

1   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

2   (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"

3   *Twombly*, 550 U.S. at 555.  Courts do not "accept as true allegations that are merely conclusory,

4   unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d

5   1049, 1055 (9th Cir. 2008).

6       A "district court may dismiss without leave where a plaintiff's proposed amendments would fail

7   to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home*

8   *Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).  "The district court's discretion to deny leave to amend

9   is particularly broad where the court has already given the plaintiff an opportunity to amend his

10  complaint." *Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir.

11  1986).

12  **IV.    ARGUMENT**

13      **A.    Plaintiffs' Breach of Contract Claim Fails as a Matter of Law (Count One).**

14      This Court previously dismissed Plaintiffs' breach of contract claim as to each alleged theory of

15  breach.  The TAC abandons one failed theory, i.e., that Wells Fargo was contractually obligated to

16  provide them with loan modifications.  But the other rejected theories remain, including: a) express

17  provisions in the relevant Security Instruments prohibited the Bank from assessing "fees and charges for

18  services not actually performed or amounts actually incurred" (TAC ¶ 259); b) Plaintiffs are intended

19  third party beneficiaries of the servicing guidelines implemented by Fannie Mae, Freddie Mac, the VA

20  Secretary, and HUD (*id.* ¶ 264); and c) Wells Fargo breached the implied covenant of good faith and fair

21  dealing by assessing fees "contrary to the terms of the Security Instruments and/or the servicing

22  guidelines and regulations" (*id.* ¶ 275).  As before, none of Plaintiffs' theories of breach passes muster,

23  so their claim should be dismissed once again without leave to amend.

        **1.    Plaintiffs Point to No Contractual Term to Support Their Theory of Express**
24                **Breach.**

25

26      The Court already dismissed Plaintiffs' express breach of contract claim premised on the theory

27  that Wells Fargo breached the Security Instruments by assessing various fees when approving Plaintiffs'

28  loan modification requests "based upon 'faulty automated calculations.'"  Order at 5 (citing SAC ¶ 251).

The Court observed that the prior Complaint did not identify or include "discussion of the imposition of any fee or charge, but rather . . . alleges errors allegedly committed with respect to consideration of loan modification requests" which were "not the subject of" any provisions Plaintiffs pointed to. *Id.*

The TAC's revival of this theory fares no better.  While the TAC now alleges that the Bank's "miscalculations resulted in [it] imposing and collecting unearned/unwarranted fees and charges in violation of the express terms of Plaintiffs' . . . Security Instruments" (TAC ¶ 260), it still does not identify any contractual obligation that the Bank is alleged to have breached.  Plaintiffs again generally allege that the Security Instruments "provide that any fees, charges, and amounts must be for service actually performed or amounts actually incurred to protect Defendant's or other assignees' interests." *Id.* ¶ 256; *see also id.* ¶¶ 257, 259.  But the provisions of the Security Instruments that Plaintiffs cite nowhere limit fees to those assessed "for service actually performed or amounts actually incurred to protect [Wells Fargo's] interest."  *Id.* ¶ 256.  Plaintiffs quote selective language from the Security Instruments:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under the Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees . . . Lender may not charge fees that are expressly prohibited by the Security Instrument or Applicable Law.

*Id.* ¶ 256, n.10; n.11 ("8. Fees. Lender may collect fees and charges authorized by the Secretary of HUD.").  None of the provisions the TAC cites contains the limitation Plaintiffs allege to support their claim for breach.  This is fatal to their claim, as it is uncontroversial that "[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant" to properly state a claim for breach.  *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), aff'd, 700 F. App'x 588 (9th Cir. 2017).

Plaintiffs' efforts to rely on the servicing guidelines as "Applicable Law" for their theory of breach also fail.  Applicable Law is a defined term in the Security Instrument and includes: "all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  Request for Judicial Notice ("RJN"), Dkt. 98-25 at (Ex. Y at 3).  On its face, this does not include the

8

1    servicing guidelines.  And it is well settled that Fannie, Freddie, FHA, and VA guidelines do not have

2    the force of law, so they do not meet the definition's "effect of law" element in any event.  *See Rank v.*

3    *Nimmo*, 677 F.2d 692, 698 n.11 (9th Cir. 1982) (VA servicing guidelines are merely "instructions,"

4    "technical suggestions," and "items of consideration" rather than binding regulations); *McKenzie v.*

5    *Wells Fargo Bank, N.A*., 931 F.Supp.2d 1028, 1043 (2013) (characterizing GSE servicing guidelines as

6    "a set of instructions from a lender-principal to a servicer-agent").   Notably, we also question Plaintiffs'

7    suggestion that those guidelines (even if they were "Applicable Law") include a limitation on fees to

8    those assessed "for services not actually performed or amounts not actually incurred to protect [Wells

9    Fargo's] interests."  TAC ¶ 259.  The TAC certainly cites to no such provision in the guidelines, and our

10   review of the referenced material revealed no such language.

11       In short, Plaintiffs still point to no provision of the Security Instrument (or the servicing

12   guidelines they wrongly claim govern that agreement) that Wells Fargo actually breached.  Their claim

13   should be dismissed, and this time with prejudice.

14              **2.    Plaintiffs' Argument that Borrowers Are Third-Party Beneficiaries of**
15                 **Servicing Guidelines Fails.**

16       Nor can Plaintiffs premise their contract claim on a breach of the servicing guidelines themselves.

17   As in their prior Complaint, the TAC asserts that Wells Fargo is liable for breaching "various servicing

18   guidelines" issued by government-sponsored entities (GSEs) Fannie Mae and Freddie Mac, as well as

19   "regulations" and "servicing guidelines" found in HUD's Single Family Housing Policy Handbook and

20   the VA Servicer Handbook.  TAC ¶¶ 261–62 & nn.12–15; *see also id.* ¶¶ 59–63.  According to Plaintiffs,

21   they, and the putative class members, "were intended third-party beneficiaries of these servicing

22   guidelines and regulations and have contractual rights to enforce them[.]"  *Id.* ¶ 264.

23       This Court can and should dismiss Plaintiffs' third-party beneficiary theory on the same grounds

24   as before.  This Court previously rejected Plaintiffs' third-party beneficiary theory for the threshold

25   reason that they "fail[ed] to identify the specific term(s) in any such contract that Wells Fargo is alleged

26   to have breached."  Order at 8 (citing *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989)).  For

27   the reasons explained directly above, the TAC still fails to identify the express terms allegedly breached

28   and should be dismissed once again for this reason.

9

Additionally, Plaintiffs' third-party beneficiary theory should be rejected as a matter of law. Plaintiffs' theory runs headlong into the wall of contrary cases through which "[t]he law is clear—an alleged violation or breach of [GSE servicing guidelines] does not give rise to any cause of action" for a private litigant. *Vega v. Ocwen Fin. Corp.*, 2015 U.S. Dist. LEXIS 69212, at \*10–12 (C.D. Cal. May 28, 2015) (collecting cases). As this Court has noted, "federal courts have uniformly concluded . . . that borrowers are neither parties nor third-party beneficiaries entitled to enforce the [Freddie Mac and Fannie Mae] servicing guidelines." *McKenzie v. Wells Fargo Bank, N.A.*, 931 F. Supp. 2d 1028, 1044 (N.D. Cal. 2013); *accord Lanier v. Specialized Loan Servicing, LLC*, 2024 U.S. Dist. LEXIS 37556, at \*5–6 (N.D. Cal. Mar. 4, 2024) (rejecting borrower's claims for violation of Fannie Mae servicing guidelines). This rule applies equally to the invocation of government agency handbooks for servicers, such as the HUD and VA handbooks cited in Plaintiffs' allegations. *See Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1404–05 (N.D. Ala. 1997), *aff'd*, 140 F.3d 1043 (11th Cir. 1998) ("[B]orrowers are not third-party beneficiaries of a mortgage servicing [government] contract").

Instead, such government-issued servicing guidelines, regulations, and handbooks "govern relations between the mortgagee and government, ***and give the mortgagor no claim for duty owed or for the failure to follow said regulations***." *See Caldera v. Bank of N.Y. Mellon*, 2017 U.S. Dist. LEXIS 34756, at \*6 (W.D. Tex. Mar. 10, 2017) (rejecting the plaintiff's breach of contract theory based on HUD regulations); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977) (HUD handbook not designed for the benefit of borrowers). "[A]bsent a clear intent to the contrary," Plaintiffs and the putative class have no rights to enforce these servicing guidelines. *Zendejas v. GMAC Wholesale Mortg. Corp.*, 2010 WL 2629899, at \*3 (E.D. Cal. June 29, 2010); *Zoher v. Chase Home Fin.*, 2010 WL 4064798, at \*4–5 (S.D. Fla. Oct. 15, 2010); *cf. also Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir. 2000). Having alleged no clear intent to the contrary (and there being none), Plaintiffs have no enforcement rights with respect to the government's servicing guidelines, servicer handbooks, or servicer regulations as applicable to Wells Fargo.

### 3.    The Implied Covenant of Good Faith and Fair Dealing Cannot Save Plaintiffs' Contract Claim.

This Court previously dismissed the implied breach claim because Plaintiffs "fail[ed] to allege

10

they have an express contractual right to have loan modification requests considered in a particular manner." Order at 8 (citing *Guz*, 24 Cal. 4th at 349–50 (implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement") and *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (implied covenant claim failed where plaintiff did not identify "specific contractual provision that was frustrated")). The TAC persists with that failure. Indeed, according to Plaintiffs, the implied covenant required not only that the Bank "provide each Plaintiff and Class member with *a* loss mitigation option[,]" but also "to provide each Plaintiff and Class member with *an accurately calculated* loss mitigation option." TAC ¶ 276 (emphasis in the original). Plaintiffs conclude that Wells Fargo was "not permitted by the Security Instruments to impose fees against Plaintiffs' . . . loans through these loss mitigation options that are contrary to the terms of the Security Instruments and/or the servicing guidelines and regulations governing [their] loans." *Id.* ¶ 275. But again, the TAC fails to point to "specific contractual provisions that w[ere] frustrated" as required by the implied covenant. *Plastino*, 873 F. Supp. 2d at 1191. Because Plaintiffs still "fail to allege they have an express contractual right to have loan modification requests considered in a particular manner" (Order at 8), their implied covenant claim should be dismissed.

Plaintiffs' implied covenant claim is also subject to dismissal for the simple reason that a good faith and fair dealing claim cannot be "essentially based on the same allegations" as a breach of express contract. *See, e.g.*, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1369 (2010). Here, Plaintiffs' implied covenant allegations mirror their theory of express breach. Indeed, perhaps recognizing their implied claims are a complete rehash of their express claim, their good faith allegations are contained within their claim for express breach. *See* TAC ¶¶ 268–71. In any event, Plaintiffs allege that "Wells Fargo's duty of good faith and fair dealing required it to ensure that any fees and charges imposed upon Plaintiffs . . . were for services actually performed or amounts actually incurred to protect the interests of [the Bank], as well as to offer Plaintiffs . . . loss mitigation options that were calculated in a manner consistent with the applicable servicing guidelines and regulations." *Id.* ¶ 271; *see also id.* ¶ 277 ("[B]y miscalculating the amounts due and owing for approved loss mitigation options, [Wells Fargo] breached the duty of good faith and fair dealing . . . ."). These allegations are virtually indistinguishable from

11

1  those underlying Plaintiffs' express breach claims.  Plaintiffs' good faith and fair dealing allegations

2  should be disregarded, and their claim dismissed.  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.

3  App. 3d 1371, 1395 (1990) (a court should "disregard as superfluous" implied covenant allegations that

4  "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply

5  seek the same damages or other relief already claimed in a companion contract cause of action").

6       Finally, an implied covenant claim "goes beyond a breach of contract and involves 'a failure or

7  refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or

8  negligence but rather by a conscious and deliberate act . . . .'"  *Schertzer v. Bank of Am., NA*, 109 F.4th

9  1200, 1213 (9th Cir. 2024) (citing *Careau*, 222 Cal. App. 3d at 1394).  For the reasons explained in more

10  detail below, the TAC still does not plausibly allege any "conscious and deliberate act" by the Bank, but

11  instead a software error the Bank remediated for potentially impacted borrowers.

12       For all these reasons, Plaintiffs' breach of the implied covenant of good faith and fair dealing—

13  whether as a theory for their breach of contract claim or a separate cause of action—should be dismissed

14  again and with prejudice.

15       **B.    The Court Should Dismiss Plaintiffs' UCL Claims (Count Two).**

16       Plaintiffs purport to bring UCL claims on behalf of a nationwide class or, alternatively, a

17  California subclass.  TAC ¶¶ 283–300.  As explained below, the TAC still alleges no basis to apply the

18  UCL to the non-California plaintiffs and putative class members, and, in any event, the UCL claims

19  remain insufficiently pled.  They should be dismissed with prejudice.

20       **1.    The TAC does not overcome the UCL's presumption against**

21           **extraterritoriality.**

22       "California's Supreme Court has made clear that there is a strong presumption against the extra-

23  territorial application of California law."  *Warner v. Tinder Inc*., 105 F. Supp. 3d 1083, 1096 (C.D. Cal.

24  2015) (citing *Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 3d 1121, 1129–30 (N.D. Cal. 2014)).

25  Remedies under California's UCL are thus only "available to non-California residents if those persons

26  are harmed by wrongful conduct occurring in California."  *In re Toyota Motor Corp*., 785 F. Supp. 2d

27  883, 916–18 (C.D. Cal. 2011) (dismissing UCL claims brought by non-California residents).  "In

28  determining whether the UCL . . . appl[ies] to non-California residents, courts consider where the

1  defendant does business, whether the defendant's principal offices are located in California, where class

2  members are located, and the location from which [the relevant] decisions were made." *Id.* at 917. Even

3  where an entity "has significant connections with California," Plaintiffs must allege that the conduct that

4  harmed them emanated from California. *Id.* at 917 n.26; *Warner*, 105 F. Supp. 3d at 1097 (nonresident

5  plaintiff failed to state a UCL claim without adequately alleging that decisions concerning the wrongful

6  conduct emanated from California); *Silverman v. Wells Fargo & Co.*, 2018 WL 6046209, at *3 (N.D.

7  Cal. Nov. 19, 2018) (even where Wells Fargo & Company was a party to the lawsuit, plaintiffs still failed

8  to allege any facts indicating that Wells Fargo's alleged wrongful conduct occurred in or had any

9  connection to California).

10      Here, the TAC's sole connection to California is the location of Wells Fargo's parent company,

11  Wells Fargo & Company. TAC ¶ 35. But Wells Fargo & Company is not a party to this lawsuit, and

12  Plaintiffs have articulated no basis by which it could be liable for the alleged conduct at issue.

13  Recognizing this, the Court previously held that the UCL claims could only be brought by California

14  Plaintiffs Curry and the Liggetts. Order at 14. The Court reasoned that "[a]lthough plaintiffs d[id] allege

15  Wells Fargo's conduct on which their claims are based was 'conceived, designed, facilitated, instigated,

16  overseen, managed, and coordinated by WF & Co.'s leadership in California', such conclusory

17  allegations [were] insufficient[.]" *Id.* at 13.

18      The TAC does not cure this defect. Instead, Plaintiffs rely on these same conclusory allegations,

19  with the addition of two "new" sentences. But these scant new allegations do not move the needle. The

20  first allegation—that "the erroneous formulas used by Wells Fargo[,] which led to the miscalculations at

21  issue[,] were conceived, designed, and or approved by WF & Co.'s leadership in California"— is simply

22  another variant of the very same conclusions this Court already rejected. TAC ¶ 288. This Court already

23  considered and rejected as insufficient the allegation that WF & Co. "conceived, designed, facilitated,

24  instigated, over[saw], managed, and coordinated" the Bank's "act[]s and omissions that g[a]ve rise to

25  this lawsuit." SAC ¶ 327, TAC ¶ 287. The second "new" allegation – that "the OCC and the Board of

26  the Governors of the Federal Reserve repeatedly took action against WF & Co. (and not just [the Bank])

27  for [] violations related to [the Bank's] mortgage servicing procedures" fares no better. TAC ¶ 288. The

28  Court already held that allegations concerning the actions regulators took against the Bank and WF &

1  Co. were insufficient to extend the UCL beyond California.  *See* SAC ¶¶ 327(a)–(c).

2       Of course, conclusions and speculation such as these should not be credited.  *Navajo Nation v.*

3  *Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) ("[c]onclusory allegations and unreasonable

4  inferences . . . are insufficient to defeat a motion to dismiss").  Plaintiffs again fail to establish that the

5  UCL should apply to non-California residents despite their amendment; their UCL claim should be

6  limited to the California subclass.

7          **2.**     **Plaintiffs' UCL Claims Remain Insufficiently Pled.**

8              **a.**     **Plaintiffs State No Claim Under the "Unfair" Prong.**

9       The California Court of Appeals has applied "unfairness" under two tests: *Cel-Tech* and *South*

10  *Bay*.  *Cel-Tech* held that "unfair" conduct must be "tethered to some legislatively declared policy" or

11  have some effect on competition.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th

12  163, 186–87 (1999).  Under *South Bay*, a challenged business practice qualifies as unfair when the

13  practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *S.*

14  *Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999) (citation omitted).

15  With this approach, courts examine the practice's "impact on its alleged victim, balanced against the

16  reasons, justifications and motives of the alleged wrongdoer."  *Id.* at 886.

17       The Court previously held that Plaintiffs failed to satisfy either test.  Order at 15.  Plaintiffs did

18  not satisfy the *Cel-Tech* test because they failed to sufficiently allege that Wells Fargo "undermined

19  policies underlying" HAMP or HBOR.  *Id.*  Plaintiffs have since dropped their HBOR claims and identify

20  no "legislatively declared policy" they rely on to meet this test.  TAC ¶¶ 296-300.  To the extent Plaintiffs

21  continue to rely on HAMP to meet *Cel-Tech*'s "tethering test," their efforts fail for the same reasons as

22  before.  This Court held that HAMP's policies could not support Plaintiffs' "tethering test" theory

23  because they failed to identify the relevant HAMP provisions in the SAC.  Order at 15.  Because the

24  TAC's HAMP allegations have not materially changed, Plaintiffs fail this test once again.

25       The Court dismissed Plaintiffs' unfair prong claims under the *South Bay* test as well, on the

26  grounds that Plaintiffs "failed . . . to plead facts to support a finding that Wells Fargo knew of the alleged

27  'errors' at the time it considered Curry's and the Liggetts' respective loan modification requests."  Order

28  at 16.  This same reasoning applies with equal force to the TAC.  Indeed, that Wells Fargo somehow

"intentionally and knowingly committed errors" is undermined by Plaintiffs' own allegations.  TAC ¶ 297.  Like the predecessor Complaint, the TAC's repeated citations to the Apology Letters show that at most mistakes, not intentional conduct, are at issue.  *See, e.g., id.* ¶ 118 (letters state that Wells Fargo "now realize[s] it [has made] an error").

Wells Fargo did not offend public policy, or act "unscrupulously," unethically, or immorally because it is alleged to have made errors—i.e., mistakes.  *Id.* ¶¶ 8, 13, 15–16, 18–20, 59 n.1, 67, 73–74, 75–92, 100, 105–08, 122, 132, 142, 151, 163, 176, 184, 193, 204, 212, 222, 231 (characterizing Wells Fargo's conduct as an "error"); *Donohue v. Apple, Inc.,* 871 F. Supp. 2d 913, 928 (N.D. Cal. 2012) (dismissing UCL claim under *South Bay* test, explaining that "the court is loath to pass judgment on a design decision that is clear only in hindsight to have been a mistake").  While the TAC includes some additional detail surrounding the content and timing of the Bank's disclosures to its regulators, none of these allegations are materially different from those alleged in the SAC, which this Court already found insufficient.  Order at 16.  Plaintiffs are required to "nudg[e] their claims across the line from conceivable to plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 997 (9th Cir. 2014) (citing *Twombly*, 550 U.S. at 570).  The TAC's conclusory allegations that Wells Fargo "knowingly" committed errors are simply not plausible considering the more detailed allegations that point only to unintentional conduct.

### b.    Plaintiffs State No Claim Under the "Fraudulent" Prong.

The Court previously dismissed Plaintiffs' UCL "fraud" prong claim because they "fail[ed] to identify the statements or omissions on which they rely with the particularity required by Rule 9(b)." Order at 14 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009).  The Court also dismissed the claim because Plaintiffs did not "allege facts, let alone the requisite 'evidentiary facts,' to support a finding that any such statement or omission was 'untrue or misleading *when made.*'"  *Id.* (citing *Fecht v. Price Co*., 70 F.3d 1078, 1082 (9th Cir. 1995) (emphasis in original).  Finally, the Court dismissed the claim because Plaintiffs Curry and the Liggetts failed to "plead facts to support a finding that [they] relied to their detriment on any such statement or omission."  *Id.* at 14–15 (citation omitted).

While the TAC changes the theory of fraud from partial omission to affirmative misstatement, the claim remains defective.  According to Plaintiffs, the Bank "affirmatively misstated the total balances

15

DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-01358-MMC

owed and the amounts of their monthly payments due to the systemic calculation errors[.]"  TAC ¶ 292.

But as explained above, Curry and the Liggetts fail to allege *factual support* for their conclusion that the Bank knowingly offered them a miscalculated loan modification *when made.  Fecht*, 70 F.3d at 1082.

And the facts that are alleged undermine any allegation of deception.  *See* TAC ¶¶ 8, 13, 15–16, 18–20, 59 n.1, 67, 73–74, 75–92, 100, 105–08, 122, 132, 142, 151, 163, 176, 184, 193, 204, 212, 222, 231 (characterizing conduct as "erroneous").  Plaintiffs' contention that they do not need to plead *intent* to deceive under the UCL (*id.* ¶ 291) conflates intent with the requisite *knowledge* underlying a deceptive act or practice, as required by Rule 9.  As the Court held in its prior Order, Plaintiffs failed to allege facts supporting that the errors were known to Wells Fargo at the time it considered Plaintiffs' respective loan modification requests.  Order at 14 (citing *Fecht*, 70 F.3d at 1082 (a plaintiff must provide an "explanation as to why the disputed statement was untrue or misleading *when made*" to comport with Rule 9)).  Plaintiffs cannot avoid these stringent pleading standards, as it is uncontroversial that UCL claims "sounding in fraud" must be pled in accordance with Rule 9.  *Kearns*, 567 F.3d at 1125.[2] Accordingly, Plaintiffs' protestations with regard to intent have no bearing on the requirement that the TAC allege sufficient *facts* to plausibly plead Wells Fargo's contemporaneous awareness of the alleged errors.  These intent disclaimers should thus be disregarded, making plain that Plaintiffs' limited knowledge allegations remain sorely lacking.  Plaintiffs' assertion that reliance is also not required under the UCL is simply wrong as well.  "Where a plaintiff brings a UCL . . . claim based on the defendant's alleged misrepresentations or omissions, the plaintiff must plead 'actual reliance on the defendant's misrepresentations or omissions.'"  *Villarroel v. Recology Inc.*, 775 F. Supp. 3d 1050, 1062 (N.D. Cal. 2025).  Indeed, "[t]he reliance requirement applies not only to UCL claims asserted under the fraud prong of section 17200 but also to claims asserted under the unlawful and unfair prongs where those

---

[2] This argument applies equally to the intent allegations Plaintiffs make as to the Illinois, Pennsylvania, North Carolina, and District of Columbia consumer protection statutes (TAC ¶¶ 339–40, 343), addressed *infra.  Odle v. GameStop Corp.*, 774 F. Supp. 3d 982, 996 (S.D. Ill. 2025) (applying Rule 9(b) to an ICFA claim based on fraudulent conduct); *Laskowski v. Brown Shoe Co.*, 2015 U.S. Dist. LEXIS 34865, at *17 (M.D. Pa. Mar. 20, 2015) (applying Rule 9(b) to fraudulent claims brought under the UTPCPL); *Challenge Printing Co. of the Carolinas, Inc. v. Tesla, Inc.*, 2024 U.S. App. LEXIS 13115, at *5 (4th Cir. May 31, 2024) (applying Rule 9(b) to a UDTPA claim based on fraud); *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 58 (D.D.C. 2017) (applying Rule 9(b) to claims brought under the D.C. CPPA).

1  claims are predicated on misrepresentation and deception." *Id.* at 1063. The UCL fraud prong claim

2  should thus be dismissed for the failure to plead the necessary elements under the statute.

3  And while previously nonexistent, the TAC's allegations of reliance are nonetheless deficient.

4  Plaintiffs allege that they acted "[i]n reliance" on the Bank's "false representations" because they

5  accepted their loan modification and made modified payments, lost their homes as a result of the

6  "inflated monthly payment amounts," or a combination of both. TAC ¶ 294. At best, these allegations

7  may characterize Plaintiffs' alleged injuries, but they are not allegations of reliance. "To establish actual

8  reliance, the plaintiff must allege that 'the defendant's misrepresentation or nondisclosure was an

9  immediate cause of the plaintiff's injury-producing conduct.'" *Williams v. Apple, Inc.*, 449 F. Supp. 3d

10  892, 912–13 (N.D. Cal. 2020).

11  Without plausible allegations of contemporaneous knowledge of falsity or detrimental reliance,

12  Plaintiffs' UCL "fraud" prong claim should be dismissed without leave to amend.

13  **C.    Plaintiffs' Amendments Do Not Save Their Illinois Consumer Fraud Act Claims**
14  **(Count Three).**

15  Plaintiffs' amendments do not convert the errors alleged in this case into deceptive or unfair

16  practices giving rise to liability under the Illinois Consumer Fraud Act ("ICFA").

17  The Court dismissed the ICFA claims brought by Plaintiffs Nelson and the Petersons because

18  "plaintiffs fail[ed] to allege facts to support a finding that Wells Fargo was aware, at the time it

19  considered Nelson's and the Peterson's [sic] respective loan modification requests, of the error on which

20  plaintiffs base their claims" and, separately, because they failed to identify, with particularity, the

21  "deceptive information" they claim the Bank gave them. Order at 17–18 (referring back to analysis at

22  9, 14–15). The TAC now alleges that Plaintiffs do not need to plead "intent to deceive" for their ICFA

23  claim to survive. TAC ¶ 306. As explained above, however, Plaintiffs' assertion that intent is not

24  required misses the point. *See supra* Section IV.B.2.b.

25  As in the SAC, Plaintiffs continue to allege that "starting in 2013," Wells Fargo "knew or was in

26  conscious disregard of the fact that its process for deciding modification applications was riddled with

27  errors." *E.g.,* TAC ¶¶ 280, 311. But Plaintiffs now insert, in conclusory fashion, the same language

28  quoted above that the Court used to identify the SAC's pervasive pleading defect for the ICFA (and

17

other) claims. *See, e.g., id.* ¶ 309 (summarily asserting that the Bank "knew that the re-calculated loan terms offered to Plaintiffs . . . were incorrect at the time [the Bank] was offering loss mitigation options to Plaintiffs"). Despite this additional verbiage, the new allegations in the TAC add nothing to the general and conclusory allegations of the SAC in terms of connecting the Illinois Plaintiffs' alleged harm to actual *facts* of Wells Fargo's awareness or purported deceptive information. Instead, these broad averments reiterate the TAC's (and SAC's) refrain that Wells Fargo made errors in the past and simply must have known that something was wrong with Plaintiffs' loan modification reviews—a refrain so generic that it could be applied equally to any Wells Fargo customer inside or outside of Plaintiffs' putative class. And neither rehashing other lawsuits like *Hernandez* and *Ryder* nor harkening back to past consent orders can fill in the missing particularized facts of Plaintiffs' deceptive conduct claims. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) ("allegations based on the mere filing of other lawsuits generally will not provide much in the way of plausible corroboration of a plaintiff's fraud" claim); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738–39 (7th Cir. 2014) (dismissing ICFA claim because the plaintiff "failed to explain how the New York advertising practices that were the subject of the 2004 investigation are the same or similar to practices" alleged in his case). Plaintiffs' fact-free allegations do not meet the heightened pleading requirement requiring Plaintiffs to plead their ICFA deception claims under Rule 9(b). *Camasta*, 761 F.3d at 736; *Pirelli*, 631 F.3d at 447.

Where the TAC does attempt to provide some particularity, it actually negates Plaintiff Nelson's deceptive conduct claim. Nelson first alleges that Wells Fargo approved him for a loan modification in 2012 (TAC ¶¶ 134–35)—*before* 2013, when Plaintiffs have alleged that Wells Fargo first became aware of the errors (*e.g., id.* ¶¶ 81, 87, 102(c), 105, 110(a), 251, 280, 340). Nelson next claims to have been *denied* a loan modification in 2015/2016, but the TAC expressly disavows claims for loan modification denials. *See id.* ¶ 19; *see also id.* ¶¶ 232–39 (the Illinois subclass requires that putative class members "*received* a temporary or permanent loss mitigation option from Defendant based on inaccurate calculations . . . .") (emphasis added).

The Petersons' amended allegations do not attempt even this modest level of particularity. The TAC now alleges, upon information and belief, a laundry list of application stages, possible conduct,

1   and potential types of errors that may have impacted the Petersons (*id.* ¶ 188)—without any basis for

2   identifying whether any of them actually did impact them or for linking their suspicions to the errors

3   Wells Fargo was allegedly first aware of in 2013. *But see Pirelli*, 631 F.3d at 442 ("[W]e have ruled

4   that a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that

5   is filed on information and belief.").

6        The TAC also endeavors to bolster Plaintiffs' "unfairness" claim under ICFA, which requires

7   plausible allegations that conduct offends public policy or is immoral, unethical, oppressive, or

8   unscrupulous. *Robinson v. Toyota Motor Credit*, 775 N.E.2d 951, 961 (Ill. 2002). To the extent

9   Plaintiffs attempt to do so by characterizing their deceptive conduct allegations as also "unfair" (*see*

10  TAC ¶¶ 308–311), those allegations sound in fraud and thus fail on the same grounds as the deceptive

11  conduct ICFA claims. *Camasta*, 761 F.3d at 737 ("[s]imply adding language of 'unfairness' instead of

12  'misrepresentation' does not alter the fact that [the plaintiff's] allegations are entirely grounded in fraud

13  under the ICFA"). To the extent Plaintiffs base the unfairness claim on HAMP violations (TAC ¶ 312),

14  HAMP was not a statutory or administrative rule, but rather a voluntary governmental program, and thus

15  cannot support a public policy-based ICFA claim. *Compare Tyler v. Bank of N.Y. Mellon*, 2020 WL

16  2735367, at *9 (N.D. Ill. May 26, 2020). Nor can the Security Instrument, despite Plaintiffs' allegations.

17  The fees provision Plaintiffs cite states its purpose as "protecting ***Lender's*** interest in the Property and

18  rights under the Security Instrument[.]" TAC ¶ 312 (emphasis added). Where, as here, the provision

19  alleged to have been violated evinces a policy in favor not of the borrower, but of the lender or servicer,

20  Illinois courts find that a public policy ICFA claim cannot be stated: "The policy underlying [regulatory

21  provision] is to impose obligations on mortgagees to protect the value of the property in the case of

22  default, not to protect mortgagors from unnecessary fees. Therefore, [plaintiff] cannot show that the

23  inspection fee offended public policy for purposes of her ICFA claim." *Leszanczuk v. Carrington Mortg.*

24  *Servs., LLC*, 21 F.4th 933, 943 (7th Cir. 2021).

25       Finally, and fundamentally, Wells Fargo is alleged to have made *errors* in reviewing Plaintiffs

26  for loan modifications that it offered them. *See, e.g.,* TAC ¶¶ 7–8, 13. Wells Fargo did not offend public

27  policy, or act immorally or unethically, or the like, simply because it made an error. *See Geske v. Fed.*

28  *Nat'l Mortg. Ass'n*, 2015 WL 1397087, at *3 (N.D. Ill. Mar. 25, 2015) (allegations that defendant made

errors in handling loan modification and loan transfer were insufficient to state ICFA claim).  And when Wells Fargo discovered that the error may have affected Plaintiffs, it notified them and sent them payments—unsolicited and without requesting a release.  TAC ¶¶ 118, 129, 139, 148, 160, 173, 181, 190, 201, 207, 219, 227.  These actions cut strongly against a plausible inference of immoral, unethical, or unscrupulous conduct, even without the myriad pleading deficiencies identified above.  For all of these reasons, the ICFA claims should be dismissed with prejudice.

### D. The Court Should Dismiss the Pennsylvania and North Carolina Unfair Trade Practices Claims (Counts Four and Five).

The Court dismissed the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim because the alleged conduct could only fit within the statute's catchall "prohibition against 'engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.'"  Order at 18–19.  For the reasons discussed *supra*, the TAC fails to adequately allege fraudulent or deceptive conduct on the part of Wells Fargo with respect to any Plaintiff, including Risconsin, the Pennsylvania Plaintiff.  For one, Pennsylvania law, like that of other states, recognizes that errors do not rise to the level of fraudulent or deceptive conduct.  *See Christopher v. First Mut. Corp.*, 2006 U.S. Dist. LEXIS 2255, at *11 (E.D. Pa. Jan. 20, 2006) (defining deception as "intentional misleading by falsehood spoken or acted").  In Risconsin's case, however, this is only the first of several reasons that the UTPCPL claim must be dismissed.

The TAC unambiguously pleads that "Defendant never approved Plaintiff Risconsin for a loan modification."  TAC ¶ 157.  The problem for Plaintiffs is that both the nationwide class and Pennsylvania subclass, by definition, require that putative members "*received* a temporary or permanent loss mitigation option from Defendant"—but by his own admission, Risconsin never did.  *Compare* TAC ¶¶ 232, 236 *with* TAC ¶ 157; *see also id.* ¶¶ 91, 100.  And as Risconsin never received a loan modification, he could not have "deceptively" received "misstated total balances (*id.* ¶ 324), been demanded to pay "wrongful amounts" (*id.* ¶ 323), or been charged inflated fees (*id.* ¶ 326).  Here, Plaintiffs purposefully amended their class to cover only those borrowers who were *approved* for loan modifications in response to the Court's observation that the errors alleged in the SAC appeared to be the same as those already addressed by the *Hernandez* and *Ryder* class actions.  *Compare* Order at 9 *with* TAC ¶¶ 19–20, 91, 100.

20

Risconsin's factual allegations cannot be reconciled with the requirements for that group, and his claim should be dismissed.

Plaintiffs' North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") claim was dismissed for failure to plead facts to support the Bank's contemporaneous awareness of the error at the time it considered Plaintiff Kea's modification request. The TAC addresses this—inadequately—by reciting the Court's awareness language without pleading any additional facts to show such awareness. *See, e.g.,* TAC ¶ 337 ("Given that Defendant knew of the systemic calculation errors referenced herein, Defendant knew that the re-calculated loan terms offered to Plaintiff Kea and North Carolina Subclass members were incorrect at the time Defendant was offering loss mitigation options to Plaintiff Kea and North Carolina Subclass members . . . ."). The NCUDTPA contemplates liability for deceptive and unfair conduct, which includes unethical and unscrupulous conduct. Order at 19–20. As discussed *supra*, the TAC does not sufficiently plead contemporaneous awareness or deceptive conduct, nor does it plead unethical or unscrupulous conduct on Wells Fargo's part. Further, Plaintiffs' contention that they do not need to plead *intent* to deceive under this statute (TAC ¶¶ 339–40) misses the point. *See supra* Section IV.B.2.b. The NCUDTPA claim should thus be dismissed for the failure to plead the necessary deceptive-acts-or-practices element under the statute. *Edwards v. JPMorgan Chase Bank, N.A.*, 2020 WL 1814423, at *6 (M.D.N.C. Apr. 9, 2020).

**E.    The TAC Does Not State a Claim Under the D.C. Consumer Protection Procedures Act (Count Six).**

The Court dismissed the CPPA claim because Plaintiffs failed to plead facts to support a finding that the Bank was contemporaneously aware of the error at the time it considered Plaintiff Forney's modification request. Order at 20–21. In the TAC, Plaintiffs' CPPA claim is heavily revised. But Plaintiffs appear to have focused exclusively on attempting to rebut the Court's finding that knowledge at the time of Wells Fargo's loan modification decisions is required under the statute. For the reasons discussed *supra*, Section IV.B.2.b, their attempts are unsuccessful. Moreover, the reworked allegations do nothing to address a more basic, threshold issue previously raised as to this claim (MTD SAC at 21–22): that Wells Fargo was Forney's servicer (not lender) (RJN, Dkt. 98-7 (Ex. G at 2)), and the borrower-servicer relationship does not qualify as a "consumer-merchant relationship" under the CPPA. *Busby v.*

21

1   *Capital One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011) (dismissing CPPA claim against loan servicer

2   because there was no consumer-merchant relationship); *Edmond v. Am. Educ. Servs.*, 2010 WL 4269129,

3   at *4 (D.D.C. Oct. 28, 2010) (dismissing CPPA claim against loan servicer and noting that "[i]f, as

4   plaintiff alleges, AES services a loan extended by Bank of America, plaintiff is not a consumer seeking

5   relief as against a merchant with whom he contracted for services"). This incurable pleading failure is

6   fatal to Plaintiffs' CPPA claim. *Busby*, 772 F. Supp. 2d at 280.

7   **F.    The TAC Does Not State a Claim Under the New York General Business Law § 349**
8   **(Count Seven).**

9        To state a claim under NY GBL Section 349, Plaintiffs must allege that "(1) the defendant's

10   deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3)

11   the plaintiff has been injured as a result."    *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d

12   395, 411 (S.D.N.Y. 2022). Here, the TAC does not allege facts supporting either deception or a

13   materially misleading act on the part of Wells Fargo, requiring that the NY GBL claim be dismissed.

14        The Court dismissed the GBL claim for failure to plead facts that Wells Fargo knew of the errors

15   at the time it approved New York Plaintiff Ferguson's loan modification in 2012, the claimed basis for

16   Plaintiffs' deceptive conduct assertion. Order at 21. In response, the TAC asserts that Plaintiffs do not

17   need to plead "intent to deceive" for their GBL claim to survive dismissal. TAC ¶ 383. As explained

18   above, however, Plaintiffs' assertion that intent is not required misses the point. Plaintiffs' argument

19   that they do not need to plead *intent* to deceive under this statute (TAC ¶ 383) does not mean they can

20   avoid pleading the requisite *knowledge* underlying a deceptive act or practice. As the Court rightly held,

21   the GBL *does* require the latter; Plaintiffs must allege contemporaneous knowledge or awareness of the

22   information allegedly withheld. Order at 21. And this makes sense. Otherwise, the statute would punish

23   acts taken without knowledge (e.g., mistakes) as if they were taken, in the terms of Plaintiffs' allegations,

24   while "conceal[ing]" or "fail[ing] to disclose" a known fact. *See* TAC ¶¶ 110, 243(m)–(o), 384–

25   86. Accordingly, Plaintiffs' protestations with regard to intent have no bearing on the requirement that

26   the TAC allege sufficient *facts* to plausibly plead Wells Fargo's contemporaneous awareness and

27   concealment of the alleged errors. The GBL claim should thus be dismissed for the failure to plead the

28   necessary deceptive-acts-or-practices element under the statute.

22

DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-01358-MMC

Moreover, like the SAC, the TAC is still composed of allegations focused on Wells Fargo's purported errors, and it thus still does not sufficiently plead deceptive conduct by the Bank. *See Streamline Cap., L.L.C. v. Hartford Cas. Ins. Co*., 2003 WL 22004888, at *3 (S.D.N.Y. Aug. 25, 2003) (the "mere allegation of a mistake . . . is not sufficient to attain relief under § 349"); *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 127 (2d Cir. 2000) (granting summary dismissal of NY GBL Section 349 claim because "an insurer's denial of a claim is not deceptive simply because it was mistaken"). In their own words, Plaintiffs seek recourse because Defendant "knowingly failed to correct its systemic *calculation errors*, which [] resulted in the wrongful denial of borrowers for loss mitigation options that should have been approved . . ." TAC ¶ 110(b) (emphasis added). To put a finer point on it, Plaintiffs allege—with respect to the lone New York named plaintiff specifically—that she was impacted by "an *error*" (*id.* ¶ 227), a "*calculation error*" (*id.* ¶ 228) and Wells Fargo's purported "refusal to correct its *error* after identifying its *automated calculation errors*" (*id.* ¶ 231) (emphasis added). With these allegations, Plaintiffs have pled themselves out of the deception element of their Section 349 claim. *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 121 (S.D.N.Y. 2002) ("Even if defendants' review of plaintiff's file was inadequate and their termination of benefits mistaken, such allegations do not constitute *deceptive* conduct under § 349.") (emphasis added); *Dekel v. Unum Provident Corp.*, 2007 WL 812986, at *2 (E.D.N.Y. Mar. 14, 2007) (dismissing Section 349 claim because "all that [the defendant] did was deny [the plaintiff's] claim, perhaps mistakenly").

Further underscoring that Plaintiffs' Section 349 claim sounds more in negligence than deception, the enumerated acts Plaintiffs label as "deceptive" invoke quintessential negligence terminology: alleged failures in oversight, training, and accuracy. TAC ¶ 386(a)–(l). Likewise, Plaintiffs attempt to state this cause of action by claiming Wells Fargo "undertook a duty" to Plaintiffs and the putative class in reviewing their eligibility for a loan modification (*id.* ¶¶ 373–74)—also standard negligence language. But prior courts have already found that Wells Fargo does not voluntarily assume a duty of care by reviewing a mortgage loan for a loan modification. *Thomas v. Wells Fargo Bank, N.A.*, 2021 WL 1244673, at *6–7 (N.D. Ga., 2021); *Stanford West v. Wells Fargo Bank, N.A.*, 2020 WL 6706351, at *3 (E.D. Ky., 2020); *see also Hahn v. Select Portfolio Servicing, Inc.*, 424 F. Supp. 3d 614, 636–37 (N.D. Cal. 2020) (collecting cases).

23

1   As for Plaintiff Ferguson, like Nelson, the modification she alleges was impacted by an error was

2   approved in 2012 (TAC ¶ 230), *predating* 2013, the year in which Plaintiffs first impute knowledge to

3   Wells Fargo of the errors at issue in this case (*see id.* ¶¶ 81, 87, 102(c), 105, 110(a), 251, 280, 340).  The

4   TAC thus fails to plead deceptive conduct with respect to Ferguson's only modification review.

5   **G.    The Unjust Enrichment Claim Fails as a Matter of Law (Count Eight).**

6   "The elements for a claim of unjust enrichment are receipt of a benefit and unjust retention of the

7   benefit at the expense of another."  *Lyles v. Sangadeo-Patel*, 225 Cal. App. 4th 759, 769 (2014)

8   (quotation omitted).  In its Dismissal Order, the Court disposed of this claim on the ground Plaintiffs

9   "fail[ed] to allege facts to support a finding that any plaintiff paid 'increased fees and interest' to Wells

10  Fargo, i.e., fees or interest plaintiffs were not otherwise required to pay under the terms of their respective

11  Security Instruments."  Order at 23.  Despite their amendment, Plaintiffs have not cured this defect.

12  Admitting that they have not sufficiently pleaded a claim, Plaintiffs assert that they "can and will

13  demonstrate that they paid [the Bank] more than [it] was entitled to under the law."  TAC ¶ 394.  But

14  the Ninth Circuit has plainly established that a plaintiff may not rely on anticipated discovery to survive

15  a motion to dismiss.  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("Our case

16  law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6)"); *see also*

17  *Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with

18  nothing more than conclusions").  The TAC's assertion that the Bank "also received a benefit from the

19  government when providing modifications" (TAC ¶ 393) likewise does not help Plaintiffs, as a benefit

20  received from the government is not a benefit conferred by Plaintiffs, as required for an unjust

21  enrichment claim.  *Regents of Univ. of California v. LTI Flexible Prods., Inc.*, 2021 WL 4133869, at *10

22  (N.D. Cal. Sept. 10, 2021) ("Under California law, '[i]t must ordinarily appear that the benefits were

23  conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not

24  unjust.'").

25  Finally, Plaintiffs' reliance on the Apology Letters is similarly ineffective.  Those letters do not

26  say that the Bank retained more than it was entitled to, only that it "identified that when the loan was

27  considered for payment assistance options, an error may have occurred.  As a result, we are enclosing a

28

check for $200.00." *See* Ex. 1 (Dec. 6, 2023, Apology letter to M. Curry).[3]  Despite this Court's

directive, the TAC contains no "facts to support a finding that any plaintiff paid 'increased fees and

interest' to Wells Fargo, i.e., fees or interest plaintiffs were not otherwise required to pay under the terms

of their respective Security Instruments."  Order at 23.

The claim is also defective as a matter of law.  A quasi-contract claim for unjust enrichment

"cannot lie where there exists between the parties a valid express contract covering the same subject

matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996).  To plead

the theory in the alternative, as Plaintiffs purport to do, they must allege that the contracts between them

and Wells Fargo were unenforceable or void.  *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998

(N.D. Cal. 2020).[4]  Plaintiffs do not do this, but instead allege the existence of a contract—the same one

they say the Bank breached.  TAC ¶¶ 254–59.  Plaintiffs' unjust enrichment claim should be dismissed

for this independent reason.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Third Amended Consolidated Class

Action Complaint with prejudice.

---

[3] "In reviewing a motion to dismiss, '[a] court may . . . consider . . . documents incorporated by reference in the complaint.' Documents are subject to incorporation by reference if the plaintiff refers to them 'extensively,' or they form the basis of the complaint." *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1055 n.3 (N.D. Cal. 2022) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) and *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) respectively).  As the TAC references Apology Letters over sixty times and Plaintiffs "bring this case on behalf of themselves and those who also received an Apology Letter," Wells Fargo properly attaches an exemplary Apology Letter as Exhibit 1.

[4] While Plaintiffs do not specify under which state law they assert their unjust enrichment claim, this is true under the laws of each Plaintiff's home state.  *See Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 887 (7th Cir. 2022) ("[W]here the existence of a contract between the parties is undisputed, an unjust enrichment claim will seldom survive a motion to dismiss.") (applying Illinois law); *Whitefield v. Nationstar Mortg.*, LLC, 434 F. Supp. 3d 238, 244–45 (E.D. Pa. 2020) (Pennsylvania law "provides that unjust enrichment is not an available theory of recovery when the parties' relationship is based on a contract."); *Willis v. Tritle*, 2019 U.S. Dist. LEXIS 116272, at *17 (W.D.N.C. July 12, 2019) ("It is well-settled under North Carolina law that a claim for unjust enrichment cannot succeed when a valid contract exists."); *Gill v. NFL*, 2021 WL 5087900, at *7 (S.D.N.Y. Nov. 2, 2021) ("[U]njust enrichment claims may not be pled in the alternative alongside a claim that the defendant breached an enforceable contract."); *Tr. Agreement of Sushner v. C.A. Harrison Cos., LLC*, 2023 WL 6313507, at * 11 (D.D.C. Sep. 28, 2023).

1  Dated: February 20, 2026                    WINSTON & STRAWN LLP

2

3                                      By: /s/ Amanda L. Groves
                                          Amanda L. Groves (SBN: 187216)
4                                         agroves@winston.com
                                          Shawn R. Obi (SBN: 288088)
5                                         sobi@winston.com
                                          WINSTON & STRAWN LLP
6                                         333 S. Grand Avenue, 38th Floor
                                          Los Angeles, CA 90071
7                                         Telephone: (213) 615-1700
                                          Facsimile: (213) 615-1750
8
                                          Angela A. Smedley (admitted pro hac vice)
9                                         asmedley@winston.com
                                          WINSTON & STRAWN LLP
10                                        35 W. Wacker Drive
                                          Chicago, IL 60601
11                                        Telephone: (312) 558-5600
                                          Facsimile: (312) 558-5700
12
                                          Attorneys for Defendant
13                                        WELLS FARGO BANK, N.A.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, a copy of the foregoing pleading, with any and all attachments, was filed electronically with the clerk of court via ECF, which will serve all counsel of record.

Dated:  February 20, 2026                    WINSTON & STRAWN LLP


By:  /s/ Amanda L. Groves
     Amanda L. Groves (SBN: 187216)